No. 26-3278

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

---

**JACK GERRITSEN, *et al.*,**
Plaintiffs and Appellants,
v.

**CITY OF LOS ANGELES, *et al.*,**
Defendants and Appellees.

---

Appeal from the United States District Court
for the Central District of California
Case No. 2:25-cv-08760
The Hon. R. Gary Klausner

---

# ANSWERING BRIEF

---

**HYDEE FELDSTEIN SOTO,** City Attorney (SBN 106866)
**DENISE C. MILLS,** Chief Deputy City Attorney (SBN 191992)
**KATHLEEN A. KENEALY,** Chief Assistant City Attorney (SBN 212289)
**SHAUN DABBY JACOBS,** Supervising Asst. City Attorney (SBN 185073)
**EDWARD HAN,** Deputy City Attorney (SBN 289390)
City Hall, 200 North Spring Street, 14th Floor, Los Angeles, CA 90012
(213) 978-2217 | edward.han@lacity.org

*Attorneys for Defendants and Appellees*
CITY OF LOS ANGELES and DOMENIKA LYNCH

# TABLE OF CONTENTS


I. Introduction....6

II. Issues presented....7

III. Relevant Background....7

A. Factual Summary....7

B. The District Court Denied the Motion for Preliminary Injunction on the Grounds that Gerritsen Did Not Demonstrate a Likelihood of Success on the Merits....9

C. Procedural History and Statement of Jurisdiction....11

IV. Standard of Review....11

V. Argument....12

A. Factors Courts Consider in Determining Whether to Grant a Preliminary Injunction....12

B. The District Court Did Not Abuse its Discretion in Denying Gerritsen's Motion for a Preliminary Injunction....13

1. No Serious Question Exists as to Whether Gerritsen is Likely to Succeed on the Merits, as Neither the Cross nor the Nativity Scene Violates the Establishment Clause and Both Displays Have Been Present for Many Years....13

2. Gerritsen Has Not Suffered Irreparable Injury, as He Waited More than a Year Before Requesting Injunctive Relief....20

3. The Balance of Equities Does Not Favor Gerritsen and a Preliminary Injunction is Not in the Public Interest....24

C. No Basis Exists to Reassign the Case to a Different District Judge. ..26

VI. Conclusion ..........................................................................................30

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

All. *for the Wild Rockies v. Cottrell,*
*632* F.3d 1127 (9th Cir. 2011) .......... 13, 20
Am. *Legion v. Am. Humanist Ass'n,*
*588* U.S. 29 (2019) .......... passim
n *Bacus v. Palo Verde Unified Sch. Dist. Bd. of Educ.,*
11 F. Supp. 2d 1192 (C.D. Cal. 199 .......... 22
*In re Marshal,*
721 F.3d 103239 (9th Cir. 201 .......... 29
*Planned Parenthood Great Nw., Hawaii, Alaska, Indiana, Kentucky v. Labrado,*
122 F.4th 82545 (9th Cir. 202 .......... 26
*Cnty. of Allegheny v. ACL,*
492 U.S. 57366 (198 .......... 17, 18
*Neff v. Johnso,*
2022 WL 17080163, at*2 (C.D. Cal. Oct. 14, 202 .......... 28
*United States v. Sears, Roebuck & Co,*
785 F.2d 77780 (9th Cir. 198 .......... 27
*Elrod v. Burn,*
427 U.S. 347 (197 .......... 23
*Garcia v. Google, Inc,*
786 F.3d 73346 (9th Cir. 201 .......... 21
*Int'l Molders' & Allied Workers' Loc. Union No. 164 v. Nelso,*
799 F.2d 54755 (9th Cir. 198 .......... 28
*Liteky v. United State,*
510 U.S. 54050 (199 .......... 29
*Manley v. Rowle,*
847 F.3d 70512 (9th Cir. 201 .......... 26
*Thakur v. Trum,*
176 F.4th 118704 (9th Cir. 202 .......... 20
Jo*hnson v. Couturier,*
*572* F.3d 1067 (9th Cir. 2009) .......... 11
Ken*nedy v. Bremerton Sch. Dist.,*
*597* U.S. 507 (2022) .......... 19, 24
*Kondrat'yev v. City of Pensacol,*
949 F.3d 131931 (11th Cir. 202 .......... 16

*Lemon v. Kurtzma*,
403 U.S. 60215 (197 ....................................................................................18
*Nken v. Holde*,
556 U.S. 41835 (200 ....................................................................................24
Ly*nch v. Donnelly*,
*46*5 U.S. 668 (1984)...................................................................... 10, 19, 25
*Miss World (UK) Ltd. v. Mrs. Am. Pageants, Inc*,
856 F.2d 144548 (9th Cir. 198 .....................................................................24
Pe*rrier-Bilbo v. United States*,
*95*4 F.3d 413 (1st Cir. 2020)........................................................................14
*United States v. Holland*,
519 F.3d 909 (9th Cir. 2008) ........................................................................29
Wi*nter v. Natural Resources Defense Council, Inc.*,
*55*5 US 7 (2008)...........................................................................................12
*Woodring v. Jackson County*,
*98*6 F.3d 979 (7th Cir. 2021) ........................................................................14

**Statutes**

28 U.S.C., Section 1 ..........................................................................................29
28 U.S.C., Section 4 ..........................................................................................29
28 U.S.C., Section 1292(a) .................................................................................11
28 U.S.C., Section 1331 .....................................................................................11
28 U.S.C., Section 1343 .....................................................................................11
42 U.S.C., Section 1983 .....................................................................................11
California Civil Code, Section 51.7 ...................................................................11
California Civil Code, Section 52.1 ...................................................................11

# I. INTRODUCTION

Plaintiff and Appellant Jack Gerritsen claims that two purportedly religious displays at a public park—a cross and a Nativity scene—cause him "feelings of exclusion and offense" because he is an atheist, and violate the Establishment Clause in the First Amendment of the United States Constitution. Gerritsen sought a preliminary injunction that would require the City to cover or remove these displays.

These displays, however, have been part of the fabric of the Defendant and Appellee City of Los Angeles ("City") for nearly a century, and they commemorate the City's birthday and serve as a key part of a holiday tradition observed in Mexico and other Latin American countries, respectively.

For that reason and the fact that a "creche presents no realistic danger of violating the Establishment Clause," the district court correctly denied Gerritsen's request for a preliminary injunction. Gerritsen presents no additional evidence or arguments here on appeal. Accordingly, as the district court did not abuse its discretion, this Court should affirm.

This Court should also deny Gerritsen's request to reassign the case to a different judge because Gerritsen cannot show that the district court was biased against him or that there were any unusual circumstances.

//

## II. ISSUES PRESENTED

(1) Did the district court abuse its discretion in denying Gerritsen's motion for a preliminary injunction, where it found that he failed to establish a likelihood of success on the merits on his claims?

(2) Unable to establish any record of bias or demonstrate unusual circumstances, does Gerritsen have any basis to justify his request for a different district judge on remand?

The answer to both questions is no.

## III. RELEVANT BACKGROUND

### A. Factual Summary.

Gerritsen is a 90-year-old man who visits El Pueblo de Los Angeles Historical Monument ("El Pueblo"), a public and historic park in the City, several times per month. (1-ER-3; AOB 8.) He visits El Pueblo to distribute handbills and stickers and for recreation. (1-ER-3; 1-ER-57, Gerritsen Decl. ¶ 6.) But "after 89 years of life" and having "witnessed how religion is a curse on humanity," he claims that two ostensibly religious displays in El Pueblo are causing him "ongoing harm through feelings of exclusion and offense." (AOB 12.)

The first is a wooden cross located on Olvera Street in El Pueblo ("Olvera Street Cross"). The City erected the Olvera Street Cross in 1929 to commemorate Los Angeles's 148th birthday, though the City replaced it several times due to

weathering. (1-ER-3.) The second is a creche, or Nativity scene, at the Kiosko El Pueblo, a gazebo located near the Olvera Street Cross. (1-ER-3–4; AOB 8.) The City displays the creche each holiday season during the celebration of Las Posadas, a tradition observed in Mexico and other Latin American countries that commemorates Joseph and Mary's search for shelter before the birth of Jesus. (1-ER-4.) This celebration has been a part of Olvera Street since its founding nearly a century ago, in 1930. (1-ER-8.) The record does not reflect when the City began including the creche as part of the display. (1-ER-7.)

Per Gerritsen, the Olvera Street Cross has "no plaques, inscriptions, or secular features."[1] (AOB 8.) And while he acknowledges that it commemorates the City's founding, he claims that it "replicates Spanish missionary 'holy crosses,' per historical accounts" he reviewed. (AOB 8.) As for the creche, he claims that it too is "isolated" and is not accompanied by "Santa, lights, or secular items." (AOB 9.)

According to Gerritsen, he saw the creche display as early as November 2024. (1-ER-57, Gerritsen Decl. ¶ 3.) He also claims to see the cross "each time" he visits El Pueblo. (1-ER-46, Gerritsen Supplemental Decl. ¶ 6.) Due to feeling

---

[1] The district court took judicial notice of a "plaque located near the Olvera Street Cross" that provided that the City erected the Olvera Street Cross in 1929. (1-ER-15 n. 3 (citing Olvera Street Cross, The Historical Marker Database (last visited Apr. 8, 2026), https://v.rww.hmdb.org/m.asp?m=l 62936).)

"offend[ed]" and "excluded as a non-believer," (1-ER-57, Gerritsen Decl. ¶ 4), he moved for a preliminary injunction on February 17, 2026, requesting that the City remove or cover the cross and refrain from displaying the creche. (1-ER-55.) The district court denied the preliminary injunction motion on May 14, 2026. (1-ER-9.)

### B. The District Court Denied the Motion for Preliminary Injunction on the Grounds that Gerritsen Did Not Demonstrate a Likelihood of Success on the Merits.

The district court, considering and analogizing to *Am. Legion v. Am. Humanist Ass'n*, 588 U.S. 29 (2019), held that the Olvera Street Cross, having been "erected in 1929, almost a century ago," was "established" and "longstanding" and thus enjoyed a "presumption of constitutionality." (1-ER-6–7.) The district court found that Gerritsen offered no evidence indicating otherwise, and "no evidence suggest[ed] that the Olvera Street Cross was maintained with discriminatory intent or that it conveys deliberate disrespect" on the basis of religion. (1-ER-7 (citing *Am. Legion*, 588 U.S. at 38, 63–64 (internal modifications omitted).)

As for the creche, the district court could not find that it was entitled to the same presumption of constitutionality, due to a lack of information in the record on how long the City has displayed the creche. (1-ER-7.) But looking to historical practices as well as Supreme Court precedent, it found that the "creche fits within

the broader tradition of recognizing Christmas as a public holiday, depicting the origin and story behind the holiday." (1-ER-8.) The creche is "not novel, but rather consistent with a longstanding pattern of government recognition of public holidays." (1-ER-8 (citing *Lynch v. Donnelly*, 465 U.S. 668, 677 (1984).). Further, not only is the creche displayed as part of a "broader national tradition, but it is also a central piece of a longstanding local cultural practice." (1-ER-8.) The district court found, in fact, that the City has celebrated the local cultural practice—Las Posadas, commemorating Mary and Joseph's search for shelter—for "nearly a century."[2] Finally, the district court found that the "constitutionality of a monument, symbol, or practice does not depend on the inclusion of secular objects" and that "when displayed by government during the Christmas season, a creche presents no realistic danger of' violating the Establishment Clause." (1-ER-8–9.)

Accordingly, the district court held that Gerritsen failed to establish a likelihood of success on the merits on either of his Establishment Clause claims, and denied his request for a preliminary injunction. (1-ER-9.) Because "[l]ikelihood of success on the merits is the most important *Winter* factor," the

[2] The district court took judicial notice of the fact that per the City's official website, the creche is displayed on Olvera Street as part of Las Posadas. (1-ER-8 n. 5.)

district court declined to consider the other *Winter* factors and denied the motion for preliminary injunction. (1-ER-9.)

### C. Procedural History and Statement of Jurisdiction.

Gerritsen filed his lawsuit alleging violations of 42 U.S.C. section 1983 and California Civil Code sections 51.7 and 52.1 on September 4, 2025. (1-ER-87). He filed his motion for a preliminary injunction on February 17, 2026, and the district court denied the motion on May 14, 2026. (1-ER-12, 49). Gerritsen timely filed his notice of appeal on May 18, 2026. (1-ER-10). Trial is not yet set. The motions cutoff is September 2, 2026. (U.S.D.C. Dkt. 9.)

The district court had jurisdiction over the lawsuit and the motion for preliminary injunction pursuant to 28 U.S.C. sections 1331 and 1343. This Court has jurisdiction of Gerritsen's appeal pursuant to 28 U.S.C. section 1292(a).

## IV. STANDARD OF REVIEW

Appellate courts review the grant or denial of a preliminary injunction for abuse of discretion. *Johnson v. Couturier*, 572 F.3d 1067, 1078 (9th Cir. 2009). "This review is limited and deferential, and it does not extend to the underlying merits of the case." *Farris v. Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012). The district court "only abuses its discretion when its application of the standard is illogical, implausible, or without support in inferences that may be drawn from the

record." *Doe v. Kelly*, 878 F.3d 710, 719 (9th Cir. 2017) (internal quotations omitted).

That is, "as long as the district court got the law right, it will not be reversed simply because the appellate court would have arrived at a different result if it had applied the law to the facts of the case." *Seabrook*, 677 F.3d at 864.

## V. ARGUMENT

### A. Factors Courts Consider in Determining Whether to Grant a Preliminary Injunction.

To obtain a preliminary injunction, the movant must demonstrate all of the following: (1) a likelihood of success on merits; (2) a likelihood of irreparable injury in the absence of preliminary relief; (3) that the balance of equities tips sharply in its favor; and (4) that an injunction is in the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 US 7, 20 (2008). It is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22.

As part of the *Winter* test, the Ninth Circuit applies the so-called "serious questions" approach, under which "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All.*

*for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). Plaintiffs "may not obtain a preliminary injunction unless they can show that irreparable harm is likely to result in the absence of the injunction." *Id.* In other words, the court applies a "sliding scale" to the elements of the preliminary injunction test "so that a stronger showing of one element may offset a weaker showing of another," but the plaintiff must still establish all four elements. *Id.* at 1131, 1135.

Finally, "[w]here no new harm is imminent, and where no compelling reason is apparent," courts are "not required to issue a preliminary injunction against a practice which has continued unchallenged for several years." *Oakland Trib., Inc. v. Chron. Pub. Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985).

**B. The District Court Did Not Abuse its Discretion in Denying Gerritsen's Motion for a Preliminary Injunction.**

1. No Serious Question Exists as to Whether Gerritsen is Likely to Succeed on the Merits, as Neither the Cross nor the Nativity Scene Violates the Establishment Clause and Both Displays Have Been Present for Many Years.

"[T]he Establishment Clause must be interpreted by reference to historical practices and understandings." *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 535 (2022) (internal quotations and citation omitted). There is "a strong presumption of constitutionality" for "established, religiously expressive monuments, symbols,

and practices[.]" *Am. Legion*, 588 U.S. at 57. In this context, "established" refers to the age of the challenged monument, symbol, or practice. *See Woodring v. Jackson County*, 986 F.3d 979, 994 (7th Cir. 2021) (creche did not enjoy presumption of constitutionality because it was only 15 years old); *Perrier-Bilbo v. United States*, 954 F.3d 413, 427–28 (1st Cir. 2020) (district court correctly dismissed Establishment Clause claim because the phrase "so help me God" has been part of the oath of citizenship for 90 years). Moreover, replacement or maintenance of a display does not undermine its status as "established," particularly where "it is retained in its original place and form." *Am. Legion*, 588 U.S. at 64. A plaintiff may overcome this presumption of constitutionality by demonstrating either that the government maintains the challenged monument, symbol, or practice with discriminatory intent or that it conveys "deliberate[] disrespect[]" on the basis of religion. *See id.* at 38, 63–64. Such monuments, symbols, and practices "must be viewed in [their] historical context." *Id.* at 38.

#### a. The district court correctly denied the preliminary injunction regarding the Olvera Street Cross.

Here, the Supreme Court makes clear that the Olvera Street Cross is presumptively constitutional, and the district court held accordingly. (1-ER-7.) Gerritsen offers nothing to rebut that presumption. (1-ER-7.) Indeed, his opening

brief is identical in substance to his motion for preliminary injunction. (*See generally*, AOB.)

In *American Legion*, the Supreme Court upheld the display of a Latin cross the State of Maryland erected on public land to commemorate soldiers who lost their lives in World War I. *Am. Legion*, 588 U.S. at 66. Maryland had displayed the cross on public property since 1925. *Id.* at 36. The Court held that the passage of time "gives rise to a strong presumption of constitutionality" because: (1) identifying the "original purpose or purposes may be especially difficult" for "monuments, symbols, or practices that were first established long ago"; (2) "as time goes by, the purposes associated with an established monument, symbol, or practice often multiply"; (3) "just as the purpose for maintaining a monument, symbol, or practice may evolve, the 'message' conveyed may change over time"; and (4) "when time's passage imbues a religiously expressive monument, symbol, or practice with this kind of familiarity and historical significance, removing it may no longer appear neutral, especially to the local community for which it has taken on particular meaning." *Id.* at 52–57. Ultimately, the Court found that the cross, while "undoubtedly a Christian symbol," came to represent far more. *Id.* at 66. "For some, that monument is a symbolic resting place for ancestors who never returned home. For others, it is a place for the community to gather and honor all veterans and their sacrifices for our Nation. For others still, it is a historical

landmark." *Id.* In such an instance, "destroying or defacing the Cross that has stood undisturbed for nearly a century would not be neutral and would not further the ideals of respect and tolerance embodied in the First Amendment." *Id.*

The same applies here. Similar to the cross in *American Legion*, the Olvera Street Cross is a Latin cross, and while it is a symbol of Christianity, it represents far more. The district court correctly found, and Gerritsen himself concedes, that the Olvera Street Cross is a "longstanding" symbol that commemorates the founding of Los Angeles. (1-ER-6–7.; AOB 11.) And notwithstanding Gerritsen's contention that the current Olvera Street Cross is a replacement cross that has only been around for approximately 20 years, (AOB 8, 11), the district court correctly found that "the Olvera Street Cross was erected in 1929, almost a century ago." (1-ER-6.) In fact, Gerritsen himself submits that any replacement of the Olvera Street Cross was "due to weathering" and that a "historical context" surrounds it. (1-ER-53); *see Am. Legion*, 588 U.S. at 64. Thus, the near-100-year-old Olvera Street Cross is a monument or symbol that is established and longstanding, and is entitled to a presumption of constitutionality. *See also Kondrat'yev v. City of Pensacola*, 949 F.3d 1319, 1331 (11th Cir. 2020) (a 50-year-old Latin cross in a park is an "established" monument or symbol and presumptively constitutional).

Gerritsen offers nothing to rebut this presumption of constitutionality. His opening brief does not contain any substantive argument or evidence not presented

in the preliminary injunction motion he filed with the district court. And as the district court correctly found, "there is no evidence suggesting that the Olvera Street Cross was maintained with discriminatory intent or that it conveys "deliberate disrespect" on the basis of religion. (1-ER-7 (citing *Am. Legion*, 588 U.S. at 38, 63–64 (internal modifications omitted).) Therefore, Gerritsen fails to establish a likelihood of success on the merits of his Establishment Clause claim for the Olvera Street Cross.

**b. The district court correctly found the creche did not violate the Establishment Clause.**

Regarding the creche, the district court correctly found that it "fits within the broader tradition of recognizing Christmas as a public holiday, depicting the origin and story behind the holiday." (1-ER-8.) The creche is "not novel" and is both part of a "broader national tradition" and "a central piece of a longstanding local cultural practice." (1-ER-8.) The City has celebrated the local cultural practice—Las Posadas—for "nearly a century." (1-ER-8.) Under such circumstances, "a creche presents no realistic danger of violating the Establishment Clause." (1-ER-8 (citing *Cnty. of Allegheny v. ACLU*, 492 U.S. 573, 666 (1989) (Kennedy, J., concurring in part and dissenting in part).)

The district court did not err—much less abuse its discretion—in making these findings. Zero evidence suggests that the creche at the Kiosko El Pueblo is

anything but a historic symbol in accordance with this country's practices. Accordingly, Gerritsen is also unlikely to succeed on the merits of his Establishment Clause claim on the creche.

Relying on *Cnty. of Allegheny*, which held that a creche display violated the Establishment Clause because it had "the effect of endorsing a patently Christian message," *Cnty. of Allegheny*, 492 U.S. at 601, Gerritsen erroneously argues that the lack of "non-religious inscriptions and context" and "sufficient secular elements" renders both the Olvera Street Cross and the creche unconstitutional. (AOB 10–11.) Key is that *Cnty. of Allegheny* relied on an analytical framework focused on the potential for excessive government entanglement provided by *Lemon v. Kurtzman*, 403 U.S. 602, 615 (1971). The *Lemon* approach "called for an examination of a law's purposes, effects, and potential for entanglement with religion . . . [and] also came to involve estimations about whether a 'reasonable observer' would consider the government's challenged action an 'endorsement' of religion." *Kennedy*, 597 U.S. at 534 (internal citations omitted).

The Supreme Court, however, "long ago abandoned *Lemon* and its endorsement test offshoot." *Kennedy*, 597 U.S. at 534. "[T]hese tests invited chaos in lower courts, led to differing results in materially identical cases, and created a minefield for legislators." *Id.* (internal quotations and citations omitted). Religious activity cannot be banned "based on perceptions or discomfort," and the

Establishment Clause does not "compel the government to purge from the public sphere anything an objective observer could reasonably infer endorses or partakes of the religious." *Id.* at 534–35 (internal quotations and citations omitted). In other words, Gerritsen relies on bad law.

Instead, the "historical practices and understandings" control, *id.* at 535, and as stated above, the historical practices and understandings as to both the Olvera Street Cross and the creche weigh in favor of the City.

Gerritsen also erroneously claims that the lack of surrounding secular symbols renders these displays unconstitutional. (AOB 10.) He relies on *Lynch* but misstates its rationale, mistakenly arguing that *Lynch* upheld a creche "only in a broader secular display." (AOB 10.) In *Lynch*, the Supreme Court held that a city-owned and displayed nativity scene including the infant Jesus, Mary, and Joseph did not violate the Establishment Clause. *Lynch*, 465 U.S. at 687. And in examining the "narrow question" of "whether there is a secular purpose" for a creche display, the Court stated: "The display is sponsored by the City to celebrate the Holiday and to depict the origins of that Holiday. These are legitimate secular purposes." *Id.* at 681. Here too, the district court correctly found that "the creche fits within the broader tradition of recognizing Christmas as a public holiday, depicting the origin and story behind the holiday." (1-ER-8.) Not only does a legitimate secular purpose exist behind the creche display in El Pueblo here, but

looking to the history and practices, per *Kennedy*, it is a "central piece of a longstanding local cultural practice." (1-ER-8.)

Accordingly, since Gerritsen is unlikely to succeed on the merits of his Establishment Clause claim on either display, this court should affirm the district court's denial of his preliminary injunction motion.

2. Gerritsen Has Not Suffered Irreparable Injury, as He Waited More than a Year Before Requesting Injunctive Relief.

As the district court did not abuse its discretion in concluding that Gerritsen is unlikely to succeed on the merits, this Court need not continue its analysis. *See Thakur v. Trump*, 176 F.4th 1187, 1204 (9th Cir. 2026) ("The likelihood of success on the merits is the most important *Winter* factor, and if a movant fails to meet this threshold inquiry, the court need not consider the other factors.") (internal quotations and citation omitted). But assuming the Court wishes to reach the remaining *Winter* factors, it should find that Gerritsen fails on each of the remaining elements as well.

On the irreparable injury element, "the moving party has to establish a likelihood of success on the merits of the case and a clear showing of the *likelihood*—not the mere possibility—of irreparable injury in the absence of the preliminary injunction." *Westphal v. Wagner*, 2010 WL 11597363, at *3 (C.D. Cal. May 11, 2010) (emphasis in original); *All. for the Wild Rockies*, 632 F.3d at 1135

("[P]laintiffs may not obtain a preliminary injunction unless they can show that irreparable harm is likely to result in the absence of the injunction."). A "delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm." *Oakland Trib., Inc.*, 762 F.2d at 1377. A delay of just several months can undercut a plaintiff's request for preliminary injunction. *See Garcia v. Google, Inc.*, 786 F.3d 733, 746 (9th Cir. 2015) (the district court did not abuse its discretion in denying the plaintiff's preliminary injunction request in part because the plaintiff "waited months" to seek injunctive relief).

In this case, not only have the Olvera Street Cross and creche been part of El Pueblo for many years, Gerritsen himself admitted that he observed the creche as early as November 2024. (1-ER-57, Gerritsen Decl. ¶ 3.) He sees the cross "each time" he visits El Pueblo—two to three times each month—and is "repeatedly exposed to these symbols." (1-ER-46, Gerritsen Supplemental Decl. ¶ 6; 1-ER-57, Gerritsen Decl. ¶ 6.) But he waited to file his preliminary injunction motion until February 2026—a delay of more than one year and three months after he first saw the displays and more than five months after he initially filed his lawsuit. Given that even a delay of five months undercuts a preliminary injunction request, *see Garcia*, 786 F.3d at 738, Gerritsen's excessive delay here certainly "implies a lack of urgency and irreparable harm." *Oakland Trib., Inc.*, 762 F.2d at 1377. Accordingly, this element weighs against reversing the district court.

Further, it is unlikely that the displays at issue in this case would, in fact, cause irreparable harm because of Gerritsen himself is unlikely to be indoctrinated. In *Bacus v. Palo Verde Unified Sch. Dist. Bd. of Educ.*, 11 F. Supp. 2d 1192 (C.D. Cal. 1998), the plaintiffs alleged that the religious prayer invocation at the opening of school board meetings violated the Establishment Clause. *Bacus*, 11 F. Supp. 2d at 1193. Even where the plaintiffs submitted declarations stating that they would continue to attend school board meetings, the district court denied their motion for a preliminary injunction, finding that "neither is required to be in attendance at the invocation which occurs at the opening of the meeting," and both of the plaintiffs are "adults and their age, background, education, and sophistication precludes them from being indoctrinated as to religious principles in which they do not believe, Christian or otherwise." *Id.* at 1198.

In this case, Gerritsen is a 90-year-old atheist who has enough life experience, self-assuredness, and education not to be indoctrinated as to religious principles in which he does not believe. In fact, Gerritsen stated under the penalty of perjury: "I hereby declare that after 89 years of life I have witnessed how religion is a curse on humanity." (1-ER-19, Second Supplemental Decl. ¶ 3; AOB 8.) He also has reviewed historical accounts of the founding of the City and acknowledges the "significant history" of the cross as a symbol of the City's founding. (1-ER-19–20, Second Supplemental Decl. ¶¶ 4, 8.) Particularly given

that he frequented El Pueblo several times every month even with the knowledge that the Olvera Street Cross is there and that the creche would likely be displayed again in the upcoming holiday season, it is unreasonable to say that he suffered irreparable harm.

Gerritsen's reliance on *Elrod v. Burns*, 427 U.S. 347 (1976), to support his claim that "[o]ngoing exposure to unconstitutional endorsement causes irreparable injury," is inapposite. (AOB 12.) In *Elrod*, the issue was whether public employees who alleged the public entity discharged or threatened them with discharge "solely because of their partisan political affiliation or nonaffiliation" stated a claim for constitutional violations. *Elrod*, 427 U.S. at 349. There, the Supreme Court held that these so-called "patronage dismissals" were unconstitutional and that the plaintiffs had thus stated a valid claim for relief. *Id.* at 373. The plaintiffs also requested a preliminary injunction and on that point, the Court found that they "sufficiently demonstrated a probability of success on the merits." *Id.* at 374.

That is far from the situation here. Gerritsen's allegations have nothing to do with any fear of dismissal; they are comprised of his feelings of "exclusion" and "offense" at viewing the Olvera Street Cross several times a month and the creche during the holiday season. (AOB 9.) In other words, the City is not threatening his First Amendment rights in the way the public entity threatened the *Elrod* plaintiffs'. Here, Gerritsen is free to turn his back on the displays and no one is

stopping him from speaking out against them when he is at El Pueblo and Olvera Street. *See Kennedy*, 597 U.S. at 534 ("[T]he Establishment Clause does not include anything like a modified heckler's veto, in which religious activity can be proscribed based on perceptions or discomfort.") (internal quotations and modifications omitted). Further, as the district court noted, Gerritsen has not submitted any evidence explaining why he would be likely to succeed on the merits, and the "less the likelihood of success on the merits, the greater irreparable harm is required." *Bacus*, 11 F. Supp. 2d at 1198; *see also Miss World (UK) Ltd. v. Mrs. Am. Pageants, Inc.*, 856 F.2d 1445, 1448 (9th Cir. 1988) ("[T]he required showing of harm varies inversely with the required showing of meritoriousness.").

3. The Balance of Equities Does Not Favor Gerritsen and a Preliminary Injunction is Not in the Public Interest.

When the nonmovant on a preliminary injunction motion is the government, "the last two *Winter* factors [the balance of equities and whether a preliminary injunction is in the public interest] merge." *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). "The public interest inquiry primarily addresses impact on non-parties rather than parties. It embodies the Supreme Court's direction that, in exercising their sound discretion, courts of equity should pay particular regard for the public consequences in

employing the extraordinary remedy of injunction." *CTIA – The Wireless Ass'n v. City of Berkeley, California*, 928 F.3d 832, 852 (9th Cir. 2019).

Gerritsen claims that removing or covering the cross and refraining from displaying the creche would place only a "[m]inimal burden" on the City because it "costs little and preserves [El Pueblo's] secular use." (AOB 12.) Not so. The Olvera Street Cross is an "established" and "longstanding" monument that the City first erected in 1929, and the creche "depicts the historical origins of this traditional event long recognized as a National Holiday" and also is part of a local City practice that has been ongoing for nearly a century. (1-ER-7–8 (citing *Lynch*, 465 U.S. at 680).) These are legitimate purposes for such monuments and displays, and the public has significant interest in being able to commemorate its history and celebrate holidays. *See Lynch*, 465 U.S. at 681. At the same time, while Gerritsen purports to endure "feelings of exclusion/offense as a non-believer," (AOB 7), those feelings are not significant enough to (1) keep him from visiting El Pueblo, as he still visits several times each month, or (2) request the preliminary injunction promptly, as he did not file his motion for more than a year after he saw the offending displays and more than five months after he filed his lawsuit.

In short, far from promoting religious neutrality, removing or covering monuments and symbols that have "stood undisturbed for nearly a century would

not be neutral and would not further the ideals of respect and tolerance embodied in the First Amendment." *Am. Legion*, 588 U.S. at 66.

### C. No Basis Exists to Reassign the Case to a Different District Judge.

"Ordinarily, further proceedings in a case remanded to the district judge are conducted by the judge who originally [had] the case." *United States v. Sears, Roebuck & Co.*, 785 F.2d 777, 780 (9th Cir. 1986). Unless "proof of personal bias" exists, courts "remand to a new judge only under unusual circumstances." *Id.* (internal quotations and citation omitted). Such "unusual circumstances necessary for remand to a different judge rarely exist." *Evon v. L. Offs. of Sidney Mickell*, 688 F.3d 1015, 1034 (9th Cir. 2012) (internal quotations and citation omitted).

To demonstrate bias, Gerritsen needs to show that a "reasonable outside observer could conclude that the district judge harbors personal bias against" him. *Planned Parenthood Great Nw., Hawaii, Alaska, Indiana, Kentucky v. Labrador*, 122 F.4th 825, 845 (9th Cir. 2024). Simply ruling against a party—even if erroneous—does not warrant reassignment. *See Manley v. Rowley*, 847 F.3d 705, 712 (9th Cir. 2017). Here, the district court never made any comments or statements that even hint of bias, discrimination, or that the district court has any personal or pecuniary interest or investment in the outcome of the case, and Gerritsen cites to none. No reasonable outside observer would be able to find any bias from the judge in this case.

Absent proof of bias, courts consider: (1) whether the original judge would have "substantial difficulty" setting aside previously-expressed views or findings an appellate court determined was erroneously rejected evidence; (2) whether reassignment is "advisable to preserve the appearance of justice"; and (3) whether reassignment would entail disproportionate "waste and duplication." *Id.* "The first two of these factors are of equal importance, and a finding of one of them would support a remand to a different judge." *Id.* Even if "error is found in district court proceedings," remand to a different district judge is "not the usual remedy." *United States v. Arnett*, 628 F.2d 1162, 1165 (9th Cir. 1979). Only on "rare occasions" are cases assigned to a different judge. *Sears, Roebuck & Co.*, 785 F.2d at 780.

Here, Gerritsen has not and cannot establish that the district judge was biased or that the case presented "unusual circumstances" to warrant remand to a different district judge. While Gerritsen submitted conclusory statements in his brief that the judge favored the government and "bended [sic] over backwards to help the BURDENS ON THE CITY," (AOB 13, emphasis in original), he did not and cannot cite to a single line in the district court's order that supports that contention. Accordingly, not only did the district not err in its ruling here, even if it did, nothing suggests that the district judge would have any difficulty setting any ruling aside if this Court reverses the district court's order. Keeping the matter with the same district judge would also preserve the appearance of justice, as here,

because no reason exists not to. As stated above, only in "unusual circumstances" are cases reassigned; to do so here would disrupt what is otherwise a fairly standard case. Finally, on waste and duplication, this too favors keeping the matter with the same district judge. Discovery has closed, the motions cutoff is approaching, and remanding to a different judge would require the new judge to learn the case from the ground up, which is impractical and unnecessary at this stage.

Gerritsen also incorrectly argues that this Court should remand the case to a different judge because the district court did not hold a hearing on the motion for preliminary injunction, and instead decided the motion on the papers, without oral argument. (AOB 13.) The Central District of California's local rules provide that the court "may dispense with oral argument on any motion except where an oral hearing is required," and a hearing is not required for preliminary injunction motions. *See Int'l Molders' & Allied Workers' Loc. Union No. 164 v. Nelson*, 799 F.2d 547, 555 (9th Cir. 1986) ("The district court did not abuse its discretion in granting the preliminary injunction without an evidentiary hearing."); *Neff v. Johnson*, 2022 WL 17080163, at *2 (C.D. Cal. Oct. 14, 2022) ("A district court is not required to hold an evidentiary hearing before denying a motion seeking a preliminary injunction[.]").

Notably, as the matter is ongoing in the district court, Gerritsen had (and continues to have) the option to move to disqualify the district judge pursuant to 28 U.S.C. section 144 or 28 U.S.C. section 455.[3] The grant or denial of a motion to disqualify the judge would then be reviewed for abuse of discretion.[4] *In re Marshall*, 721 F.3d 1032, 1039 (9th Cir. 2013). He has not made such a motion, and in any event, could not demonstrate the requisite "bias or prejudice" to prevail. *See Liteky v. United States*, 510 U.S. 540, 550 (1994) ("bias or prejudice . . . connote a favorable or unfavorable disposition or opinion that is somehow wrongful or inappropriate, either because it is undeserved, or because it rests upon knowledge that the subject ought not to possess . . . or because it is excessive in degree").

---

[3] 28 U.S.C. section 144 provides: "Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding."

28 U.S.C. section 455 provides: "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."

[4] While "failure to move for recusal at the trial level does not preclude raising on appeal the issue of recusal under § 455[,] . . . if no motion is made to the trial court judge[,] a party will bear a greater burden on appeal in demonstrating that the judge erred in failing to grant recusal." *United States v. Holland*, 519 F.3d 909, 911–12 (9th Cir. 2008) (internal modifications omitted).

In short, Gerritsen presents no evidence indicating that the district judge here was biased, or that anything unusual occurred in this case. Therefore, not only should this Court affirm the district court's order, but even if this Court reverses the ruling on the preliminary injunction motion, it should return the case to Judge Klausner.

## VI. CONCLUSION

For the foregoing reasons, the City respectfully requests this Court to affirm the judgment of the district court denying Gerritsen's request for a preliminary injunction, and remand the case back to Judge Klausner for further proceedings.

Respectfully submitted,

Dated: August 17, 2026

LOS ANGELES CITY ATTORNEY'S OFFICE
Hydee Feldstein Soto
Denise C. Mills
Kathleen A Kenealy
Shaun Dabby Jacobs

***/s/ Edward Han***

EDWARD HAN,
Deputy City Attorney

Attorneys for Defendants and Appellees,
CITY OF LOS ANGELES and DOMENIKA LYNCH

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

**Form 8. Certificate of Compliance for Briefs**

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 26-3278

I am the attorney or self-represented party.

**This brief contains** 5,811 **words,** including [ ] words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

(●) complies with the word limit of Cir. R. 32-1.

( ) is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

( ) is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

( ) is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

( ) complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

- [ ] it is a joint brief submitted by separately represented parties.
- [ ] a party or parties are filing a single brief in response to multiple briefs.
- [ ] a party or parties are filing a single brief in response to a longer joint brief.

( ) complies with the length limit designated by court order dated [ ].

( ) is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** /s/ Edward Han **Date** 8/17/26

*(use "s/[typed name]" to sign electronically-filed documents)*

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 15. Certificate of Service for Electronic Filing

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form15instructions.pdf*

**9th Cir. Case Number(s)** 26-3278

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**

☐ I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are NOT Registered for Electronic Filing:**

☒ I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

Jack Gerritsen
6217 1-2 Palm Avenue,
Bell, CA 90201

**Description of Document(s)** *(required for all documents)*:

Answering Brief and Appellees' Excerpts of Record

**Signature** /s/ Brenda Perez **Date** Aug 17, 2026

*(use "s/[typed name]" to sign electronically-filed documents)*