No. 26-3278

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

**JACK GERRITSEN, *et al.*,**
Plaintiffs and Appellants,
v.

**CITY OF LOS ANGELES, *et al.*,**
Defendants and Appellees.

Appeal from the United States District Court
for the Central District of California
Case No. 2:25-cv-08760
The Hon. R. Gary Klausner

**APPELLEES' EXCERPTS OF RECORD**
**Volume 1 of 1 (Pages 1 - 108)**

**HYDEE FELDSTEIN SOTO,** City Attorney (SBN 106866)
**DENISE C. MILLS,** Chief Deputy City Attorney (SBN 191992)
**KATHLEEN A. KENEALY,** Chief Assistant City Attorney (SBN 212289)
**SHAUN DABBY JACOBS,** Supervising Asst. City Attorney (SBN 185073)
**EDWARD HAN,** Deputy City Attorney (SBN 289390)
City Hall, 200 North Spring Street, 14th Floor, Los Angeles, CA 90012
(213) 978-2217 | edward.han@lacity.org

*Attorneys for Defendants and Appellees*
CITY OF LOS ANGELES and DOMENIKA LYNCH

## Index of Excerpts of Record


| Description | Date Filed | Page No. |
|---|---|---|
| Order Denying Plaintiff's Motion for Preliminary Injunction | 5/14/26 | 3-9 |
| Notice of Appeal | 5/18/26 | 10-18 |
| Second Supplemental Declaration in Reply to Opposition to Motion for Preliminary Injunction | 3/23/26 | 19-21 |
| Opposition to Motion for Preliminary Injunction | 3/18/26 | 22-41 |
| Reply to Opposition to Motion for Preliminary Injunction, Supplemental Declaration of Jack Gerritsen | 3/17/26 | 42-48 |
| Notice of Motion for Preliminary Injunction, Declaration of Jack Gerritsen | 2/17/26 | 49-59 |
| First Amended Complaint | 1/26/26 | 60-80 |
| Answer to Complaint | 1/2/26 | 81-86 |
| Complaint | 9/4/25 | 87-104 |
| U.S. District Court Docket | N/A | 105-108 |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-08760-RGK-KS | Date | May 14, 2026 |
| Title | ***Jack Gerritsen et al. v. City of Los Angeles et al.*** | | |

| | | |
|---|---|---|
| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | |
| Joseph Remigio | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| | |
|---|---|
| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
| Not Present | Not Present |

**Proceedings:** **(IN CHAMBERS) Order Re: Plaintiffs' Motion for Preliminary Injunction [DE 13]**

## I. INTRODUCTION

On January 26, 2026, Jack Gerritsen ("Gerritsen") and Henry Frederick Ramey, Jr. (collectively, "Plaintiffs") filed a First Amended Complaint ("FAC") against the City of Los Angeles and Domenika Lynch (collectively, the "City") for violation of their rights under the First Amendment and violation of California Civil Code §§ 51.7 and 52.1.[1] Specifically, Plaintiffs allege that the City has prevented them from distributing handbills and stickers in a public park without a permit, in violation of the Free Speech Clause. They further allege that the City maintains two displays that endorse religion, in violation of the Establishment Clause.

On February 17, 2026, Plaintiffs filed the instant Motion for Preliminary Injunction ("Motion"), seeking to prevent the City from maintaining the two separate religious displays. As such, the Motion is limited to Plaintiffs' Establishment Clause claims. For the following reasons, the Court **DENIES** the request for Preliminary Injunction.

## II. FACTUAL BACKGROUND

The facts are alleged as follows.

El Pueblo de Los Angeles Historical Monument ("El Pueblo") is a 44-acre public, city-owned historic park marking the birthplace of the City of Los Angeles. Within El Pueblo, on Olvera Street, is a wooden cross ("Olvera Street Cross") that was erected in 1929 to commemorate Los Angeles's 148th birthday. Plaintiffs allege that because of weathering, the Olvera Street Cross has been replaced multiple times.

[1] The Court notes that Plaintiffs also assert claims under the Fourth, Fifth, and Fourteenth Amendments, as well as Article I, Section 14 of the California Constitution, although the basis for these claims is not clearly articulated.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-08760-RGK-KS | Date | May 14, 2026 |
| Title | ***Jack Gerritsen et al. v. City of Los Angeles et al.*** | | |

Also within El Pueblo is the Kiosko El Pueblo, a central gazebo located near the Olvera Street Cross. The City alleges that each year during the Christmas season, a crèche, or nativity scene, is displayed at the Kiosko El Pueblo. According to the City, the crèche plays a key part in the celebration of Las Posadas, a tradition observed in Mexico and other Latin American countries that commemorates Joseph and Mary's search for shelter before the birth of Jesus. The City further contends that the event is attended by people of all backgrounds and that the tradition has been part of Olvera Street since its founding in 1930.

In November and December 2024, Gerritsen claims that he saw the City put up a crèche display at the Kiosko El Pueblo. He also alleges he saw the Olvera Street Cross at the South entrance of Olvera Street.

## III. JUDICIAL STANDARD

"[I]njunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). To establish that relief is warranted, a plaintiff must show: (1) likelihood of success on the merits; (2) likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction is in the public interest (the "*Winter* test"). *Id.* at 20. The Ninth Circuit has adopted a sliding scale approach, in which the elements of the *Winter* test are balanced, "so that a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

## IV. DISCUSSION

Based on an alleged violation of the Establishment Clause, Plaintiffs seek an injunction requiring the City to (1) remove or cover the Olvera Street Cross and (2) refrain from displaying the crèche. As discussed below, Plaintiffs have not established a likelihood of success on the merits, and the Court therefore denies their request.

The Establishment Clause of the U.S. Constitution provides that "Congress shall make no law respecting an establishment of religion." U.S. CONST. amend. I. Although the Establishment Clause is written as a limitation on Congress, the Supreme Court has long held that it is incorporated through the Fourteenth Amendment and applies with equal force to state and local governments. *Everson v. Bd. of Educ. of Ewing Twp.*, 330 U.S. 1, 14–15 (1947). The City is thus bound by the Establishment Clause.

The test for evaluating Establishment Clause claims has evolved amorphously over time, from an examination of purposes, effects, and potential for religious entanglement, *see Lemon v. Kurtzman*, 403 U.S. 602, 612–13 (1971), to a determination of whether the government has endorsed religion, *see County of Allegheny v. ACLU*, 492 U.S. 573, 593 (1989), to a test that looks to history and tradition, *see*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-08760-RGK-KS | Date | May 14, 2026 |
| Title | ***Jack Gerritsen et al. v. City of Los Angeles et al.*** | | |

*Town of Greece v. Galloway*, 572 U.S. 565, 576 (2014). This evolution has not been linear, and historically, the guidance for what test to apply under what circumstances has been unclear. Recently, however, the Supreme Court in *Kennedy v. Bremerton School District*, 597 U.S. 507 (2022), provided clear guidance when it stated that in place of looking to purposes, effects, and endorsement, "the Establishment Clause must be interpreted by 'reference to historical practices and understandings.'" 597 U.S. at 535 (quoting *Town of Greece*, 572 U.S. at 576).[2] "Going forward, 'the line that courts and governments must draw between the permissible and the impermissible has to accord with history and faithfully reflect the understanding of the Founding Fathers.'" *Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*, 44 F.4th 867, 888 (9th Cir. 2022) (quoting *Kennedy*, 597 U.S. at 535–36). Drawing on *Town of Greece*, the *Kennedy* Court emphasized that "[a]n analysis focused on original meaning and history" has long been the rule within the Court's Establishment Clause jurisprudence. *Kennedy*, 597 U.S. at 536.

Although decided prior to *Kennedy*, *American Legion v. American Humanist Ass'n*, 588 U.S. 29 (2019), uses such an analysis to establish a category of religious symbols, monuments, and practices deemed presumptively constitutional. In this case, the Supreme Court upheld the display of a nearly century old Latin cross that was erected on public land to commemorate World War I soldiers. *Am. Legion*, 588 U.S. at 66. The Court held that the memorial "must be viewed in [its] historical context" and held that there is a strong presumption of constitutionality to "established, religiously expressive monuments, symbols, and practices." *Id.* at 38, 57. As justification for this presumption, the Supreme Court identified four considerations. *Id.* at 52–57. First, using an "original purpose" approach for assessing monuments, symbols, or practices that were established long ago "may be especially difficult." *Id.* at 52. Second, "as time goes by, the purposes associated with an established monument, symbol, or practice often multiply." *Id.* at 53. Third, the "message conveyed [by the monument, symbol, or practice] may change over time." *Id.* at 54 (internal quotation marks, citation, and alteration omitted). Fourth, removing long-standing monuments, symbols, or practices "may no longer appear neutral, especially to the local community for which it has taken on particular meaning." *Id.* at 56. The Supreme Court found that the Latin cross at issue, as well as certain other "established, religiously expressive

[2] The Supreme Court in *Kennedy* also emphasized the importance of considering the coerciveness of the government action because "coercion . . . was among the foremost hallmarks of religious establishments the framers sought to prohibit when they adopted the First Amendment." 597 U.S. at 537. However, coercion is of limited relevance in this context. The challenged actions involve passive religious displays, which neither encourage nor compel participation in religious activity. *See County of Allegheny*, 492 U.S. at 663–67 (Kennedy, J., concurring in judgment in part and dissenting in part) (stating that, because the crèche and the menorah are purely passive religious symbols, "[t]here is no suggestion here that the government's power to coerce has been used to further the interests of Christianity or Judaism in any way"); *see also Woodring v. Jackson County*, 986 F.3d 979, 988 (7th Cir. 2021) ("[T]he coercion test is a poor fit for passive religious displays."). Mere offense at such displays does not amount to the type of coercion the Establishment Clause forbids. *County of Allegheny*, 492 U.S. at 664 (Kennedy, J., concurring in judgment in part and dissenting in part) ("Passersby who disagree with the message conveyed by these [passive] displays are free to ignore them, or even to turn their backs, just as they are free to do when they disagree with any other form of government speech.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:25-cv-08760-RGK-KS | Date | May 14, 2026 |
|---|---|---|---|
| Title | ***Jack Gerritsen et al. v. City of Los Angeles et al.*** | | |

monuments, symbols, and practices," satisfy each of these considerations and are therefore entitled to a strong presumption of constitutionality. *Id.* at 57.

Using the *American Legion* framework, to determine whether the presumption of constitutionality applies to the displays here, this Court considers two questions: (1) whether the Olvera Street Cross and the seasonal crèche constitute "religiously expressive monuments, symbols, and practices" within the meaning of *American Legion* and (2) whether the two displays are sufficiently "established. *Id.* With respect to the second factor, various circuits, following *American Legion*, have interpreted "established" to mean the age of the challenged monument, symbol, or practice. *See Woodring v. Jackson County*, 986 F.3d 979, 994 (7th Cir. 2021); *Perrier-Bilbo v. United States*, 954 F.3d 413, 427–28 (1st Cir. 2020); *Kondrat'yev v. City of Pensacola*, 949 F.3d 1319, 1331 (11th Cir. 2020); *Freedom From Religion Found., Inc. v. County of Lehigh*, 933 F.3d 275, 278 (3d Cir. 2019). Moreover, replacement or maintenance of a display does not undermine its status as "established." *See Am. Legion*, 588 U.S. at 42–45, 63–66.

If both questions are answered in the affirmative, the presumption of constitutionality applies. That presumption, however, is not absolute. The Supreme Court has suggested that this presumption may be overcome by demonstrating either that the challenged practice is maintained with discriminatory intent or that it conveys "deliberate[] disrespect[]" on the basis of religion. *See Am. Legion*, 588 U.S. at 38, 63–64; *Perrier-Bilbo*, 954 F.3d at 425; *Woodring*, 986 F.3d at 994; *Kondrat'yev*, 949 F.3d at 1333.

If either question is answered to the negative, the presumption does not apply, and the Court is tasked with looking to historical practices and understandings, as mandated by the *Kennedy* Court. 597 U.S. at 535 (quoting *Town of Greece*, 572 U.S. at 576).

With this framework in place, the Court turns to an assessment of each display.

**A. <u>Olvera Street Cross</u>**

First, similar to the cross in *American Legion*, the Olvera Street Cross is a Latin cross, a recognized symbol of Christianity, that serves as a monument commemorating the founding of Los Angeles. *See* 588 U.S. at 66. The Olvera Street Cross comfortably fits within the category of "religiously expressive monuments, symbols, and practices." *Id.* at 57; *see Kondrat'yev*, 949 F.3d at 1331–33.

Second, based on the current evidence before the Court, the Olvera Street Cross was erected in 1929, almost a century ago.[3] Because of this longevity, the cross is likely "established" and

[3] The Court takes judicial notice of the transcription and photograph of a plaque located near the Olvera Street Cross. *Olvera Street Cross*, The Historical Marker Database (last visited Apr. 8, 2026), https://www.hmdb.org/m.asp?m=162936. The accuracy of the transcription can be verified by the photograph, rendering its contents not subject to reasonable dispute. FED. R. EVID. 201(b)(2).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-08760-RGK-KS | Date | May 14, 2026 |
| Title | ***Jack Gerritsen et al. v. City of Los Angeles et al.*** | | |

"longstanding." *See Am. Legion*, 588 U.S. at 36, 63–66 (finding that a nearly century old Latin cross was a longstanding symbol entitled to a presumption of constitutionality); *see also Kondrat'yev*, 949 F.3d at 1331–33 (finding that a Latin cross standing on public ground for at least 50 years was established). Plaintiffs have not introduced any evidence indicating otherwise.

Thus, the Olvera Street Cross appears to carry a presumption of constitutionality. The burden now shifts to Plaintiffs to rebut that presumption. *See Am. Legion*, 588 U.S. at 38, 63–64. Looking to the record before this Court, there is no evidence suggesting that the Olvera Street Cross was maintained with discriminatory intent or that it conveys "deliberate[] disrespect[]" on the basis of religion. *See id.*

At this preliminary stage, the Olvera Street Cross appears to satisfy the criteria for a presumption of constitutionality and there is presently nothing in the record to rebut that presumption.

**B. <u>Crèche</u>**

With respect to the crèche, it likewise constitutes a religious symbol, as it depicts the birth of Jesus Christ. *See Lynch v. Donnelly*, 465 U.S. 668, 686–87 (1984). In addition, because the crèche is annually displayed at the Kiosko El Pueblo during the Christmas season, it also qualifies as a practice. *See Woodring*, 986 F.3d at 996–97. This falls squarely within the category of "religiously expressive monuments, symbols, and practices." *Am. Legion*, 588 U.S. at 57.

However, based on the evidence before this Court, the City fails to show that the crèche meets the "established" threshold. The record is not clear how long the City has displayed the crèche at the Kiosko El Pueblo. Even if the broader tradition of Las Posadas has been celebrated at Olvera Street since its founding in 1930, as the City contends, that tradition is not the practice in question here. The relevant practice is the display of the crèche during the Christmas season. (*See* Compl. ¶¶ 22, 50, 77.) Because the record provides no information regarding when that specific practice began, the Court cannot find that it is "established" or "longstanding." As such, the crèche, at this stage, is not presumptively constitutional under *American Legion*.

Absent a presumption of constitutionality, the Court looks to the historical practices and understandings analysis mandated by *Kennedy*, 597 U.S. at 535 (quoting *Town of Greece*, 572 U.S. at 576).

The crèche is undeniably tied to the Christian faith, as it depicts the birth of Jesus Christ. *See Lynch*, 465 U.S. at 685–86. However, the crèche also fits within a longstanding tradition of religious expression in this country, particularly during the Christmas season. The Supreme Court laid out an historical groundwork in *Lynch* that is relevant here. In *Lynch*, the Court described the City of Pawtucket's nativity scene display as "essentially like those to be found in hundreds of towns or cities across the Nation—often on public grounds—during the Christmas season." *Id.* at 671. The City of

Pawtucket, "like the Congresses and Presidents, . . . has principally taken note of a significant historical religious event long celebrated in the Western World. The crèche in the display depicts the historical origins of this traditional event long recognized as a National Holiday." *Id.* at 680. With this historical background, the Court found the crèche to be constitutional because its purpose was secular, as the City of Pawtucket sponsored it "to celebrate the Holiday and to depict the origins of that Holiday." *Id.* at 681.[4]

With this historical analysis as guidance, and based on the facts currently before it, the Court finds that Plaintiffs have not shown that they will likely succeed on their claim that the City's display of the crèche violates the Establishment Clause. Similar to the nativity scene in *Lynch*, the crèche fits within the broader tradition of recognizing Christmas as a public holiday, depicting the origin and story behind the holiday. *See Lynch*, 465 U.S. at 680. This acknowledgement of Christmas, which includes the crèche, is not novel, but rather consistent with a longstanding pattern of government recognition of public holidays. *Id.* at 677. Furthermore, the crèche is displayed as a part of Las Posadas, a Christmas tradition that commemorates Mary and Joseph's search for shelter.[5] This celebration has been a part of Olvera Street since its founding nearly a century ago. Not only is the crèche part of a broader national tradition, but it is also a central piece of a longstanding local cultural practice. Together, these historical and cultural practices underscore that the display of the crèche on public grounds is consistent with this country's history.

Plaintiffs rely on *County of Allegheny* to argue that a crèche displayed without surrounding secular objects is unconstitutional. While *County of Allegheny* did state that a crèche displayed on public grounds by itself would violate the Establishment Clause, that analysis rested on both *Lemon* and the endorsement test, which *Kennedy* explicitly abrogated. Instead, this Court is persuaded by Justice Kennedy's dissent in *County of Allegheny*.[6] Justice Kennedy contended that "[c]rucial to the Court's conclusion [in *Lynch*] was not the number, prominence, or type of secular items contained in the holiday display but the simple fact that, when displayed by government during the Christmas season, a crèche presents no realistic danger of" violating the Establishment Clause. *County of Allegheny*, 492 U.S. at 666 (Kennedy, J., concurring in judgment in part and dissenting in part). He further reasoned that the

[4] The Court notes that this discussion in *Lynch* stems in part from its application of the *Lemon*'s purpose prong, which has since been abrogated by *Kennedy*. However, *Lynch* does rely in part on a broader historical analysis of governmental acknowledgement of crèches, which remains relevant under the historical test articulated in *Kennedy*.
[5] The Court takes judicial notice of the City's official website regarding Las Posadas on Olvera Street. *See* FED. R. EVID. 201; *Daniels-Hall v. National Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010) (finding it appropriate to take judicial notice of information that "was made publicly available by government entities" where "neither party disputes the authenticity of the web sites or the accuracy of the information displayed therein").
[6] Almost twenty-five years later, Justice Kennedy, writing for the majority opinion in *Town of Greece*, applied the historical approach for which he had advocated in his *County of Allegheny* dissent. 572 U.S. at 575–77. *Kennedy* subsequently endorsed this approach and explicitly sourced the now-governing historical test from *Town of Greece*. *Kennedy*, 597 U.S. at 535–36.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-08760-RGK-KS | Date | May 14, 2026 |
| Title | ***Jack Gerritsen et al. v. City of Los Angeles et al.*** | | |

crèche was a "purely passive symbol[]" and that absent coercion, "any intangible benefit to religion is unlikely to present a realistic risk of establishment." *Id.* at 662, 664 (Kennedy, J., concurring in judgment in part and dissenting in part). Instead, to determine if the Establishment Clause was violated, Justice Kennedy called for courts to "refer to the other types of church-state contacts that have existed unchallenged throughout our history, or that have been found permissible in our case law," such as the practice of legislative prayer or the display of crèches. *Id.* at 662 (Kennedy, J., concurring in judgment in part and dissenting in part). This historical analysis emphasized by Justice Kennedy aligns with the framework adopted by *Kennedy*, and it stands to reason that the constitutionality of a monument, symbol, or practice does not depend on the inclusion of secular objects. Because there is no evidence at this stage to suggest that the crèche at the Kiosko El Pueblo is inconsistent with this country's "historical practices and understandings," Plaintiffs have not demonstrated that they are likely to succeed on the merits as to the crèche.

In sum, the Court finds that Plaintiffs fail to establish a likelihood of success on the merits for both of their Establishment Clause claims. "Likelihood of success on the merits is the most important *Winter* factor; if a movant fails to meet this threshold inquiry, the court need not consider the other factors, in the absence of serious questions going to the merits." *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017) (internal quotation marks and citation omitted). Accordingly, the Court declines to consider the other *Winter* factors.

## V. CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiffs' Motion for Preliminary Injunction.

**IT IS SO ORDERED.**

________ : ________

Initials of Preparer JRE/vc

Name JACK GERRITSEN
Address 6217 ½ Palm Av.
City, State, Zip Bell, CA., 90201
Phone (323) 383-4371
Fax
E-Mail jgerritsen1936@gmail.com
☐ FPD ☐ Appointed ☐ CJA ☒ Pro Per ☐ Retained

FEE PAID

FILED
CLERK, U.S. DISTRICT COURT
5/18/2026
CENTRAL DISTRICT OF CALIFORNIA
BY jji DEPUTY
DOCUMENT SUBMITTED THROUGH THE ELECTRONIC DOCUMENT SUBMISSION SYSTEM

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JACK GERRITSEN, HENRY FREDERICK RAMEY, JR.<br>PLAINTIFF(S),<br>v.<br>CITY OF LOS ANGELES, a chartered city, DOMENIKA LYNCH, as General Manager, El Pueblo Park, et al.<br>DEFENDANT(S). | CASE NUMBER:<br>2:25-CV-8760-RGK(KS)<br><br>**NOTICE OF APPEAL** |

NOTICE IS HEREBY GIVEN that JACK GERRITSEN hereby appeals to
*Name of Appellant*
the United States Court of Appeals for the Ninth Circuit from:

**Criminal Matter**

☐ Conviction only [F.R.Cr.P. 32(j)(1)(A)]
☐ Conviction and Sentence
☐ Sentence Only (18 U.S.C. 3742)
☐ Pursuant to F.R.Cr.P. 32(j)(2)
☐ Interlocutory Appeals
☐ Sentence imposed:

☐ Bail status:

**Civil Matter**

☒ Order (specify):
Denying Preliminary Injunction

☐ Judgment (specify):

☐ Other (specify):

Imposed or Filed on May 14, 2026. Entered on the docket in this action on May 14, 2026.

A copy of said judgment or order is attached hereto.

May 18, 2026
Date

*Jack Gerritsen*
Signature
☒ Appellant/ProSe ☐ Counsel for Appellant ☐ Deputy Clerk

**Note:** The Notice of Appeal shall contain the names of all parties to the judgment or order and the names and addresses of the attorneys for each party. Also, if not electronically filed in a criminal case, the Clerk shall be furnished a sufficient number of copies of the Notice of Appeal to permit prompt compliance with the service requirements of FRAP 3(d).

**ATTORNEY LIST**

JACK GERRITSEN
6217 ½ Palm Av.
Bell, CA., 90201
TEL.; (323) 383-4371
jgerritsen1936@gmail.com

Plaintiff in Pro Se.

HYDEE FELDSTEIN SOTO, CITY ATTORNEY

DENISE C. MILLS, CHIEF DEPUTY CITY ATTORNEY

KATHLEEN A. KENEALY, CHIEF ASSISTANT CITY ATTORNEY

GABRIEL S. DERMER, ASSISTANT CITY ATTORNEY

ERMERSON H. KIM, DEPUTY CITY ATTORNEY

CITY OF LOS ANGELES

200 N. MAIN ST., 6TH FLOOR

LOS ANGELES, CA., 90012

gabriel.dermer@lacity.org

emerson.kim@lacity.org

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-08760-RGK-KS | Date | May 14, 2026 |
| Title | ***Jack Gerritsen et al. v. City of Los Angeles et al.*** | | |

| | | |
|---|---|---|
| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | |
| Joseph Remigio | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| | |
|---|---|
| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
| Not Present | Not Present |

**Proceedings:** **(IN CHAMBERS) Order Re: Plaintiffs' Motion for Preliminary Injunction [DE 13]**

## I. INTRODUCTION

On January 26, 2026, Jack Gerritsen ("Gerritsen") and Henry Frederick Ramey, Jr. (collectively, "Plaintiffs") filed a First Amended Complaint ("FAC") against the City of Los Angeles and Domenika Lynch (collectively, the "City") for violation of their rights under the First Amendment and violation of California Civil Code §§ 51.7 and 52.1.[1] Specifically, Plaintiffs allege that the City has prevented them from distributing handbills and stickers in a public park without a permit, in violation of the Free Speech Clause. They further allege that the City maintains two displays that endorse religion, in violation of the Establishment Clause.

On February 17, 2026, Plaintiffs filed the instant Motion for Preliminary Injunction ("Motion"), seeking to prevent the City from maintaining the two separate religious displays. As such, the Motion is limited to Plaintiffs' Establishment Clause claims. For the following reasons, the Court **DENIES** the request for Preliminary Injunction.

## II. FACTUAL BACKGROUND

The facts are alleged as follows.

El Pueblo de Los Angeles Historical Monument ("El Pueblo") is a 44-acre public, city-owned historic park marking the birthplace of the City of Los Angeles. Within El Pueblo, on Olvera Street, is a wooden cross ("Olvera Street Cross") that was erected in 1929 to commemorate Los Angeles's 148th birthday. Plaintiffs allege that because of weathering, the Olvera Street Cross has been replaced multiple times.

---

[1] The Court notes that Plaintiffs also assert claims under the Fourth, Fifth, and Fourteenth Amendments, as well as Article I, Section 14 of the California Constitution, although the basis for these claims is not clearly articulated.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-08760-RGK-KS | Date | May 14, 2026 |
| Title | ***Jack Gerritsen et al. v. City of Los Angeles et al.*** | | |

Also within El Pueblo is the Kiosko El Pueblo, a central gazebo located near the Olvera Street Cross. The City alleges that each year during the Christmas season, a crèche, or nativity scene, is displayed at the Kiosko El Pueblo. According to the City, the crèche plays a key part in the celebration of Las Posadas, a tradition observed in Mexico and other Latin American countries that commemorates Joseph and Mary's search for shelter before the birth of Jesus. The City further contends that the event is attended by people of all backgrounds and that the tradition has been part of Olvera Street since its founding in 1930.

In November and December 2024, Gerritsen claims that he saw the City put up a crèche display at the Kiosko El Pueblo. He also alleges he saw the Olvera Street Cross at the South entrance of Olvera Street.

## III. JUDICIAL STANDARD

"[I]njunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). To establish that relief is warranted, a plaintiff must show: (1) likelihood of success on the merits; (2) likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction is in the public interest (the "*Winter* test"). *Id.* at 20. The Ninth Circuit has adopted a sliding scale approach, in which the elements of the *Winter* test are balanced, "so that a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

## IV. DISCUSSION

Based on an alleged violation of the Establishment Clause, Plaintiffs seek an injunction requiring the City to (1) remove or cover the Olvera Street Cross and (2) refrain from displaying the crèche. As discussed below, Plaintiffs have not established a likelihood of success on the merits, and the Court therefore denies their request.

The Establishment Clause of the U.S. Constitution provides that "Congress shall make no law respecting an establishment of religion." U.S. CONST. amend. I. Although the Establishment Clause is written as a limitation on Congress, the Supreme Court has long held that it is incorporated through the Fourteenth Amendment and applies with equal force to state and local governments. *Everson v. Bd. of Educ. of Ewing Twp.*, 330 U.S. 1, 14–15 (1947). The City is thus bound by the Establishment Clause.

The test for evaluating Establishment Clause claims has evolved amorphously over time, from an examination of purposes, effects, and potential for religious entanglement, *see Lemon v. Kurtzman*, 403 U.S. 602, 612–13 (1971), to a determination of whether the government has endorsed religion, *see County of Allegheny v. ACLU*, 492 U.S. 573, 593 (1989), to a test that looks to history and tradition, *see*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-08760-RGK-KS | Date | May 14, 2026 |
| Title | ***Jack Gerritsen et al. v. City of Los Angeles et al.*** | | |

*Town of Greece v. Galloway*, 572 U.S. 565, 576 (2014). This evolution has not been linear, and historically, the guidance for what test to apply under what circumstances has been unclear. Recently, however, the Supreme Court in *Kennedy v. Bremerton School District*, 597 U.S. 507 (2022), provided clear guidance when it stated that in place of looking to purposes, effects, and endorsement, "the Establishment Clause must be interpreted by 'reference to historical practices and understandings.'" 597 U.S. at 535 (quoting *Town of Greece*, 572 U.S. at 576).[2] "Going forward, 'the line that courts and governments must draw between the permissible and the impermissible has to accord with history and faithfully reflect the understanding of the Founding Fathers.'" *Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*, 44 F.4th 867, 888 (9th Cir. 2022) (quoting *Kennedy*, 597 U.S. at 535–36). Drawing on *Town of Greece*, the *Kennedy* Court emphasized that "[a]n analysis focused on original meaning and history" has long been the rule within the Court's Establishment Clause jurisprudence. *Kennedy*, 597 U.S. at 536.

Although decided prior to *Kennedy*, *American Legion v. American Humanist Ass'n*, 588 U.S. 29 (2019), uses such an analysis to establish a category of religious symbols, monuments, and practices deemed presumptively constitutional. In this case, the Supreme Court upheld the display of a nearly century old Latin cross that was erected on public land to commemorate World War I soldiers. *Am. Legion*, 588 U.S. at 66. The Court held that the memorial "must be viewed in [its] historical context" and held that there is a strong presumption of constitutionality to "established, religiously expressive monuments, symbols, and practices." *Id.* at 38, 57. As justification for this presumption, the Supreme Court identified four considerations. *Id.* at 52–57. First, using an "original purpose" approach for assessing monuments, symbols, or practices that were established long ago "may be especially difficult." *Id.* at 52. Second, "as time goes by, the purposes associated with an established monument, symbol, or practice often multiply." *Id.* at 53. Third, the "message conveyed [by the monument, symbol, or practice] may change over time." *Id.* at 54 (internal quotation marks, citation, and alteration omitted). Fourth, removing long-standing monuments, symbols, or practices "may no longer appear neutral, especially to the local community for which it has taken on particular meaning." *Id.* at 56. The Supreme Court found that the Latin cross at issue, as well as certain other "established, religiously expressive

[2] The Supreme Court in *Kennedy* also emphasized the importance of considering the coerciveness of the government action because "coercion . . . was among the foremost hallmarks of religious establishments the framers sought to prohibit when they adopted the First Amendment." 597 U.S. at 537. However, coercion is of limited relevance in this context. The challenged actions involve passive religious displays, which neither encourage nor compel participation in religious activity. *See County of Allegheny*, 492 U.S. at 663–67 (Kennedy, J., concurring in judgment in part and dissenting in part) (stating that, because the crèche and the menorah are purely passive religious symbols, "[t]here is no suggestion here that the government's power to coerce has been used to further the interests of Christianity or Judaism in any way"); *see also Woodring v. Jackson County*, 986 F.3d 979, 988 (7th Cir. 2021) ("[T]he coercion test is a poor fit for passive religious displays."). Mere offense at such displays does not amount to the type of coercion the Establishment Clause forbids. *County of Allegheny*, 492 U.S. at 664 (Kennedy, J., concurring in judgment in part and dissenting in part) ("Passersby who disagree with the message conveyed by these [passive] displays are free to ignore them, or even to turn their backs, just as they are free to do when they disagree with any other form of government speech.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-08760-RGK-KS | Date | May 14, 2026 |
| Title | ***Jack Gerritsen et al. v. City of Los Angeles et al.*** | | |

monuments, symbols, and practices," satisfy each of these considerations and are therefore entitled to a strong presumption of constitutionality. *Id.* at 57.

Using the *American Legion* framework, to determine whether the presumption of constitutionality applies to the displays here, this Court considers two questions: (1) whether the Olvera Street Cross and the seasonal crèche constitute "religiously expressive monuments, symbols, and practices" within the meaning of *American Legion* and (2) whether the two displays are sufficiently "established. *Id.* With respect to the second factor, various circuits, following *American Legion*, have interpreted "established" to mean the age of the challenged monument, symbol, or practice. *See Woodring v. Jackson County*, 986 F.3d 979, 994 (7th Cir. 2021); *Perrier-Bilbo v. United States*, 954 F.3d 413, 427–28 (1st Cir. 2020); *Kondrat'yev v. City of Pensacola*, 949 F.3d 1319, 1331 (11th Cir. 2020); *Freedom From Religion Found., Inc. v. County of Lehigh*, 933 F.3d 275, 278 (3d Cir. 2019). Moreover, replacement or maintenance of a display does not undermine its status as "established." *See Am. Legion*, 588 U.S. at 42–45, 63–66.

If both questions are answered in the affirmative, the presumption of constitutionality applies. That presumption, however, is not absolute. The Supreme Court has suggested that this presumption may be overcome by demonstrating either that the challenged practice is maintained with discriminatory intent or that it conveys "deliberate[] disrespect[]" on the basis of religion. *See Am. Legion*, 588 U.S. at 38, 63–64; *Perrier-Bilbo*, 954 F.3d at 425; *Woodring*, 986 F.3d at 994; *Kondrat'yev*, 949 F.3d at 1333.

If either question is answered to the negative, the presumption does not apply, and the Court is tasked with looking to historical practices and understandings, as mandated by the *Kennedy* Court. 597 U.S. at 535 (quoting *Town of Greece*, 572 U.S. at 576).

With this framework in place, the Court turns to an assessment of each display.

### A. Olvera Street Cross

First, similar to the cross in *American Legion*, the Olvera Street Cross is a Latin cross, a recognized symbol of Christianity, that serves as a monument commemorating the founding of Los Angeles. *See* 588 U.S. at 66. The Olvera Street Cross comfortably fits within the category of "religiously expressive monuments, symbols, and practices." *Id.* at 57; *see Kondrat'yev*, 949 F.3d at 1331–33.

Second, based on the current evidence before the Court, the Olvera Street Cross was erected in 1929, almost a century ago.[3] Because of this longevity, the cross is likely "established" and

[3] The Court takes judicial notice of the transcription and photograph of a plaque located near the Olvera Street Cross. *Olvera Street Cross*, The Historical Marker Database (last visited Apr. 8, 2026), https://www.hmdb.org/m.asp?m=162936. The accuracy of the transcription can be verified by the photograph, rendering its contents not subject to reasonable dispute. FED. R. EVID. 201(b)(2).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-08760-RGK-KS | Date | May 14, 2026 |
| Title | ***Jack Gerritsen et al. v. City of Los Angeles et al.*** | | |

"longstanding." *See Am. Legion*, 588 U.S. at 36, 63–66 (finding that a nearly century old Latin cross was a longstanding symbol entitled to a presumption of constitutionality); *see also Kondrat'yev*, 949 F.3d at 1331–33 (finding that a Latin cross standing on public ground for at least 50 years was established). Plaintiffs have not introduced any evidence indicating otherwise.

Thus, the Olvera Street Cross appears to carry a presumption of constitutionality. The burden now shifts to Plaintiffs to rebut that presumption. *See Am. Legion*, 588 U.S. at 38, 63–64. Looking to the record before this Court, there is no evidence suggesting that the Olvera Street Cross was maintained with discriminatory intent or that it conveys "deliberate[] disrespect[]" on the basis of religion. *See id.*

At this preliminary stage, the Olvera Street Cross appears to satisfy the criteria for a presumption of constitutionality and there is presently nothing in the record to rebut that presumption.

**B. Crèche**

With respect to the crèche, it likewise constitutes a religious symbol, as it depicts the birth of Jesus Christ. *See Lynch v. Donnelly*, 465 U.S. 668, 686–87 (1984). In addition, because the crèche is annually displayed at the Kiosko El Pueblo during the Christmas season, it also qualifies as a practice. *See Woodring*, 986 F.3d at 996–97. This falls squarely within the category of "religiously expressive monuments, symbols, and practices." *Am. Legion*, 588 U.S. at 57.

However, based on the evidence before this Court, the City fails to show that the crèche meets the "established" threshold. The record is not clear how long the City has displayed the crèche at the Kiosko El Pueblo. Even if the broader tradition of Las Posadas has been celebrated at Olvera Street since its founding in 1930, as the City contends, that tradition is not the practice in question here. The relevant practice is the display of the crèche during the Christmas season. (*See* Compl. ¶¶ 22, 50, 77.) Because the record provides no information regarding when that specific practice began, the Court cannot find that it is "established" or "longstanding." As such, the crèche, at this stage, is not presumptively constitutional under *American Legion*.

Absent a presumption of constitutionality, the Court looks to the historical practices and understandings analysis mandated by *Kennedy*, 597 U.S. at 535 (quoting *Town of Greece*, 572 U.S. at 576).

The crèche is undeniably tied to the Christian faith, as it depicts the birth of Jesus Christ. *See Lynch*, 465 U.S. at 685–86. However, the crèche also fits within a longstanding tradition of religious expression in this country, particularly during the Christmas season. The Supreme Court laid out an historical groundwork in *Lynch* that is relevant here. In *Lynch*, the Court described the City of Pawtucket's nativity scene display as "essentially like those to be found in hundreds of towns or cities across the Nation—often on public grounds—during the Christmas season." *Id.* at 671. The City of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-08760-RGK-KS | Date | May 14, 2026 |
| Title | ***Jack Gerritsen et al. v. City of Los Angeles et al.*** | | |

Pawtucket, "like the Congresses and Presidents, . . . has principally taken note of a significant historical religious event long celebrated in the Western World. The crèche in the display depicts the historical origins of this traditional event long recognized as a National Holiday." *Id.* at 680. With this historical background, the Court found the crèche to be constitutional because its purpose was secular, as the City of Pawtucket sponsored it "to celebrate the Holiday and to depict the origins of that Holiday." *Id.* at 681.[4]

With this historical analysis as guidance, and based on the facts currently before it, the Court finds that Plaintiffs have not shown that they will likely succeed on their claim that the City's display of the crèche violates the Establishment Clause. Similar to the nativity scene in *Lynch*, the crèche fits within the broader tradition of recognizing Christmas as a public holiday, depicting the origin and story behind the holiday. *See Lynch*, 465 U.S. at 680. This acknowledgement of Christmas, which includes the crèche, is not novel, but rather consistent with a longstanding pattern of government recognition of public holidays. *Id.* at 677. Furthermore, the crèche is displayed as a part of Las Posadas, a Christmas tradition that commemorates Mary and Joseph's search for shelter.[5] This celebration has been a part of Olvera Street since its founding nearly a century ago. Not only is the crèche part of a broader national tradition, but it is also a central piece of a longstanding local cultural practice. Together, these historical and cultural practices underscore that the display of the crèche on public grounds is consistent with this country's history.

Plaintiffs rely on *County of Allegheny* to argue that a crèche displayed without surrounding secular objects is unconstitutional. While *County of Allegheny* did state that a crèche displayed on public grounds by itself would violate the Establishment Clause, that analysis rested on both *Lemon* and the endorsement test, which *Kennedy* explicitly abrogated. Instead, this Court is persuaded by Justice Kennedy's dissent in *County of Allegheny*.[6] Justice Kennedy contended that "[c]rucial to the Court's conclusion [in *Lynch*] was not the number, prominence, or type of secular items contained in the holiday display but the simple fact that, when displayed by government during the Christmas season, a crèche presents no realistic danger of" violating the Establishment Clause. *County of Allegheny*, 492 U.S. at 666 (Kennedy, J., concurring in judgment in part and dissenting in part). He further reasoned that the

---

[4] The Court notes that this discussion in *Lynch* stems in part from its application of the *Lemon*'s purpose prong, which has since been abrogated by *Kennedy*. However, *Lynch* does rely in part on a broader historical analysis of governmental acknowledgement of crèches, which remains relevant under the historical test articulated in *Kennedy*.

[5] The Court takes judicial notice of the City's official website regarding Las Posadas on Olvera Street. *See* FED. R. EVID. 201; *Daniels-Hall v. National Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010) (finding it appropriate to take judicial notice of information that "was made publicly available by government entities" where "neither party disputes the authenticity of the web sites or the accuracy of the information displayed therein").

[6] Almost twenty-five years later, Justice Kennedy, writing for the majority opinion in *Town of Greece*, applied the historical approach for which he had advocated in his *County of Allegheny* dissent. 572 U.S. at 575–77. *Kennedy* subsequently endorsed this approach and explicitly sourced the now-governing historical test from *Town of Greece*. *Kennedy*, 597 U.S. at 535–36.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-08760-RGK-KS | Date | May 14, 2026 |
| Title | ***Jack Gerritsen et al. v. City of Los Angeles et al.*** | | |

crèche was a "purely passive symbol[]" and that absent coercion, "any intangible benefit to religion is unlikely to present a realistic risk of establishment." *Id.* at 662, 664 (Kennedy, J., concurring in judgment in part and dissenting in part). Instead, to determine if the Establishment Clause was violated, Justice Kennedy called for courts to "refer to the other types of church-state contacts that have existed unchallenged throughout our history, or that have been found permissible in our case law," such as the practice of legislative prayer or the display of crèches. *Id.* at 662 (Kennedy, J., concurring in judgment in part and dissenting in part). This historical analysis emphasized by Justice Kennedy aligns with the framework adopted by *Kennedy*, and it stands to reason that the constitutionality of a monument, symbol, or practice does not depend on the inclusion of secular objects. Because there is no evidence at this stage to suggest that the crèche at the Kiosko El Pueblo is inconsistent with this country's "historical practices and understandings," Plaintiffs have not demonstrated that they are likely to succeed on the merits as to the crèche.

In sum, the Court finds that Plaintiffs fail to establish a likelihood of success on the merits for both of their Establishment Clause claims. "Likelihood of success on the merits is the most important *Winter* factor; if a movant fails to meet this threshold inquiry, the court need not consider the other factors, in the absence of serious questions going to the merits." *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017) (internal quotation marks and citation omitted). Accordingly, the Court declines to consider the other *Winter* factors.

## V. <u>CONCLUSION</u>

For the foregoing reasons, the Court **DENIES** Plaintiffs' Motion for Preliminary Injunction.

**IT IS SO ORDERED.**

:

Initials of Preparer JRE/vc

JACK GERRITSEN
6217 ½ Palm Av.
Bell, CA., 90201
TEL.: (323) 383-4371

HENRY FREDERICK RAMEY, JR.
7101 Rosecrans Av., #98
Paramount, CA., 90723
TEL.: (909) 678-9348

Plaintiffs in Pro Se.

FILED
CLERK, U.S. DISTRICT COURT
March 23, 2026
CENTRAL DISTRICT OF CALIFORNIA
BY klh DEPUTY
DOCUMENT SUBMITTED THROUGH THE ELECTRONIC DOCUMENT SUBMISSION SYSTEM

**UNITED STATES DISTRICT COURT,**

**CENTRAL DISTRICT OF CALIFORNIA.**

JACK GERRITSEN, HENRY FREDERICK RAMEY, JR.

Plaintiffs,

v.

CITY OF LOS ANGELES, a chartered city, DOMENIKA LYNCH, as General Manager, El Pueblo Park, and, DOES 1-10, inclusive,

Defendants.

Case No.: 2:25-CV-8760-RGK(KS)

SECOND SUPPLEMENTAL DECLARATION IN REPLY TO OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION.
Motion Date: Apr. 6. 2026.
Time: 9:00 a. m.
Room: 850.
Discovery Cut-Off: None.
Motion Cut-Off: None.
Trial Date: None.

I, Jack Gerritsen, declare under penalty of perjury:

1. I am a Plaintiff in this action and incorporate my prior Declaration.
2. The facts herein are true to my knowledge.
3. I hereby declare that after 89 years of life I have witnessed how religion is a curse on humanity.
4. I admit that the Christian cross has a significant history of about 2026 years, but that the wooden cross at the south entrance to Olvera Street in the city of Los Angeles has a history of only about 20 years.
5. It replaced a similar wooden cross at the south entrance to Olvera Street.

6. That cross was installed at an unknown date and over time had decayed. It was transported and put on display where I saw it in the Catholic Church across the street (west) of Olvera Street. The new cross has no significant historical value.
7. The Olvera Street cross has no plaques, inscriptions, or secular features—it's a plain wooden Latin cross, visible as religious from afar.
8. It commemorates LA's founding but replicates Spanish missionary "holy crosses," per historical accounts I've reviewed.
9. The Kiosko nativity is isolated—no Santa, lights, or secular items; it's just Mary, Joseph, Jesus, etc.
10. I visit the park 2-3 times monthly and see the cross each time, causing offense.
11. The nativity recurs every November-December; I expect it in 2026 absent injunction.

Under the penalty of perjury, I declare that the foregoing is true and correct, and that this declaration was executed on March 23, 2026, at Bell, California.

Jack Gerritsen
JACK GERRITSEN,
Plaintiff.

Rest In Power, Rodney King, 1965-2012
George Floyd, 1973-2020
Carl Reiner, 1922-2020
Rob Reiner, 1947-2025
Michelle Singer Reiner, 1955-2025
Renee Good, 1988-2026
Alex Pretti, 1988-2026



JACK GERRITSEN
6217 ½ Palm Av.
Bell, CA., 90201
TEL.: (323) 383-4371

**PROOF OF SERVICE.**

I, Henry Frederick Ramey, Jr., am a resident of the County of Los Angeles, State of California. I am over the age of 18 years, and I am not a party to this action. My address is 7101 Rosecrans Av., #98, Paramount, California.

On March 23, 2026, I served the foregoing copies of SECOND SUPPLEMENTAL DECLARATION IN REPLY TO OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION on the interested parties in this action by placing the following true copies, enclosed in a sealed envelope addressed as follows:

HYDEE FELDSTEIN SOTO, CITY ATTORNEY
DENISE C. MILLS, CHIEF DEPUTY CITY ATTORNEY
KATHLEEN A. KENEALY, CHIEF ASSISTANT CITY ATTORNEY
GABRIEL S. DERMER, ASSISTANT CITY ATTORNEY
EMERSON H. KIM, DEPUTY CITY ATTORNEY
CITY OF LOS ANGELES
200 N. MAIN ST., 6TH FLOOR
LOS ANGELES, CA., 90012
gabriel.dermer@lacity.org
emerson.kim@lacity.org

On the above date, I delivered such papers via United States Post Office to the addressees at Paramount, California.

Under the penalty of perjury, I declare that the foregoing is true and correct, and that this declaration was executed on March 23, 2026, at Paramount, California.

Henry F. Ramey, Jr.
HENRY FREDERICK RAMEY, JR.,
Declarant.



JACK GERRITSEN
6217 ½ Palm Av.
Bell, CA., 90201
TEL.: (323) 383-4371

HYDEE FELDSTEIN SOTO, City Attorney (SBN 106866)
DENISE C. MILLS, Chief Deputy City Attorney (SBN 191992)
KATHLEEN KENEALY, Chief Assistant City Attorney (SBN 212289)
GABRIEL S. DERMER Assistant City Attorney (SBN 229424)
EMERSON H. KIM, Deputy City Attorney (SBN 285142)
200 North Main Street, Room 675, City Hall East
Los Angeles, California 90012
Telephone No.: (213) 526-7336
Email: emerson.kim@lacity.org

Attorneys for Defendants

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JACK GERRITSEN, et al.

Plaintiffs,

v.

CITY OF LOS ANGELES, et al.

Defendants.

No. 2:25-cv-08760-RGK-KS

**Hon. R. Gary Klausner**
**United States District Judge**

Action filed: September 4, 2025

**OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

I. INTRODUCTION ........ 1

II. RELEVANT BACKGROUND ........ 1

III. LEGAL STANDARD ........ 3

IV. ARGUMENT ........ 3

A. The *Winter* Factors Weigh Against the Issuance of a Preliminary Injunction. ........ 3

1. Plaintiff Will Not Succeed on the Merits ........ 3

a) The Olvera Street Cross Does Not Violate the Establishment Clause as Its Purpose Is Secular—to Preserve History and Culture ........ 4

b) For the Same Reasons, the Kiosko Nativity Scene (Crèche) Does Not Violate the Establishment Clause, Whether Viewed under *American Legion* or the *Lemon* Test ........ 8

2. There Is No Threat of Imminent, Irreparable Harm.. ........ 12

3. The Balance of Equities and Public Interest Support Denying Injunctive Relief ........ 13

V. CONCLUSION ........ 14

# TABLE OF AUTHORITIES

Page(s)

Cases

*American Legion v. American Humanist Association*,
588 U.S. 29 (2019) ... passim

*Ass'n v. Maxwell-Jolly*,
563 F.3d 847 (9th Cir. 2009) ... 12

*Disney Enters., Inc. v. VidAngel, Inc.*,
869 F.3d 848 (9th Cir. 2017) ... 3

*Env't Prot. Info. Ctr. v. Carlson*,
968 F.3d 985 (9th Cir. 2020) ... 3

*Garcia v. Google, Inc.*,
786 F.3d 733, (9th Cir. 2015) ... 12

*Johnson v. Couturier*,
572 F.3d 1067 (9th Cir. 2009) ... 3

*L.A. Mem'l Coliseum Com. v. Nat'l Football League*,
634 F.2d 1197 (9th Cir. 1980) ... 13

*Lynch v. Donnelly*,
465 U.S. (1984) ... 9, 10, 11

*Nken v. Holder*,
556 U.S. 418 (2009) ... 13

*Oakland Trib., Inc. v. Chron. Pub. Co.*,
762 F.2d 1374 (9th Cir. 1985) ... 13

*Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*,
944 F.2d 597 (9th Cir. 1991) ... 12

*Roman v. Wolf*,
977 F.3d 935 (9th Cir. 2020) ... 13

*Sampson v. Murray*,
415 U.S. 61 (1974) ... 12

*Sierra Forest Legacy v. Rey*,
577 F.3d 1015 (9th Cir. 2009) .......... 3

*Thalheimer v. City of San Diego*,
645 F.3d 1109 (9th Cir. 2011) .......... 3

*Univ. of Texas v. Camenisch*,
451 U.S. 390 (1981) .......... 3

*Winter v. NRDC*,
555 U.S. 7 (2008) .......... 3

*Wreal, LLC v. Amazon.com, Inc.*,
840 F.3d 1244 (11th Cir. 2016) .......... 12

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Plaintiff Jack Gerritsen ("Plaintiff") moves to enjoin Defendants City of Los Angeles (the "City") and Domenika Lynch (together with the City, "Defendants") from displaying a wooden Latin cross and an annual nativity scene located on Olvera Street in the El Pueblo de Los Angeles Historical Monument park, contending that both violate the Establishment Clause of the First Amendment.[1]

Plaintiff's motion fails for several reasons. He fails to discharge his heavy burden of making a colorable claim and does not provide any substantive evidence that his First Amendment rights have been infringed, relying on his scant declaration. Nor could he, as well-established Supreme Court precedent makes clear that both the nearly century-old cross and nativity scene have a secular purpose rooted in preserving the history and culture of El Pueblo, making it all but settled that he will not succeed on the merits. He cannot reasonably claim that he is likely to suffer imminent and irreparable harm in the absence of injunctive relief, as he has delayed filing this motion given that, by his own admission, the offending event(s) occurred in 2024, if not earlier. And based on the above, the balance of equities and public interest does not weigh in favor of injunctive relief.

As such, Defendants respectfully request that the Court deny his motion.

### II. RELEVANT BACKGROUND

The El Pueblo de Los Angeles Historical Monument is 44-acre public, City-owned historic "park" that marks the birthplace of the City of Los Angeles, where forty-four settlers of Native American, African, and European heritage journeyed more than one-thousand miles from present-day northern Mexico and established a farming community in September 4, 1781. Wikipedia, *El Pueblo de Los Angeles Historical Monument*, https://en.wikipedia.org/wiki/El_Pueblo_de_Los_%C3%81ngeles_Historical_Monument (last visited Mar. 11, 2026); El Pueblo de Los Angeles, *About Us*, https://elpueblo.

[1] Though the action is brought by two individuals, Plaintiffs Gerritsen and Ramey, the motion seeking an injunction is limited to Plaintiff Gerritsen, as the allegations in the Complaint and the declaration in support of the motion are tied to him only.

lacity.gov/about-us (last visited Mar. 11, 2026).

To commemorate this occasion, a wooden cross was erected on Olvera Street ("Olvera Street Cross") in 1929 on the City's 148th birthday. The Historical Market Database, *Olvera Street Cross*, https://www.hmdb.org/m.asp?m=162936 (last visited Mar. 11, 2026). Inscribed on the cross are "El Pueblo de la Reyna de Los Angeles" (or The Town of the Queen of Angeles, which is the historical variation of the full original name for Los Angeles—El Pueblo de Nuestra Senora la Reina de los Angeles de Porciuncula or The Town of Our Lady the Queen of the Angels of Porciuncula), "Felipe de Neve" (the founder of Los Angeles), and "September Fourth 1781" (the date the city was founded). *Id.* The Huntington's digital library describes the cross as "the commemorative wooden cross monument for Felipe de Neve[,] a former governor of Alta California and founder of Los Angeles . . . ." The Huntington Digital Library, *Old Cross at Entrance of Olvera St. Los Angeles, Cal.*, https://hdl.huntington.org/digital/collection/p15150coll2/id/17779 (last visited Mar. 11, 2026).

Every year during the Christmas season, a nativity scene, or crèche, is set up at the Kiosko El Pueblo ("Kiosko Nativity Scene"), a central gazebo located in the Plaza of El Pueblo de Los Angeles Historical Monument, which is near the Olvera Street Cross. The crèche plays a key part in the celebratory tradition of Las Posadas, which is a procession that takes place on Olvera Street that commemorates the journey of Joseph and Mary from Nazareth to Bethlehem and their search for shelter in preparation for the birth of Jesus. Olvera-Street.com, *Las Posadas*, https://www.olvera-street.com/las-posadas (last visited Mar. 11, 2026). This tradition began in the 16th century and is celebrated in Mexico and other Latin American countries. *Id.* And while the event is rooted in Christian and Catholic traditions, it is attended by people from all religious backgrounds and all are welcome to participate. El Pueblo de Los Angeles, *Las Posadas on Olvera Street*, https://elpueblo.lacity.gov/articles/ las-posadas-olvera-street (last visited Mar. 11, 2026). This tradition has been a part of Olvera Street since its founding. *Id.*

///

## III. LEGAL STANDARD

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing the plaintiff is entitled to such relief." *Winter v. NRDC*, 555 U.S. 7, 22 (2008). Under *Winter*, a plaintiff "must establish that (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) a preliminary injunction is in the public interest." *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1021 (9th Cir. 2009).

In considering the likelihood of success on the merits, the district court is not strictly bound by the rules of evidence, as the "preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). Because of the extraordinary nature of injunctive relief, including the potential for irreparable injury if not granted, a district court may consider evidence outside the normal rules of evidence, including: hearsay, exhibits, declarations, and pleadings. *Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009).

"[I]n the First Amendment context, the moving party bears the initial burden of making a colorable claim that its First Amendment rights have been infringed . . . at which point the burden shifts to the government to justify the restriction." *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1115-16 (9th Cir. 2011).

## IV. ARGUMENT

### A. The *Winter* Factors Weigh Against the Issuance of a Preliminary Injunction.

#### 1. Plaintiff Will Not Succeed on the Merits.

The first factor "is a threshold inquiry and is the most important factor." *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020). Thus, a "court need not consider the other factors" if a movant fails to show a likelihood of success on the merits. *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017).

The first *Winter* factor weighs against Plaintiff, as he is unable to make a "clear

showing" that he will succeed on any of his claims.

**a) The Olvera Street Cross Does Not Violate the Establishment Clause as Its Purpose Is Secular—to Preserve History and Culture.**

Plaintiff seeks to enjoin displaying the Olvera Street Cross, contending that its primary purpose is one of religious endorsement by the City and therefore violative of the Establishment Clause. *See* Pl.'s Mot., 6:16-19. However, the facts here align with *American Legion v. American Humanist Association*, 588 U.S. 29 (2019), which dealt with the category of "religious references or imagery in public monuments, symbols, mottos, displays, and ceremonies" under the Establishment Clause. *See id*. at 51 n.16 (2019).

In *American Legion*, the Supreme Court reversed the judgment of the Court of Appeals for the Fourth Circuit and held that a 32-foot tall, century-old cross monument on public land did not violate the Establishment Clause, as it had taken on secular meaning with the passage of time.[2] *American Legion*, 588 U.S. at 63-64.

The case centered on a Latin cross constructed in 1925 in the town of Bladensburg, Maryland (the "Bladensburg Cross"), which sat on public land and required public funds to maintain it. *Id.* at 36-38. At the base of the 32-foot tall cross, a bronze dedication plaque at the base of the monument listed the names of 49 local men, both Black and White, who had lost their lives in World War I ("WWI"). *Id.* at 43-44. Nearly 90 years after the Bladensburg Cross was erected, the petitioner (American Humanist Association ("AHA")) sued, seeking, in part, injunctive relief resulting in its removal or demolition. *Id.* at 45-46. The District Court granted summary judgment against AHA, holding that the Bladensburg Cross satisfied the three-pronged *Lemon* test. *Id.* at 46. The Fourth Circuit reversed. *Id.* at 48.

In rendering its decision, the Supreme Court wasted no time in rejecting the *Lemon* test at the outset. *See id.* at 48-49 ("If the *Lemon* Court thought that its test would provide

---

[2] The Supreme Court also rejected the *Lemon* test, which Plaintiff relies on in his Motion. *American Legion*, 588 U.S. at 50-51.

a framework for all future Establishment Clause decisions, its expectation has not been met. In many cases, this Court has either expressly declined to apply the test or has simply ignored it.").

It noted "at least four reasons" why the *Lemon* test was problematic when applied to cases involving "the use, for ceremonial, celebratory, or commemorative purposes, of words or symbols with religious associations," stating that "these considerations counsel against" using the *Lemon* test "and toward application of a presumption of constitutionality for longstanding monuments, symbols, and practices." *American Legion*, 588 U.S. 29, 51-52 (2019) (citation omitted). First, "[t]hese cases often concern monuments, symbols, or practices that were first established long ago," and thus, "identifying their original purpose or purposes are difficult." *Id.* at 52. Thus, "it would be inappropriate for courts to compel their removal or termination based on supposition." *Id.* Second, "as time goes by, the purposes associated with an established monument, symbol, or practice often multiply." *Id.* at 53. The Supreme Court pointed to the Ten Commandments monuments as an example, where "[t]hey have historical significance as one of the foundations of our legal system, and for largely that reason, they are depicted in the marble frieze in our courtroom and in other prominent public buildings in our Nation's capital." *Id.* Simply put, "[a]s our society becomes more and more religiously diverse, a community may preserve such monuments, symbols, and practices for the sake of their historical significance or their place in a common cultural heritage." *Id.* at 54. Third, "just as the purpose for maintaining a monument, symbol, or practice may evolve, the message conveyed may change over time." *Id.* at 54 (internal quotation marks and citation omitted). Among several examples, the Supreme Court pointed to the "many cities and towns across the United States that bear religious names," noting that "[r]eligion undoubtedly motivated those who named [them] . . . [y]et few would argue that this history requires that these names be erased from the map." *Id.* at 55. It went so far as to state that "[f]amiliarity itself can become a reason for preservation." *Id.* at 56. Fourth, "when time's passage imbues a religiously expressive monument, symbol, or practice with this kind of familiarity and historical significance,

removing it may no longer appear neutral, especially to the local community for which it has taken on particular meaning." *Id.* at 56. "A government that roams the land, tearing down monuments with religious symbolism and scrubbing away any reference to the divine will strike many as aggressively hostile to religion." *Id.* at 56.

The Supreme Court then assessed the Bladensburg Cross, underscoring its purpose and intent as a monument of the sacrifice of American soldiers killed in WWI despite being a religious symbol: "That the cross originated as a Christian symbol and retains that meaning in many contexts does not change the fact that the symbol took on an added secular meaning when used in World War I memorials." *Id.* at 63. Furthermore, there was no evidence of discriminatory intent in the selection of the design or the decision to maintain it. The Supreme Court noted that "[t]he monument would not serve that role if its design had deliberately disrespected area soldiers who perished in World War I," such as deliberately leaving off the names of Jewish soldiers (or including them against the wishes of their families) or the exclusion of Black soldiers, as the monument was erected "during a period when the country was experiencing heightened racial and religious animosity" where "[m]embership of the Ku Klux Klan . . . was at its height." *Id.* at 64-65. The Supreme Court concluded that "[t]he cross is undoubtedly a Christian symbol, but that fact should not blind us to everything else that the Bladensburg Cross has come to represent." *Id.* at 66.

Here, the facts supporting a secular purpose align with *American Legion*. The Olvera Street Cross was erected to honor the City's founding, as opposed to being an endorsement of Christianity. A nearby marker explains its secular purpose: "The first Olvera Street cross was carved by Mrs. Florence Walker in 1929 to honor the city's 148th birthday." The Historical Market Database, *Olvera Street Cross*, https://www.hmdb.org/m.asp?m=162936 (last visited Mar. 11, 2026). The Olvera Street Cross is inscribed with "El Pueblo de la Reyna de Los Angeles" (or The Town of the Queen of Angeles, which is the historical variation of the full original name for Los Angeles—El Pueblo de Nuestra Senora la Reina de los Angeles de Porciuncula or The Town of Our Lady the Queen of the

Angels of Porciuncula), "Felipe de Neve" (the founder of Los Angeles), and "September Fourth 1781" (the date the city was founded). *Id.* Its secular purpose is further corroborated by The Huntington's digital library, which describes the cross as "the commemorative wooden cross monument for Felipe de Neve[,] a former governor of Alta California and founder of Los Angeles . . . ." The Huntington Digital Library, *Old Cross at Entrance of Olvera St. Los Angeles, Cal.*, https://hdl.huntington.org/digital/collection/p15150coll2/id/17779 (last visited Mar. 11, 2026). There is no mention of a religious purpose being espoused. Given that "Los Angeles" is indisputably religious in origin, a Latin cross monument to commemorate its founding is fitting for this secular purpose. And no evidence of discriminatory intent exists here. There is no indication that a cross was chosen to exclude other religious or racial groups—then or now. In fact, the history of the City indicates a diverse group of forty-four settlers of Native American, African, and European heritage had founded it.

Even if the above evidence of the Olvera Street Cross's original, secular purpose were set aside, the bare reasoning set forth in *American Legion* (i.e., the noted shortcomings of the *Lemon* test) still points to preservation. First, given that the monument was established nearly a century ago, it would be inappropriate for the Court to compel its removal based on supposition—that because the monument is a Latin cross its purpose was religious. Second, even if true, the purposes associated with it have undoubtedly multiplied, specifically that the Olvera Street Cross must be preserved due to its historical significance and its place in cultural heritage as commemorating the birthplace of the city. Third, just as the purpose for maintaining a monument may evolve, the message conveyed has changed over time. The Supreme Court observed in *American Legion* that "few would say that the State of California is attempting to convey a religious message by retaining the names given to many of the State's cities by their original Spanish settlers—San Diego, Los Angeles, Santa Barbara, San Jose, San Francisco, etc." *See American Legion*, 588 U.S. at 60. Likewise, few would say that the City is attempting to convey a religious message by maintaining the Olvera Street Cross. "Familiarity itself can become a reason

for preservation." *Id.* at 56. Fourth, when time's passage imbues a religiously expressive monument with this kind of familiarity or historical significance, removing it will no longer appear neutral, especially to the local community for which it has taken on particular meaning. Thus, given that the Olvera Street Cross has become a prominent community landmark, "its removal or radical alteration at this date would be seen by many not as a neutral act but as the manifestation of 'a hostility toward religion that has no place in our Establishment Clause traditions.'" *Id.* at 36 (citation omitted).

As such, Plaintiff will not succeed on the merits in claiming that the Olvera Street Cross violates the Establishment Clause.

**b) For the Same Reasons, the Kiosko Nativity Scene (Crèche) Does Not Violate the Establishment Clause, Whether Viewed under *American Legion* or the *Lemon* Test.**

Plaintiff also moves to enjoin the City from displaying the annual Kiosko Nativity Scene. But just as with the Olvera Street Cross, the facts and Supreme Court case law unequivocally shows that the crèche is constitutional and does not violate the Establishment Clause.

The same analysis under *American Legion* confirms this. As stated above, the crèche is tied to the Las Posadas celebration. Both have longstanding roots, and it would be inappropriate for the Court to compel its removal based on supposition as to its original purpose. It has been on display since early days of Los Angeles, and Las Posadas has been a part of Olvera Street since its founding in 1930. El Pueblo de Los Angeles, *Las Posadas on Olvera Street*, https://elpueblo.lacity.gov/articles/las-posadas-olvera-street (last visited Mar. 11, 2026). Its purpose and message are to celebrate and commemorate centuries-old traditions, meaning the crèche should be preserved for the sake of its historical significance and cultural heritage. Las Posadas commemorates the journey of Joseph and Mary from Nazareth to Bethlehem and their search for shelter in preparation for the birth of Jesus, and it is a tradition that began in the 16th century and is celebrated in Mexico and other Latin American countries. Olvera-Street.com, *Las Posadas*, https://www.olvera-

street.com/las-posadas (last visited Mar. 11, 2026). While the event is rooted in Christian and Catholic traditions, it is attended by people from all religious backgrounds and all are welcome to participate. El Pueblo de Los Angeles, *Las Posadas on Olvera Street*, https://elpueblo.lacity.gov/articles/las-posadas-olvera-street (last visited Mar. 11, 2026). Thus, when viewing the crèche and the event together, its purpose is to celebrate and commemorate Mexican/Spanish traditions that have existed since the City's founding. And "[f]amiliarity itself can become a reason for preservation." *American Legion*, 588 U.S. at 56. Ultimately, given the passage of time, removing the crèche (or preventing its display) will no longer appear neutral, especially to the Los Angeles community for which it has taken on a particular meaning.

Even if the Court were to the apply the rejected *Lemon* test that Plaintiff relies on, *Lynch v. Donnelly*, 465 U.S. 688 (1984), confirms that the Kiosko Nativity Scene still does not violate the Establishment Clause. In that case, the Supreme Court reversed the district court's decision to permanently enjoin the city from including a crèche in its Christmas display, which the Court of Appeals of the First Circuit had affirmed.

In *Lynch*, each year, in cooperation with the downtown retail merchants' association, the City of Pawtucket, Rhode Island, had erected a Christmas display as part of its observance of the Christmas holiday. *Id.* at 671. Though the display was situated in a park owned by a nonprofit organization, the Supreme Court noted that it was "essentially like those to be found in hundreds of towns or cities across the Nation—often on public grounds—during the Christmas season." *Id.* The city-owned crèche had been displayed for 40 or more years, consisting of traditional figures, including the Infant Jesus, Mary and Joseph, angels, shepherds, kings, and animals. *Id.* In addition, the display included other decorations associated with Christmas, including, among other things, a Santa Claus house, reindeer pulling Santa's sleigh, a Christmas tree, carolers, colored lights, and a large banner reading "SEASONS GREETINGS." *Id.*

Residents, an affiliate of the American Civil Liberties Union, and the affiliate's members brought suit challenging the inclusion of the crèche. *Id.* The district court held

that the city's inclusion of the crèche violated the Establishment Clause by endorsing and promulgating Christian beliefs and appearing to officially sponsor the religion. *Id.* at 672. The district court did acknowledge the absence of administrative entanglement, but it nevertheless found that excessive entanglement had been fostered as a result of the political divisiveness by including the crèche. *Id.* The Court of Appeals for the First Circuit affirmed.

At the outset of its analysis, the Supreme Court recognized that a "total separation" of church and state was "not possible in the absolute sense" and "[n]or d[id] the Constitution require complete separation; it affirmatively mandates accommodation, not merely tolerance, of all religions, and forbids hostility toward any." *Id.* at 672-673. The Supreme Court then applied the *Lemon* test (i.e., (1) whether the challenged conduct has a secular purpose, (2) whether its principal or primary effect is to advance or inhibit religion, and (3) whether it creates an excessive entanglement of government with religion or through divisive political potential), though emphasized its "unwillingness to be confined to any single test or criterion in this sensitive area." *Id.* at 679.

First, the Supreme Court noted that "[w]hen viewed in the proper context of the Christmas Holiday season . . . there is insufficient evidence to establish that the inclusion of the crèche is a purposeful or surreptitious effort to express some kind of subtle government advocacy of a particular religious message." *Id.* at 680. It found that the crèche "is sponsored by the City to celebrate the Holiday and to depict the origins of that Holiday," which are "legitimate secular purposes." *Id.* at 681.

Second, the Supreme Court stated that the district court had erred in finding the primary effect of including the crèche was to confer a substantial and impermissible benefit on religion in general and on the Christian faith in particular. *Id.* at 681 Specifically, it found that "whatever benefit to one faith or religion or to all religions, [wa]s indirect, remote and incidental," elaborating that "display of the crèche [wa]s no more an advancement or endorsement of religion than the Congressional and Executive recognition of the origins of the Holiday itself as 'Christ's Mass,' or the exhibition of

literally hundreds of religious paintings in governmentally supported museums." *Id.* at 683.

Third, the Supreme Court did not disturb the lower court's finding on the absence of administrative entanglement and reiterated that political divisiveness alone cannot serve to invalidate otherwise permissible conduct. *Id.* at 684. It noted that public resources were "*de minimis*" given that the city owned the crèche and no expenditures for maintenance were necessary. It found that "apart from this litigation there [wa]s no evidence of political friction or divisiveness over the crèche in the 40-year history of Pawtucket's Christmas celebration." *Id.* And it stated that "[a] litigant cannot, by the very act of commencing a lawsuit, however, create the appearance of divisiveness and then exploit it as evidence of entanglement." *Id.* at 685.

Here, even when viewed under the *Lemon* test, the Kiosko Nativity Scene does not violate the Establishment Clause. First, the crèche has a legitimate secular purpose. Viewing the crèche in the proper context of Las Posadas and the historic and cultural significance of that tradition for the Los Angeles community during the Christmas season, there is insufficient evidence to establish that the crèche is a purposeful or surreptitious effort to express some kind of subtle government advocacy of a particular religious message. In fact, an article published on an official website of the City dispels any such notion, stating that "[w]hile the event is rooted in Christian and Catholic traditions, it is attended by people from all religious backgrounds and all are welcome to participate." El Pueblo de Los Angeles, *Las Posadas on Olvera Street*, https://elpueblo.lacity.gov/articles/las-posadas-olvera-street (last visited Mar. 11, 2026). Second, like the crèche in *Lynch*, the primary effect of the crèche here is not to confer substantial and impermissible benefit on religion in general and on the Christian faith in particular. And "whatever benefit to one faith or religion or to all religions, is indirect, remote and incidental" and "is no more an advancement or endorsement of religion than the Congressional and Executive recognition of the origins of the Holiday itself as "Christ's Mass," or the exhibition of literally hundreds of religious paintings in governmentally supported museums." *Lynch*

465 U.S. at 683. Third, there is no evidence of administrative entanglement or political divisiveness proffered by the Plaintiff. Plaintiff provides no support concerning his bald allegation of use of public resources (which would be *de minimis* regardless). Nor can he, by the very act of commencing a lawsuit, create the appearance of divisiveness to exploit it as evidence of entanglement.

As such, Plaintiff will not succeed on the merits in claiming that the Kiosko Nativity Scene violates the Establishment Clause.

**2. There Is No Threat of Imminent, Irreparable Harm.**

Unreasonable delay in asserting a claim of irreparable injury may undercut a movant's claim of irreparable injury. *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016) ("delay in seeking a preliminary injunction of even only a few months—though not necessarily fatal—militates against a finding of irreparable harm"); *Garcia v. Google, Inc.* 786 F.3d 733, 746, (9th Cir. 2015) (holding that the district court did not abuse its discretion by denying the plaintiff's injunction request because the plaintiff had "waited months" to seek injunctive relief).

"[H]arm is irreparable if it cannot be adequately compensated or corrected at a later date by legal remedies or monetary damages." *Ass'n v. Maxwell-Jolly*, 563 F.3d 847, 852 (9th Cir. 2009) (citing *Sampson v. Murray*, 415 U.S. 61, 90 (1974)). "[E]conomic injury alone does not support a finding of irreparable harm, because such injury can be remedied by a damage award." *Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991).

Here, Plaintiff cannot reasonably claim any imminent and irreparable harm. Specifically, his delay in seeking a preliminary injunction militates against a finding of irreparable harm. Both the Olvera Street Cross and the Kiosko Nativity Scene have been on display for many years. Plaintiff attests to observing the crèche in 2024. Pl.'s Mot., 9:6-9. He also attests that he visits the park "regularly for recreation" and is "repeatedly exposed" to the "permanent" Olvera Street Cross, meaning he has undoubtedly seen the cross since 2024 at the latest. Yet, he has waited until 2026 to bring this motion. Without

explanation of what has changed, or when no compelling reason is apparent, courts are not required to issue preliminary injunctive relief to stop a practice that had continued unchallenged for a lengthy period of time. *Oakland Trib., Inc. v. Chron. Pub. Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985).

As such, this factor weighs in favor of denying his request for injunctive relief.

**3. The Balance of Equities and Public Interest Support Denying Injunctive Relief.**

"Traditional standards for granting a preliminary injunction impose a duty on the court to balance the interests of all parties and weigh the damage to each, mindful of the moving party's burden to show the possibility of irreparable injury to itself and the probability of success on the merits." *L.A. Mem'l Coliseum Com. v. Nat'l Football League*, 634 F.2d 1197, 1204 (9th Cir. 1980). When the nonmovant is the government, the last two *Winter* factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009); *Roman v. Wolf*, 977 F.3d 935, 940-41 (9th Cir. 2020)).

Here, the balance of equities and public interest support denying injunctive relief, as the Olvera Street Cross and Kiosko Nativity Scene are constitutional and do not violate the Establishment Clause. There would be no benefit to preventing their display. An injunction would practically mean removal and/or destruction of these historic and cultural displays. The removal of both will not appear neutral. As the *American Legion* court put it, "[a] government that roams the land, tearing down monuments with religious symbolism and scrubbing away any reference to the divine will strike many as aggressively hostile to religion." *American Legion*, 588 U.S. at 56. And "destroying or defacing [a monument] that has stood undisturbed for nearly a century would not be neutral and would not further the ideals of respect and tolerance embodied in the First Amendment." *Id.* at 66.

As such, the balance of equities and public interest weighs against Plaintiff's request for injunctive relief.

/ / /

**V. CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's Motion for Preliminary Injunction.

DATED: March 18, 2026

Respectfully submitted,

HYDEE FELDSTEIN SOTO, City Attorney
DENISE C. MILLS, Chief Deputy City Attorney
KATHLEEN KENEALY, Chief Assistant City Attorney
GABRIEL S. DERMER, Assistant City Attorney
EMERSON H. KIM, Deputy City Attorney

By: */s/ Emerson H. Kim*
EMERSON H. KIM, Deputy City Attorney
Attorney for Defendants

Case: 26-3278, 08/17/2026, DktEntry: 13.1, Page 40 of 108

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants, certifies that this brief contains 4,661 words, which complies with the word limit of L.R. 11-6.1

DATED: March 18, 2026 By: */s/ Emerson H. Kim*
EMERSON H. KIM

PROOF OF SERVICE

*Gerritsen, et al. v. City of Los Angeles, et al.*,
Case No. USDC 2:25-cv-08760-RGK-KS

I, **Ava Smith**, the undersigned, say: I am over the age of 18 years and not a party to the within action or proceeding. My business address is 200 North Main Street, City Hall East, 6th Floor, Los Angeles, California 90012.

On March 18, 2026, I served the foregoing documents described as: **OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION** on the interested parties in this action addressed as follows:

Henry Frederick Ramey, Jr
7101 Rosecrans Avenue, Apt. 98
Paramount, CA 90723

Jack Gerritsen
6217 1-2 Palm Avenue
Bell, CA 90201

**[X] BY MAIL**: I am readily familiar with the practice of the Los Angeles City Attorney's Office for collection and processing of correspondence for mailing with the United States Postal Service. In the ordinary course of business, correspondence is deposited with the United States Postal Service the same day it is placed for collection and mailing. On the date referenced above, I placed a true copy of the above documents(s) in a sealed envelope and placed it for collection in the proper place in our office at Los Angeles, California.

I hereby certify that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: March 18, 2026

Ava Smith

FILED
CLERK, U.S. DISTRICT COURT
03/17/2026
CENTRAL DISTRICT OF CALIFORNIA
BY gr DEPUTY
DOCUMENT SUBMITTED THROUGH THE ELECTRONIC DOCUMENT SUBMISSION SYSTEM

JACK GERRITSEN
6217 ½ Palm Av.
Bell, CA., 90201
TEL.: (323) 383-4371

HENRY FREDERICK RAMEY, JR.
7101 Rosecrans Av., #98
Paramount, CA., 90723
TEL.: (909) 678-9348

Plaintiffs in Pro Se.

**UNITED STATES DISTRICT COURT,**

**CENTRAL DISTRICT OF CALIFORNIA.**

| | |
|---|---|
| JACK GERRITSEN, HENRY FREDERICK RAMEY, JR.<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF LOS ANGELES, a chartered city, DOMENIKA LYNCH, as General Manager, El Pueblo Park, and, DOES 1-10, inclusive,<br><br>Defendants. | Case No.: 2:25-CV-8760-RGK(KS)<br><br>REPLY TO OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION. MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF AND SUPPLEMENTAL DECLARATION OF JACK GERRITSEN.<br>Motion Date: Mar. 18. 2026.<br>Time: 10:00 a. m.<br>Room: 580.<br>Discovery Cut-Off: None.<br>Motion Cut-Off: None.<br>Trial Date: None. |

## I. INTRODUCTION

Defendants' Opposition misapplies Supreme Court precedent and ignores the religious endorsement inherent in the displays. The Olvera Street cross and Kiosko nativity scene (crèche) lack sufficient secular context to pass constitutional muster under the Establishment Clause. Plaintiff Gerritsen is likely to succeed on the merits, faces irreparable harm, and the equities and public interest favor injunctive relief. *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008). At minimum, serious questions



JACK GERRITSEN
6217 ½ Palm Av.
Bell, CA., 90201
TEL.: (323) 383-4371

exist, tipping the sliding scale in Plaintiff's favor. *Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1131-35 (9th Cir. 2011).

## II. ARGUMENT

### A. Plaintiff Is Likely to Succeed on the Merits (or Raises Serious Questions)

Defendants concede the displays are on public property but claim a secular purpose in "preserving history and culture." (Opp. at 4-8.) This is insufficient under controlling law. The Establishment Clause prohibits government endorsement of religion. *County of Allegheny v. ACLU,* 492 U.S. 573, 592 (1989). Courts apply the endorsement test (whether a reasonable observer sees endorsement) and Lemon test (secular purpose, primary effect neither advances nor inhibits religion, no excessive entanglement). *Lemon v. Kurtzman,* 403 U.S. 602, 612-13 (1971). *American Legion v. American Humanist Ass'n,* 588 U.S. 29 (2019), preserves Lemon for new displays but applies a presumption of constitutionality to longstanding monuments with acquired secular meaning—only if they have non-religious features diluting the message.

1. **The Cross Violates the Establishment Clause.** Defendants analogize to the Bladensburg Cross in American Legion, a 1918 war memorial with secular inscriptions honoring fallen soldiers. (Opp. at 4-8.) Here, the Olvera Street cross (erected ca. 1929-1930) commemorates LA's founding but is a "holy cross" replicated from Spanish missionary designs, without inscriptions, plaques, or secular elements. (Motion MPA at 5; Gerritsen Supp. Decl. ¶¶ 3-4.) It stands alone as a Christian symbol in a public park, endorsing religion to a reasonable observer. Unlike *Bladensburg's* acquired secular war context, this cross's "historical" tie is to religious colonization, not neutral commemoration. See *American Legion,* 588 U.S. at 51-52 (plurality noting secular dilution over time; standalone crosses risk violation). It fails *Lemon's* second prong (primary effect advances religion) and the endorsement test. *Capitol Square Review Bd. v. Pinette,* 515 U.S. 753, 765-66



JACK GERRITSEN
6217 ½ Palm Av.
Bell, CA., 90201
TEL.: (323) 383-4371

(1995) (government-sponsored crosses endorse Christianity). Defendants' Wikipedia citation (Opp. at 2) confirms the site's religious heritage but does not secularize the cross itself. Serious questions exist.

2. **The Nativity Scene (Crèche) Violates the Establishment Clause.** Defendants claim the crèche is secular under *Lynch v. Donnelly,* 465 U.S. 668 (1984), where a nativity was upheld amid secular symbols (Santa, reindeer, etc.). (Opp. at 8-11.) But here, the Kiosko crèche is standalone, depicting Jesus's birth without dilution—precisely what Allegheny struck down as endorsement. 492 U.S. at 598-602 (isolated crèche inside courthouse violates; no secular context). (Motion MPA at 4-5; Gerritsen Supp. Decl. ¶ 5.) Defendants apply American Legion to this seasonal display, but Legion is for permanent monuments, not recurring religious setups. Even under *Lemon,* it lacks secular purpose beyond Christian promotion, advances religion, and entangles government (using public resources). *Woodring v. Jackson Cnty.,* 986 F.3d 979, 988-89 (7th Cir. 2021) (standalone crèches violate without secular elements). Defendants' "cultural" argument ignores its faith-specific message. Plaintiff raises serious questions.

**B. Irreparable Harm Exists.**

First Amendment violations are irreparable per se. *Elrod v. Burns,* 427 U.S. 347, 373 (1976). The cross causes ongoing harm during Gerritsen's frequent visits; the crèche recurs annually, with imminent 2026 display expected. (Gerritsen Supp. Decl. ¶¶ 6-7.) Defendants' delay argument (Opp. at 12) fails—Plaintiff filed promptly after 2024 exposure, and harm is continuous. No "delay" waives constitutional rights. *Roman v. Wolf,* 977 F.3d 935, 941 (9th Cir. 2020) (ongoing violations support irreparable harm).

///

///

///



JACK GERRITSEN
6217 ½ Palm Av.
Bell, CA., 90201
TEL.: (323) 383-4371

### C. Balance of Equities and Public Interest Favor Injunction.

Removing the replaceable wooden cross and seasonal crèche imposes minimal burden—no financial loss, preserves park access. (Opp. at 13.) Plaintiff suffers constitutional exclusion. Equities tip sharply for Plaintiff where rights are at stake. *Cottrell,* 632 F.3d at 1135. Public interest favors religious neutrality. *Awad v. Ziriax,* 670 F.3d 1111, 1132 (10th Cir. 2012). Defendants' "public interest" in history ignores Establishment Clause primacy.

## III. CONCLUSION

The Court should grant the preliminary injunction. No bond required. Fed. R. Civ. P. 65(c).

Dated this 16th day of March, 2026

By:

JACK GERRITSEN
6217 ½ Palm Av.
Bell, CA., 90201
TEL.: (323) 383-4371
Plaintiff in Pro Se.

Dated this 16th day of March, 2026

By:

HENRY FREDERICK RAMEY, JR.
7101 Rosecrans Av., #98
Paramount, CA., 90723
TEL.: (909) 678-9348
Plaintiff in Pro Se.



JACK GERRITSEN
6217 ½ Palm Av.
Bell, CA., 90201
TEL.: (323) 383-4371

## SUPPLEMENTAL DECLARATION OF JACK GERRITSEN

I, Jack Gerritsen, declare under penalty of perjury:

1. I am a Plaintiff in this action and incorporate my prior Declaration.
2. The facts herein are true to my knowledge.
3. The Olvera Street cross has no plaques, inscriptions, or secular features—it's a plain wooden Latin cross, visible as religious from afar.
4. It commemorates LA's founding but replicates Spanish missionary "holy crosses," per historical accounts I've reviewed.
5. The Kiosko nativity is isolated—no Santa, lights, or secular items; it's just Mary, Joseph, Jesus, etc.
6. I visit the park 2-3 times monthly and see the cross each time, causing offense.
7. The nativity recurs every November-December; I expect it in 2026 absent injunction.

Under the penalty of perjury, I declare that the foregoing is true and correct, and that this declaration was executed on March 16, 2026, at Bell, California.

Jack Gerritsen

JACK GERRITSEN,
Plaintiff.

Rest In Power, Rodney King, 1965-2012
George Floyd, 1973-2020
Carl Reiner, 1922-2020
Rob Reiner, 1947-2025
Michelle Singer Reiner, 1955-2025
Renee Good, 1988-2026
Alex Pretti, 1988-2026



JACK GERRITSEN
6217 ½ Palm Av.
Bell, CA., 90201
TEL.: (323) 383-4371

**PROOF OF SERVICE.**

I, Henry Frederick Ramey, Jr., am a resident of the County of Los Angeles, State of California. I am over the age of 18 years, and I am not a party to this action. My address is 7101 Rosecrans Av., #98, Paramount, California.

On March 16, 2026, I served the foregoing copies of REPLY TO OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION. MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF AND SUPPLEMENTAL DECLARATION OF JACK GERRITSEN on the interested parties in this action by placing the following true copies, enclosed in a sealed envelope addressed as follows:

HYDEE FELDSTEIN SOTO, CITY ATTORNEY
DENISE C. MILLS, CHIEF DEPUTY CITY ATTORNEY
KATHLEEN A. KENEALY, CHIEF ASSISTANT CITY ATTORNEY
GABRIEL S. DERMER, ASSISTANT CITY ATTORNEY
ERMERSON H. KIM, DEPUTY CITY ATTORNEY
CITY OF LOS ANGELES
200 N. MAIN ST., 6TH FLOOR
LOS ANGELES, CA., 90012
gabriel.dermer@lacity.org
emerson.kim@lacity.org

On the above date, I delivered such papers via United States Post Office to the addressees at Paramount, California.

Under the penalty of perjury, I declare that the foregoing is true and correct, and that this declaration was executed on March 16, 2026, at Paramount, California.

Henry F. Ramey, Jr.
HENRY FREDERICK RAMEY, JR.,
Declarant.



JACK GERRITSEN
6217 ½ Palm Av.
Bell, CA., 90201
TEL.: (323) 383-4371

JACK GERRITSEN
6217 ½ Palm Av.
Bell, CA., 90201
TEL.: (323) 383-4371

JACK GERRITSEN
6217 ½ Palm Av.
Bell, CA., 90201
TEL.: (323) 383-4371

HENRY FREDERICK RAMEY, JR.
7101 Rosecrans Av., #98
Paramount, CA., 90723
TEL.: (909) 678-9348

Plaintiffs in Pro Se.

FILED
CLERK, U.S. DISTRICT COURT
February 17, 2026
CENTRAL DISTRICT OF CALIFORNIA
BY klh DEPUTY
DOCUMENT SUBMITTED THROUGH THE ELECTRONIC DOCUMENT SUBMISSION SYSTEM

**UNITED STATES DISTRICT COURT,**

**CENTRAL DISTRICT OF CALIFORNIA.**

JACK GERRITSEN, HENRY FREDERICK RAMEY, JR.

Plaintiffs,

v.

CITY OF LOS ANGELES, a chartered city, DOMENIKA LYNCH, as General Manager, El Pueblo Park, and, DOES 1-10, inclusive,

Defendants.

Case No.: 2:25-CV-8760-RGK(KS)

NOTICE OF MOTION FOR PRELIMINARY INJUNCTION. MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF AND DECLARATION OF JACK GERRITSEN.

Motion Date: Apr. 1. 2026.
Time: 10:00 a. m.
Room: 580.
Discovery Cut-Off: None.
Motion Cut-Off: None.
Trial Date: None.

NOTICE IS HEREBY GIVEN that on April 1, 2025, at 10:00 a. m., or as soon thereafter as the matter may be heard in Room 580 of the above-entitled Court, located at 255 E. Temple St., Los Angeles, California, you and each of you will please take notice that at the above-stated date, time, and location, Plaintiffs, in particular, Plaintiff Gerritsen, will move this Court for a Preliminary Injunction enjoining Defendant City of Los Angeles from displaying any manger scenes at the El Pueblo Plaza, and from displaying the Cross on the South end of Olvera St.

Plaintiff Gerritsen would suffer irreparable injury if the failure to provide for the separation of church and state is not abated.

This Motion will be made upon the grounds that Plaintiff Gerritsen alleges that the Cross and the Manger displays violate the separation of church and state and should not be displayed on City property.

Local Rule 7.3 states that:

> L.R. 7-3 ***Conference of Counsel Prior to Filing of Motions.*** In all cases not listed as exempt in L.R. 16-12, and ***except in connection with*** discovery motions (which are governed by L.R. 37-1 through 37-4), ***applications under F.R.Civ.P. 65 for temporary restraining orders or preliminary injunctions,*** and motions to retax costs under L.R. 54-2.5, counsel contemplating the filing of any motion must first contact opposing counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution. The conference must take place in person, by telephone, or via video conference at least 7 days prior to the filing of the motion. If the parties are unable to reach a resolution that eliminates the necessity for a hearing, counsel for the moving party must include a declaration, under penalty of perjury, that sets forth at a minimum the date(s) the conference took place and the position of each party with respect to each disputed issue that will be the subject of the motion. Failure to include such a declaration may result in the motion being denied. (Emphasis added.)

Therefore, a Meet and Confer Conference is ***NOT*** required for a Motion for Preliminary Injunction.

///

///

///

///

///



JACK GERRITSEN
6217 ½ Palm Av.
Bell, CA., 90201
TEL.: (323) 383-4371

This Motion will be based upon the Memorandum of Points and Authorities served herewith, the Declaration of Jack Gerritsen, upon all the papers, records, and documents on file herein, and upon evidence oral and documentary to be presented at the hearing of the Motion.

Dated this 17th day of February, 2026

By: *Jack Gerritsen*

JACK GERRITSEN
6217 ½ Palm Av.
Bell, CA., 90201
TEL.: (323) 383-4371
Plaintiff in Pro Se.

Dated this 17th day of February, 2026

By: *Henry F. Ramey, Jr.*

HENRY FREDERICK RAMEY, JR.
7101 Rosecrans Av., #98
Paramount, CA., 90723
TEL.: (909) 678-9348
Plaintiff in Pro Se.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs seek a preliminary injunction to prevent Defendants from maintaining religious displays on public property in violation of the Establishment Clause of the First Amendment to the United States Constitution, as incorporated against the states by the Fourteenth Amendment. As detailed in the Verified First Amended Complaint (FAC), Defendants have displayed a Nativity scene (manger display) on the kiosko in El Pueblo Park during November-December 2024, and maintain a large wooden cross at the South entrance to Olvera Street. These displays constitute an impermissible government endorsement of religion, causing irreparable harm to Plaintiff Gerritsen, who is an atheist and is offended by such endorsements on public land.

A preliminary injunction is warranted because Plaintiff Gerritsen is likely to succeed on the merits of their Establishment Clause claim under 42 U.S.C. §1983, he will suffer irreparable harm absent relief, the balance of equities tips in his favor, and an injunction serves the public interest.

## II. STATEMENT OF FACTS

The facts are drawn from the Verified FAC, incorporated herein by reference, and the attached Declaration of Jack Gerritsen.

El Pueblo Park is a public park owned and operated by Defendant City of Los Angeles, with Defendant Lynch as its General Manager. (FAC ¶¶ 1-2.) In November-December 2024, the City erected a Nativity display on the kiosko in the Park, which Plaintiff Gerritsen, an atheist who does not believe in God, observed as an endorsement of Christianity. (FAC ¶ 22; Gerritsen Decl. ¶¶ 3-4.) Additionally, a large wooden cross stands at the South entrance to Olvera Street within the Park, which Gerritsen also views as a religious endorsement. (FAC ¶ 22; Gerritsen Decl. ¶ 5.)



JACK GERRITSEN
6217 ½ Palm Av.
Bell, CA., 90201
TEL.: (323) 383-4371

These displays are on public property and maintained by the City. Gerritsen frequently visits the Park and is exposed to these symbols, causing him offense and a sense of exclusion as a non-believer. (Gerritsen Decl. ¶¶ 6-7.) The Nativity is seasonal but recurring, while the cross is a longstanding fixture first erected around 1929-1930 to commemorate the founding of Los Angeles, though it has been replaced multiple times due to weathering. Despite its historical context, it prominently features a Christian symbol without sufficient secular elements to neutralize its religious message.

## III. LEGAL STANDARD

In the Ninth Circuit, a plaintiff seeking a preliminary injunction must establish: (1) likelihood of success on the merits; (2) likelihood of irreparable harm absent preliminary relief; (3) that the balance of equities tips in their favor; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008). The Ninth Circuit employs a "sliding scale" approach, where "serious questions going to the merits" and a balance of hardships tipping sharply in the plaintiff's favor can support an injunction, provided the other Winter factors are met. *Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1131-35 (9th Cir. 2011).

## IV. ARGUMENT

A. Plaintiffs Are Likely to Succeed on the Merits (or Raise Serious Questions)

Plaintiff Gerritsen's claim arises under the Establishment Clause, which prohibits government actions that endorse religion. See *County of Allegheny v. ACLU,* 492 U.S. 573, 592 (1989) (endorsement test: whether a reasonable observer would view the display as government endorsement of religion). Courts also apply the Lemon test: (1) secular purpose; (2) primary effect neither advances nor inhibits religion; and (3) no excessive entanglement. *Lemon v. Kurtzman,* 403 U.S. 602, 612-13 (1971).

///



JACK GERRITSEN
6217 ½ Palm Av.
Bell, CA., 90201
TEL.: (323) 383-4371

1. The Nativity Display Violates the Establishment Clause. The Nativity scene on the kiosko is a standalone religious symbol depicting the birth of Jesus Christ, unaccompanied by sufficient secular elements like Santa Claus or reindeer to dilute its Christian message. In *Allegheny,* the Supreme Court held that a similar creche inside a courthouse violated the Clause because it endorsed Christianity without contextual secularization. 492 U.S. at 598-602. By contrast, in *Lynch v. Donnelly,* 465 U.S. 668 (1984), a Nativity was upheld only because it was part of a broader holiday display with secular symbols. Here, the FAC alleges the Nativity as an isolated endorsement (FAC ¶ 22), failing *Lemon's* second prong and the endorsement test. It lacks a secular purpose beyond promoting Christian beliefs and entangles the government in religion by using public resources for a faith-specific display. See also *Woodring v. Jackson Cnty.,* 986 F.3d 979 (7th Cir. 2021) (applying historical context but upholding display only with secular elements; standalone religious symbols violate). Plaintiff Gerritsen raises at least serious questions on the merits.
2. The Cross Violates the Establishment Clause. The wooden cross at Olvera Street's South end is a quintessential Christian symbol. While longstanding (erected ca. 1929-1930 to commemorate LA's founding), its primary effect is religious endorsement, not mere historical commemoration. In *American Legion v. Am. Humanist Ass'n,* 139 S. Ct. 2067 (2019), the Court upheld a 1918 war memorial cross due to its acquired secular historical significance over time. However, the Bladensburg Cross was a war memorial with non-religious inscriptions and context; here, the Olvera Street cross commemorates a city's founding but lacks comparable secular dilution—it is a "holy cross" replicated from Spanish designs, per historical records, and stands prominently without balancing elements. A reasonable observer would see it as endorsing Christianity, especially in a public



JACK GERRITSEN
6217 ½ Palm Av.
Bell, CA., 90201
TEL.: (323) 383-4371

park. See *Capitol Square Review Bd. v. Pinette,* 515 U.S. 753 (1995) (distinguishing government-sponsored religious displays from private ones; government displays risk endorsement). The cross fails *Lemon* and the endorsement test, raising serious questions.

Plaintiffs are likely to prevail, or at minimum raise serious questions, on their § 1983 claim.

B. Plaintiffs Will Suffer Irreparable Harm Absent an Injunction.

The loss of First Amendment freedoms constitutes irreparable injury. *Elrod v. Burns,* 427 U.S. 347, 373 (1976). Gerritsen, as an atheist, is exposed to these endorsements during Park visits, causing ongoing harm through feelings of exclusion and offense. (Gerritsen Decl. ¶¶ 6-8.) Without relief, this harm continues, especially with potential recurrence of the seasonal Nativity.

C. The Balance of Equities Tips Sharply in Plaintiffs' Favor

Defendants face minimal burden: removing or covering the cross (a replaceable wooden fixture) and refraining from Nativity displays costs little and preserves the Park's secular use. Plaintiffs, however, suffer constitutional harm. The equities favor Plaintiffs. See *Cottrell,* 632 F.3d at 1135 (balance tips sharply where constitutional rights are at stake).

D. An Injunction Serves the Public Interest

Upholding the Establishment Clause promotes religious neutrality and prevents government favoritism, serving the public interest. See *Awad v. Ziriax,* 670 F.3d 1111, 1132 (10th Cir. 2012) (enjoining Establishment Clause violations is in public interest).

///

///

///

///



JACK GERRITSEN
6217 ½ Palm Av.
Bell, CA., 90201
TEL.: (323) 383-4371

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant this motion and issue a preliminary injunction as requested. No bond is required, as this is a civil rights action with no financial harm to Defendants. Fed. R. Civ. P. 65(c).

Dated this 17th day of February, 2026

By: *Jack Gerritsen*
JACK GERRITSEN
6217 ½ Palm Av.
Bell, CA., 90201
TEL.: (323) 383-4371
Plaintiff in Pro Se.

Dated this 17th day of February, 2026

By: *Henry F. Ramey, Jr.*
HENRY FREDERICK RAMEY, JR.
7101 Rosecrans Av., #98
Paramount, CA., 90723
TEL.: (909) 678-9348
Plaintiff in Pro Se.



JACK GERRITSEN
6217 ½ Palm Av.
Bell, CA., 90201
TEL.: (323) 383-4371

**DECLARATION OF JACK GERRITSEN**

I, Jack Gerritsen, declare under penalty of perjury:

1. I am a Plaintiff in this action and reside in Bell, California. I am an atheist and do not believe in God.
2. The facts in the FAC are true to my knowledge.
3. In November-December 2024, I observed the City display a Nativity scene on the kiosko in El Pueblo Park, depicting the birth of Jesus, which I view as a government endorsement of Christianity. Unless Defendants change their mind, it is expected that the Nativity scene will appear again in November 2026.
4. This display offends me and makes me feel excluded as a non-believer.
5. There is a large wooden cross at the South end of Olvera Street, which I also see as a Christian endorsement on public land.
6. I visit the Park regularly for recreation and am repeatedly exposed to these symbols.
7. Absent an injunction, I will continue to suffer harm from these displays.
8. I believe the Nativity is seasonal but likely to recur, and the cross is permanent.

Under the penalty of perjury, I declare that the foregoing is true and correct, and that this declaration was executed on February 17, 2026, at Bell, California.

Jack Gerritsen
JACK GERRITSEN,
Plaintiff.

Rest In Power, Rodney King, 1965-2012
George Floyd, 1973-2020
Carl Reiner, 1922-2020
Rob Reiner, 1947-2025
Michelle Singer Reiner, 1955-2025



JACK GERRITSEN
6217 ½ Palm Av.
Bell, CA., 90201
TEL.: (323) 383-4371

Renee Good, 1988-2026

Alex Pretti, 1988-2026



JACK GERRITSEN
6217 ½ Palm Av.
Bell, CA., 90201
TEL.: (323) 383-4371

**PROOF OF SERVICE.**

I, Henry Frederick Ramey, Jr., am a resident of the County of Los Angeles, State of California. I am over the age of 18 years, and I am not a party to this action. My address is 7101 Rosecrans Av., #98, Paramount, California.

On February 17, 2026, I served the foregoing copies of NOTICE OF MOTION FOR PRELIMINARY INJUNCTION. MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF AND DECLARATION OF JACK GERRITSEN on the interested parties in this action by placing the following true copies, enclosed in a sealed envelope addressed as follows:

HYDEE FELDSTEIN SOTO, CITY ATTORNEY
DENISE C. MILLS, CHIEF DEPUTY CITY ATTORNEY
KATHLEEN A. KENEALY, CHIEF ASSISTANT CITY ATTORNEY
GABRIEL S. DERMER, ASSISTANT CITY ATTORNEY
CITY OF LOS ANGELES
200 N. MAIN ST., 6TH FLOOR
LOS ANGELES, CA., 90012
gabriel.dermer@lacity.org

On the above date, I delivered such papers via United States Post Office to the addressees at Paramount, California.

Under the penalty of perjury, I declare that the foregoing is true and correct, and that this declaration was executed on February 17, 2026, at Paramount, California.

Henry F. Ramey, Jr.
HENRY FREDERICK RAMEY, JR.,
Declarant.



JACK GERRITSEN
6217 ½ Palm Av.
Bell, CA., 90201
TEL.: (323) 383-4371

JACK GERRITSEN
6217 ½ Palm Av.
Bell, CA., 90201
TEL.: (323) 383-4371

HENRY FREDERICK RAMEY, JR.
7101 Rosecrans Av., #98
Paramount, CA., 90723
TEL.: (909) 678-9348

Plaintiffs in Pro Se.

FILED
CLERK, U.S. DISTRICT COURT
01/26/2026
CENTRAL DISTRICT OF CALIFORNIA
BY gr DEPUTY
DOCUMENT SUBMITTED THROUGH THE ELECTRONIC DOCUMENT SUBMISSION SYSTEM

**UNITED STATES DISTRICT COURT,**

**CENTRAL DISTRICT OF CALIFORNIA.**

JACK GERRITSEN, HENRY FREDERICK RAMEY, JR.

Plaintiffs,

v.

CITY OF LOS ANGELES, a chartered city, DOMENIKA LYNCH, as General Manager, El Pueblo Park, and, DOES 1-10, inclusive,

Defendants.

Case No.: 2:25-CV-8760-RGK(KS)

VERIFIED FIRST AMENDED COMPLAINT FOR VIOLATIONS OF CIVIL RIGHTS (42 U. S. C., §1983), AND VIOLATIONS OF CIVIL CODE §§51.7, AND 52.1.

(DEMAND FOR JURY TRIAL.)

Plaintiffs allege:

1. Defendant City of Los Angeles ("City"), is a chartered city, duly created by the electors of the City, located in the County of Los Angeles, State of California.
2. Defendant Domenika Lynch, is the General Manager of El Pueblo Park, a public park operated by the City, located in the County of Los Angeles, State of California.

///

3. Plaintiff is informed and believes and based thereon alleges herein below Causes of Action for violation of 42 United States Code, §1983; violations of Civil Code §51.7; and violations of Civil Code §52.1.
4. Plaintiff Jack Gerritsen, was, and at all times herein mentioned is an individual, with his present principal place of residence located in the County of Los Angeles, State of California.
5. Plaintiff Henry Frederick Ramey, Jr., was, and at all times herein mentioned is an individual, with his present principal place of residence located in the County of Los Angeles, State of California.
6. The wrongs alleged herein are in the County of Los Angeles, State of California. Venue of this action is properly brought before this Court.
7. Plaintiffs are ignorant of the true names and capacities of Defendants sued in this Complaint as Does 1-10, inclusive, and therefore, Plaintiffs sue these Defendants by these fictitious names. Plaintiffs will amend this Complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe and allege on this information and belief that each of the fictitiously named Defendants is negligently responsible in some manner for the occurrences alleged in this Complaint, and that Plaintiffs' injuries as alleged in this Complaint were proximately caused by that negligence.
8. At all times mentioned in this Complaint each of said Defendants was the agent and employee of each of the remaining said Defendants, and in doing the things alleged in this Complaint, was acting within the course and scope of this agency and employment.

///

///

///



JACK GERRITSEN
6217 ½ Palm Av.
Bell, CA., 90201
TEL.: (323) 383-4371

## I. FIRST CAUSE OF ACTION BROUGHT BY PLAINTIFFS AGAINST ALL DEFENDANTS FOR VIOLATIONS OF 42 U.S.C., §1983.

9. At all times hereinafter mentioned, each and all of the acts of the Defendant alleged herein were done by the Defendants under the color and pretense of the statutes, regulations, customs and usages of the State and under the authority of their offices as heretofore alleged herein.

10. Plaintiffs, who are White, was deprived of an interest protected by the Constitution and/or laws of the United States of America, and each and every Defendant caused, by commission or omission, such deprivation while acting under color of law.

11. All acts and/or omissions perpetrated by each Defendant were engaged in maliciously, callously, oppressively, wantonly, recklessly, with deliberate indifference to the rights already violated, despicably, with evil motive and/or intent, in disregard of the rights of the Plaintiffs.

12. On May 14, 1993, in the case of *Gerritsen v. City of Los Angeles,* 994 F.2d 570 (9th Cir. 1993), the Ninth Circuit held that a permit scheme regulating the distribution of handbills was unconstitutional, because it failed to serve a legitimate government interest. The permit scheme designated areas of the Park to be open to and not to be open to handbill distribution.

13. The permit scheme also unconstitutionally required a permit from the Park General Manager to distribute handbills.

14. On August 24, 2019, Mr. Espinoza, the then-Park Manager, attempted to take Plaintiff Gerritsen's handbills from his left hand while Plaintiff Gerritsen was handing out his handbills in the Park. A Cypress Private Security Officer told Plaintiff Gerritsen to leave the Park.



JACK GERRITSEN
6217 ½ Palm Av.
Bell, CA., 90201
TEL.: (323) 383-4371

15. In 2023, Arturo Chavez, the previous General Manager of El Pueblo Park, informed Plaintiff Gerritsen that the distribution of handbills required a permit from him, and was restricted to one area of the Park, and that Plaintiff Gerritsen would be provided a copy of the policy. Later, Edgar Garcia, the then-Assistant General Manager of the Park, provided a copy of the policy to Plaintiff Gerritsen. The policy was entitled, "City of Los Angeles El Pueblo de Los Angeles Historical Monument Authority Commission First Amendment Statement of Policy".

16. Plaintiffs also attach a copy of the first page of the Policy, which is attached as Exhibit "A", and incorporated herein by reference.

17. The Policy limits and restricts handbill distribution to a small section of the Park designated as Father Serra Park, and requires that a permit be obtained by anyone wishing to distribute handbills from Defendant Chavez. Both restrictions are unconstitutional.

18. On August 17, 2023, Plaintiff Gerritsen requested "… both the map and permit application form" via e-mail to arturo.chavez@lacity.org.

19. On August 25, 2023, Plaintiff Gerritsen submitted an application for a First Amendment Expressive Area Permit to Chavez, who after a conference in his Office located at 125 E. Paseo de la Plaza, in El Pueblo Park, declined to issue a permit to Plaintiff Gerritsen for him to distribute printed materials. As of the present day, no permit was granted to Plaintiff Gerritsen.

20. On September 12, 2023, a DOE Security Person in El Pueblo Park at the South Entrance to Olvera St., ordered Plaintiff Gerritsen to leave the Park. When Plaintiff Gerritsen refused, the DOE Security Person grabbed Plaintiff Gerritsen's handbills out of his left shirt pocket. The DOE Security Person then tried to take the handbills from Plaintiff Gerritsen's left hand resulting in a tug



JACK GERRITSEN
6217 ½ Palm Av.
Bell, CA., 90201
TEL.: (323) 383-4371

of war. When Plaintiff Gerritsen kicked the DOE Security Person, the DOE Security Person released his grip on the handbills.

21. On October 2, 2023, Plaintiff Ramey also submitted an application for a First Amendment Expressive Area Permit to Defendant Chavez by e-mail at arturo.chavez@lacity.org. Plaintiff Ramey has not received a response from Defendant Chavez.

22. In November-December 2024, Plaintiff Gerritsen also saw the City put up a Nativity display on the El Pueblo Park kiosko where Plaintiff Gerritsen, who does not believe in God, saw the display as well as a cross at the South entrance of Olvera Street, as endorsements of a religion in violation of the Free Establishment Clause of the First Amendment.

23. On February 22, 2025, Plaintiff Gerritsen also attempted to pass his stickers at El Pueblo Park again, and then to be stopped again by security guards, such as Mr. Marquez.

24. Also on August 31, 2025, Plaintiff Gerritsen also attempted to pass his stickers at El Pueblo Park again, and then to be stopped again by security guards.

25. Plaintiffs Gerritsen and Ramey also have standing under the case of *Planned Parenthood Great Northwest, Hawaii, Alaska, Indiana, Kentucky v. Labrador*, --- F.4th ----, No. 23-35518, at p. 19, 2024 WL 4966057, (9th Cir. 2024), in that any enforcement against them may result in the prosecution of either of them for misdemeanors or infractions by the City Attorney on behalf of the People of the State of California. To date, the City Attorney has not "… *disavow[ed]* enforcement of the law as weighing in favor of standing."

26. Here, there is nothing specific in the Answer of Defendant City of Los Angeles that states that the City in the City Attorney's power of prosecuting either Plaintiff for any misdemeanor or infraction related to exercising their First



JACK GERRITSEN
6217 ½ Palm Av.
Bell, CA., 90201
TEL.: (323) 383-4371

Amendment Rights would not be used. To see that this is the case, Plaintiffs request that Discovery be made to ascertain whether Defendant City would in deed prosecute.

27. What also makes this Complaint so pertinent is that the Government has been pressing more arrests of immigration detainees that has been more prompted by President Trump, and his glue-addicted Deputy Chief of Staff Stephen Miller. These arrests are done without probable cause, and solely due to racial profiling. Since Plaintiffs filed their claims with the City, President Trump has since called the National Guard and the Marines because he not man enough to handle dissent.

28. By reason of Defendants' conduct, Plaintiffs were deprived of rights, privileges, and immunities secured to them by the Constitution of the United States and the Constitution and laws of the State of California in that Plaintiffs were deprived of their liberty and their freedom from personal harm. Defendants' conduct violates the Fourth and Fifth Amendments, and the due process and equal protection clauses of the Fourteenth Amendment of the United States Constitution, and Article I, §14 of the California Constitution, and deprives said Plaintiffs of rights under color of State law.

29. On May 25, 2025, Plaintiff Gerritsen filed a Claim with Defendant City.

30. There has been no rejection of the Claim by Defendant City. Plaintiff Gerritsen therefore has two years from May 25, 2025, to file this Action against Defendants.

31. On May 25, 2025, Plaintiff Ramey filed a Claim with Defendant City.

32. There has been no rejection of the Claim by Defendant City. Plaintiff Ramey therefore has two years from May 25, 2025, to file this Action against Defendants.



JACK GERRITSEN
6217 ½ Palm Av.
Bell, CA., 90201
TEL.: (323) 383-4371

33. As a direct and proximate result of the wrongful acts of Defendants, Plaintiffs were damaged in an amount of $5,000,000. Plaintiffs have been almost totally deprived of their liberty and their freedom from personal harm, and has and will have suffered humiliation, anxiety, and emotional and physical distress as well as possible future personal injuries that will continue on into the future, unless this Court intervenes.

34. Said Plaintiffs further seek compensatory damages for the humiliation, anxiety, physical distress and injuries that he has suffered and could suffer as a direct result of Defendants' wrongful acts as described herein, plus attorney's fees and costs.

35. The above recited acts of the individual Defendants in conspiring to deprive Plaintiffs of their constitutionally protected rights were done with evil motive or intent, or with reckless or callous indifference to said Plaintiffs' rights. Plaintiffs therefore seek punitive, exemplary, and constitutional damages in an amount according to proof against the Defendants.

36. Plaintiff Gerritsen also seeks injunctive relief against Defendants from displaying any further religious exhibits at El Pueblo Park.

37. In fact, Plaintiffs request that this case be settled with Plaintiff Gerritsen be given $30,000, and that Plaintiff Ramey be given $5,000. This offer shall expire on December 31, 2025.

**II. SECOND CAUSE OF ACTION BROUGHT BY PLAINTIFFS AGAINST ALL DEFENDANTS FOR VIOLATION OF CIVIL CODE §51.7.**

38. Plaintiffs incorporate by this reference Paragraphs 1 through 37 of the Complaint as though they were set forth in full herein.

///



JACK GERRITSEN
6217 ½ Palm Av.
Bell, CA., 90201
TEL.: (323) 383-4371

39. At all times relevant hereto, California Civil Code §51, *et seq.,* was in full force an effect and binding upon defendants, its agents, representatives and employees as alleged herein. Section 51.7 thereof seeks to protect individuals from violence which is based on suspect, arbitrary classifications, including race, national origin, age, and disability, or which is based upon a person's perception that an individual has one or more of those characteristics. The intent of Section 51.7 is to protect all rights.

40. On May 14, 1993, in the case of *Gerritsen v. City of Los Angeles,* 994 F.2d 570 (9th Cir. 1993), the Ninth Circuit held that a permit scheme regulating the distribution of handbills was unconstitutional, because it failed to serve a legitimate government interest. The permit scheme designated areas of the Park to be open to and not to be open to handbill distribution.

41. The permit scheme also unconstitutionally required a permit from the Park General Manager to distribute handbills.

42. On August 24, 2019, Mr. Espinoza, the then-Park Manager, attempted to take Plaintiff Gerritsen's handbills from his left hand while Plaintiff Gerritsen was handing out his handbills in the Park. A Cypress Private Security Officer told Plaintiff Gerritsen to leave the Park.

43. In 2023, General Manager Arturo Chavez informed Plaintiff Gerritsen that the distribution of handbills required a permit from him, and was restricted to one area of the Park, and that Plaintiff Gerritsen would be provided a copy of the policy. Later, Edgar Garcia, the then-Assistant General Manager of the Park, provided a copy of the policy to Plaintiff Gerritsen. The policy was entitled, "City of Los Angeles El Pueblo de Los Angeles Historical Monument Authority Commission First Amendment Statement of Policy".



JACK GERRITSEN
6217 ½ Palm Av.
Bell, CA., 90201
TEL.: (323) 383-4371

44. Plaintiffs also attach a copy of the first page of the Policy, which is attached as Exhibit "A", and incorporated herein by reference.

45. The Policy limits and restricts handbill distribution to a small section of the Park designated as Father Serra Park, and requires that a permit be obtained by anyone wishing to distribute handbills from Chavez. Both restrictions are unconstitutional.

46. On August 17, 2023, Plaintiff Gerritsen requested "… both the map and permit application form" via e-mail to arturo.chavez@lacity.org.

47. On August 25, 2023, Plaintiff Gerritsen submitted an application for a First Amendment Expressive Area Permit to Chavez, who after a conference in his Office located at 125 E. Paseo de la Plaza, in El Pueblo Park, declined to issue a permit to Plaintiff Gerritsen for him to distribute printed materials. As of the present day, no permit was granted to Plaintiff Gerritsen.

48. On September 12, 2023, a DOE Security Person in El Pueblo Park at the South Entrance to Olvera St., ordered Plaintiff Gerritsen to leave the Park. When Plaintiff Gerritsen refused, the DOE Security Person grabbed Plaintiff Gerritsen's handbills out of his left shirt pocket. The DOE Security Person then tried to take the handbills from Plaintiff Gerritsen's left hand resulting in a tug of war. When Plaintiff Gerritsen kicked the DOE Security Person, the DOE Security Person released his grip on the handbills.

49. On October 2, 2023, Plaintiff Ramey also submitted an application for a First Amendment Expressive Area Permit to Chavez by e-mail at arturo.chavez@lacity.org. Plaintiff Ramey has not received a response from Defendant Chavez.

///



JACK GERRITSEN
6217 ½ Palm Av.
Bell, CA., 90201
TEL.: (323) 383-4371

50. In November-December 2024, Plaintiff Gerritsen also saw the City put up a Nativity display on the El Pueblo Park kiosko where Plaintiff Gerritsen, who does not believe in God, saw the display as well as a cross at the South entrance of Olvera Street, as endorsements of a religion in violation of the Free Establishment Clause of the First Amendment.

51. On February 22, 2025, Plaintiff Gerritsen also attempted to pass his stickers at El Pueblo Park again, and then to be stopped again by security guards, such as Mr. Marquez.

52. Also on August 31, 2025, Plaintiff Gerritsen also attempted to pass his stickers at El Pueblo Park again, and then to be stopped again by security guards.

53. What also makes this Complaint so pertinent is that the Government has been pressing more arrests of immigration detainees that has been more prompted by President Trump, and his glue-addicted Deputy Chief of Staff Stephen Miller. These arrests are done without probable cause, and solely due to racial profiling. Since Plaintiffs filed their claims with the City, President Trump has since called the National Guard and the Marines because he not man enough to handle dissent.

54. By reason of Defendants' conduct, Plaintiff was deprived of rights, privileges, and immunities secured to him by the Constitution of the United States and the Constitution and laws of the State of California in that Plaintiff was deprived of his liberty and his freedom from personal harm. Defendants' conduct violates the Fourth and Fifth Amendments, and the due process and equal protection clauses of the Fourteenth Amendment of the United States Constitution, and Article I, §14 of the California Constitution, and deprives said Plaintiff of rights under color of State law.

55. On May 25, 2025, Plaintiff Gerritsen filed a Claim with Defendant City.



JACK GERRITSEN
6217 ½ Palm Av.
Bell, CA., 90201
TEL.: (323) 383-4371

56. There has been no rejection of the Claim by Defendant City. Plaintiff Gerritsen therefore has two years from May 25, 2025, to file this Action against Defendants.

57. On May 25, 2025, Plaintiff Ramey filed a Claim with Defendant City.

58. There has been no rejection of the Claim by Defendant City. Plaintiff Ramey therefore has two years from May 25, 2025, to file this Action against Defendants.

59. Since at least February 22, 2025, Plaintiffs are White. Plaintiffs are informed and believe and thereon allege that Defendants, their employees, agents and representatives knew that Plaintiffs were exercising their First Amendment rights.

60. Plaintiffs are further informed and believe and thereon allege that the actions of Defendants, their agents, employees, agents and representatives were directly related to her status in exercising their First Amendment rights, in that Defendants, and each of them, intended to deprive Plaintiffs of the full and equal rights in violation of law.

61. Such conduct has denied and will continue to deny Plaintiffs equal protection and the civil rights guaranteed by Civil Code §51.7.

62. As the direct and proximate result of the actions of Defendants, their agents, employees, agents, and representatives, Plaintiffs have been caused to suffer severe and lasting physical and psychological injuries, medical expenses, loss of income, and the expense of hiring counsel and prosecuting this action, all at least $5,000,000.

63. Civil Code §52(b) sets forth the penalty to be imposed against individuals who engage in conduct against persons based on suspect, arbitrary classifications, including race, or who perpetrate in such violence based upon



JACK GERRITSEN
6217 ½ Palm Av.
Bell, CA., 90201
TEL.: (323) 383-4371

a perception that the individual possesses said characteristics as being actual damages suffered, plus an award of exemplary damages, a civil penalty of $25,000, plus attorney's fees.

64. In fact, Plaintiffs request that this case be settled with Plaintiff Gerritsen be given $30,000, and that Plaintiff Ramey be given $5,000. This offer shall expire on December 31, 2025.

**III. THIRD CAUSE OF ACTION BROUGHT BY PLAINTIFFS AGAINST ALL DEFENDANTS FOR VIOLATION OF CIVIL CODE §52.1.**

65. Plaintiffs incorporate by this reference Paragraphs 1 through 64 of the Complaint as though they were set forth in full herein.

66. At all times relevant hereto, California Civil Code §51, *et seq.,* was in full force an effect and binding upon defendants, its agents, representatives and employees as alleged herein. Section 52.1 thereof seeks to protect individuals from violence and to protect them in exercising their civil rights. The intent of Section 52.1 is to protect all rights.

67. On May 14, 1993, in the case of *Gerritsen v. City of Los Angeles,* 994 F.2d 570 (9th Cir. 1993), the Ninth Circuit held that a permit scheme regulating the distribution of handbills was unconstitutional, because it failed to serve a legitimate government interest. The permit scheme designated areas of the Park to be open to and not to be open to handbill distribution.

68. The permit scheme also unconstitutionally required a permit from the Park General Manager to distribute handbills.

69. On August 24, 2019, Mr. Espinoza, the then-Park Manager, attempted to take Plaintiff Gerritsen's handbills from his left hand while Plaintiff Gerritsen was handing out his handbills in the Park. A Cypress Private Security Officer told Plaintiff Gerritsen to leave the Park.



JACK GERRITSEN
6217 ½ Palm Av.
Bell, CA., 90201
TEL.: (323) 383-4371

70.In 2023, Chavez informed Plaintiff Gerritsen that the distribution of handbills required a permit from him, and was restricted to one area of the Park, and that Plaintiff Gerritsen would be provided a copy of the policy. Later, Edgar Garcia, the then-Assistant General Manager of the Park, provided a copy of the policy to Plaintiff Gerritsen. The policy was entitled, "City of Los Angeles El Pueblo de Los Angeles Historical Monument Authority Commission First Amendment Statement of Policy".

71.Plaintiffs also attach a copy of the first page of the Policy, which is attached as Exhibit "A", and incorporated herein by reference.

72.The Policy limits and restricts handbill distribution to a small section of the Park designated as Father Serra Park, and requires that a permit be obtained by anyone wishing to distribute handbills from Defendant Chavez. Both restrictions are unconstitutional.

73.On August 17, 2023, Plaintiff Gerritsen requested "… both the map and permit application form" via e-mail to arturo.chavez@lacity.org.

74. On August 25, 2023, Plaintiff Gerritsen submitted an application for a First Amendment Expressive Area Permit to Defendant Chavez, who after a conference in his Office located at 125 E. Paseo de la Plaza, in El Pueblo Park, declined to issue a permit to Plaintiff Gerritsen for him to distribute printed materials. As of the present day, no permit was granted to Plaintiff Gerritsen.

75.On September 12, 2023, a DOE Security Person in El Pueblo Park at the South Entrance to Olvera St., ordered Plaintiff Gerritsen to leave the Park. When Plaintiff Gerritsen refused, the DOE Security Person grabbed Plaintiff Gerritsen's handbills out of his left shirt pocket. The DOE Security Person then tried to take the handbills from Plaintiff Gerritsen's left hand resulting in a tug



JACK GERRITSEN
6217 ½ Palm Av.
Bell, CA., 90201
TEL.: (323) 383-4371

of war. When Plaintiff Gerritsen kicked the DOE Security Person, the DOE Security Person released his grip on the handbills.

76. On October 2, 2023, Plaintiff Ramey also submitted an application for a First Amendment Expressive Area Permit to Chavez by e-mail at arturo.chavez@lacity.org. Plaintiff Ramey has not received a response from Defendant Chavez.

77. In November-December 2024, Plaintiff Gerritsen also saw the City put up a Nativity display on the El Pueblo Park kiosko where Plaintiff Gerritsen, who does not believe in God, saw the display as well as a cross at the South entrance of Olvera Street, as endorsements of a religion in violation of the Free Establishment Clause of the First Amendment.

78. On February 22, 2025, Plaintiff Gerritsen also attempted to pass his stickers at El Pueblo Park again, and then to be stopped again by security guards, such as Mr. Marquez.

79. Also on August 31, 2025, Plaintiff Gerritsen also attempted to pass his stickers at El Pueblo Park again, and then to be stopped again by security guards.

80. What also makes this Complaint so pertinent is that the Government has been pressing more arrests of immigration detainees that has been more prompted by President Trump, and his glue-addicted Deputy Chief of Staff Stephen Miller. These arrests are done without probable cause, and solely due to racial profiling. Since Plaintiffs filed their claims with the City, President Trump has since called the National Guard and the Marines because he not man enough to handle dissent.

81. By reason of Defendants' conduct, Plaintiffs were deprived of rights, privileges, and immunities secured to him by the Constitution of the United States and the Constitution and laws of the State of California in that Plaintiff



JACK GERRITSEN
6217 ½ Palm Av.
Bell, CA., 90201
TEL.: (323) 383-4371

was deprived of his liberty and his freedom from personal harm. Defendants' conduct violates the Fourth and Fifth Amendments, and the due process and equal protection clauses of the Fourteenth Amendment of the United States Constitution, and Article I, §14 of the California Constitution, and deprives said Plaintiff of rights under color of State law.

82. On May 25, 2025, Plaintiff Gerritsen filed a Claim with Defendant City.

83. There has been no rejection of the Claim by Defendant City. Plaintiff Gerritsen therefore has two years from May 25, 2025, to file this Action against Defendants.

84. On May 25, 2025, Plaintiff Ramey filed a Claim with Defendant City.

85. There has been no rejection of the Claim by Defendant City. Plaintiff Ramey therefore has two years from May 25, 2025, to file this Action against Defendants.

86. Since at least February 22, 2025, Plaintiffs are White. Plaintiffs are informed and believes and thereon allege that Defendants, their employees, agents and representatives knew that Plaintiffs were exercising his First Amendment rights.

87. Plaintiffs are further informed and believe and thereon allege that the actions of Defendants, their agents, employees, agents and representatives were directly related to his status in exercising his First Amendment rights in that Defendants, and each of them, intended to deprive Plaintiffs of the full and equal rights in violation of law.

88. Such conduct has denied and will continue to deny Plaintiffs equal protection and the civil rights guaranteed by Civil Code §52.1.

///



JACK GERRITSEN
6217 ½ Palm Av.
Bell, CA., 90201
TEL.: (323) 383-4371

89. As the direct and proximate result of the actions of Defendants, their agents, employees, agents, and representatives, Plaintiffs have been caused to suffer severe and lasting physical and psychological injuries, medical expenses, loss of income, and the expense of hiring counsel and prosecuting this action, all at least $5,000,000.

90. Civil Code §52(b) sets forth the penalty to be imposed against individuals who engage in conduct against persons based on suspect, arbitrary classifications, including race, or who perpetrate in such violence based upon a perception that the individual possesses said characteristics as being actual damages suffered, plus an award of exemplary damages, a civil penalty of $25,000, plus attorney's fees.

91. In fact, Plaintiffs request that this case be settled with Plaintiff Gerritsen be given $30,000, and that Plaintiff Ramey be given $5,000. This offer shall expire on December 31, 2025.

WHEREFORE, Plaintiffs pray for:

1. For general damages in an amount according to proof, but at least $5,000,000;
2. For special damages in an amount according to proof;
3. For punitive damages in an amount according to proof;
4. For treble damages in an amount according to proof;
5. For interest as allowed by law;
6. For injunctive relief;
7. For declaratory relief;

///

///



JACK GERRITSEN
6217 ½ Palm Av.
Bell, CA., 90201
TEL.: (323) 383-4371

8. For reasonable attorney's fees incurred by Plaintiff, inter alia, under 42 United States Code §1988, Civil Code §52(b), Code of Civil Procedure §1021.5, and other applicable law;
9. That Plaintiffs be awarded their costs of suit herein; and
10. For such other and further relief as the court may deem just and proper.

Dated this 26th day of January, 2026

By: Jack Gerritsen

JACK GERRITSEN
6217 ½ Palm Av.
Bell, CA., 90201
TEL.: (323) 383-4371
Plaintiff in Pro Se.

Dated this 26th day of January, 2026

By: Henry F. Ramey, Jr.

HENRY FREDERICK RAMEY, JR.
7101 Rosecrans Av., #98
Paramount, CA., 90723
TEL.: (909) 678-9348
Plaintiff in Pro Se.

///
///
///
///
///
///
///
///



JACK GERRITSEN
6217 ½ Palm Av.
Bell, CA., 90201
TEL.: (323) 383-4371

## DEMAND FOR JURY TRIAL.

Plaintiffs hereby demand a Jury Trial pursuant to the Seventh Amendment of the United States Constitution and Federal Rule of Civil Procedure 38.

Dated this 26th day of January, 2026

By: *Jack Gerritsen*
JACK GERRITSEN
6217 ½ Palm Av.
Bell, CA., 90201
TEL.: (323) 383-4371
Plaintiff in Pro Se.

Dated this 26th day of January, 2026

By: *Henry F. Ramey, Jr.*
HENRY FREDERICK RAMEY, JR.
7101 Rosecrans Av., #98
Paramount, CA., 90723
TEL.: (909) 678-9348
Plaintiff in Pro Se.

## VERIFICATION.

I, Jack Gerritsen, declare that:

I am one of the Plaintiff in the above-entitled Complaint. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to matters therein stated on information and belief, and as to those matters, I believe it to be true.

Under the penalty of perjury, I declare that the foregoing is true and correct, and that this declaration was executed on January 26, 2026, at Bell, California.

*Jack Gerritsen*
JACK GERRITSEN,
Plaintiff.



JACK GERRITSEN
6217 ½ Palm Av.
Bell, CA., 90201
TEL.: (323) 383-4371

Rest In Power, Rodney King, 1965-2012
George Floyd, 1973-2020
Carl Reiner, 1922-2020
Rob Reiner, 1947-2025
Michelle Singer Reiner, 1955-2025
Renee Good, 1988-2026
Alex Pretti, 1988-2026



JACK GERRITSEN
6217 ½ Palm Av.
Bell, CA., 90201
TEL.: (323) 383-4371

El Pueblo de Los Angeles

# CITY OF LOS ANGELES
# EL PUEBLO DE LOS ANGELES HISTORICAL MONUMENT AUTHORITY COMMISSION

## FIRST AMENDMENT STATEMENT OF POLICY

El Pueblo de Los Angeles Historical Monument Authority Commission (Commission) has long recognized freedom of speech, press, religion and public assembly. However, the courts have held that certain activities associated with exercising these rights may be reasonably regulated to protect El Pueblo resources and the public's legitimate use of the El Pueblo's resources.

To protect El Pueblo's resources and the public's right to free speech, First Amendment expression activities at El Pueblo de Los Angeles Historical Monument will require a special use permit (First Amendment Expression Area Permit) in advance of the activity. There is no permitted use of the park after or before the park operating hours. In addition, the First Amendment Expression Area Permit may regulate the time, place and manner of the activity to protect El Pueblo resources in accordance with court and public law guidelines. Specific examples of first amendment activities requiring a special use permit include:

- Distribution of printed matter
- Political speeches
- Religious services
- Public assemblies
- Collecting signatures for petitions

The Commission has set aside special First Amendment zones for these activities, and a map will be furnished to those requesting in writing a copy, addressed to the General Manager at our mailing address: El Pueblo de Los Angeles Historical Monument, Suite 300, 125 Paseo de la Plaza, Los Angeles, California 90012.

**POLICY**

Public assemblies, meetings, gatherings, demonstrations, religious activities and other public expressions of views under the First Amendment of the U.S. Constitution, including the distribution of non-commercial printed matter, are allowed within sites, provided a permit therefore has been issued by the General Manager.

# PROOF OF SERVICE.

I, Henry Frederick Ramey, Jr., am a resident of the County of Los Angeles, State of California. I am over the age of 18 years, and I am not a party to this action. My address is 7101 Rosecrans Av., #98, Paramount, California.

On January 26, 2026, I served the foregoing copies of VERIFIED FIRST AMENDED COMPLAINT FOR VIOLATIONS OF CIVIL RIGHTS (42 U. S. C., §1983), AND VIOLATIONS OF CIVIL CODE §§51.7, AND 52.1 on the interested parties in this action by placing the following true copies, enclosed in a sealed envelope addressed as follows:

HYDEE FELDSTEIN SOTO, CITY ATTORNEY
DENISE C. MILLS, CHIEF DEPUTY CITY ATTORNEY
KATHLEEN A. KENEALY, CHIEF ASSISTANT CITY ATTORNEY
GABRIEL S. DERMER, ASSISTANT CITY ATTORNEY
CITY OF LOS ANGELES
200 N. MAIN ST., 6TH FLOOR
LOS ANGELES, CA., 90012
gabriel.dermer@lacity.org

On the above date, I delivered such papers via United States Post Office to the addressees at Paramount, California.

Under the penalty of perjury, I declare that the foregoing is true and correct, and that this declaration was executed on January 26, 2026, at Paramount, California.

Henry F. Ramey, Jr.
HENRY FREDERICK RAMEY, JR.,
Declarant.



JACK GERRITSEN
6217 ½ Palm Av.
Bell, CA., 90201
TEL.: (323) 383-4371

HYDEE FELDSTEIN SOTO, City Attorney
DENISE C. MILLS, Chief Deputy City Attorney (SBN 191992)
KATHLEEN A. KENEALY, Chief Assistant City Attorney (SBN 212289)
GABRIEL S. DERMER, Assistant City Attorney (SBN 229424)
200 North Main Street, City Hall East, 6th Floor
Los Angeles, CA 90012
Tel.: (213) 978-7558
Fax: (213) 978-7011
Email: gabriel.dermer@lacity.org
Attorneys for Defendant City of Los Angeles

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JACK GERRITSEN,<br>HENRY FREDERICK RAMEY, JR.,<br><br>Plaintiffs,<br>v.<br><br>CITY OF LOS ANGELES, DOMENIKA LYNCH and DOES 1-10,<br>Defendants. | **CASE NO.: 2:25-cv-08760-RGK-KS**<br><br>**ANSWER TO COMPLAINT (Dkt. 1)** |

COMES NOW Defendants CITY OF LOS ANGELES and DOMENIKA LYNCH in answering Plaintiffs' Complaint, for themselves and no others, admit, deny, and allege as follows:

1. In response to paragraphs 1 and 2, Defendants admit the allegations contained in said paragraphs.

2. In response to paragraphs 3, 4, 5, 6, 7 and 8, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in

said paragraphs, and on that basis deny each and every allegation contained in said paragraphs.

**First Cause of Action**

3. In response to paragraphs 9, 10, 11, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 27, 28, 29, 30, 32, 34 and 35, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraphs, and on that basis deny each and every allegation contained in said paragraphs.

4. In response to paragraphs 12 and 13, Defendants state the allegations in said paragraphs are conclusions of law that require no responsive pleading under the Federal Rules of Civil Procedure and are denied on that basis.

5. In response to paragraphs 26, 31 and 33 Defendants deny the allegations in said paragraphs.

**Second Cause of Action**

6. In response to paragraph 36, Defendants repeat, re-allege and incorporate by reference all of the admissions and denials set forth above.

7. In response to paragraphs 37, 38 and 61, Defendants state the allegations in said paragraphs are conclusions of law that require no responsive pleading under the Federal Rules of Civil Procedure and are denied on that basis.

8. In response to paragraphs 39, 52, 59, 60 Defendants deny the allegations in said paragraphs.

9. In response to paragraphs 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 53, 54, 55, 56, 57, 58, 62, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraphs, and on that basis deny each and every allegation contained in said paragraphs.

**Third Cause of Action**

10. In response to paragraph 63, Defendants repeat, re-allege and incorporate by reference all of the admissions and denials set forth above.

11. In response to paragraphs 64, 65 and 88, Defendants state the allegations in said paragraphs are conclusions of law that require no responsive pleading under the Federal Rules of Civil Procedure and are denied on that basis.

12. In response to paragraphs 67, 68, 69, 71, 72, 73, 74, 75, 76, 77, 78, 80, 81, 82, 83, 84, 85 and 89, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraphs, and on that basis deny each and every allegation contained in said paragraphs.

13. In response to paragraphs 66, 70, 79, 86, 87, Defendants deny the allegations in said paragraphs.

## DEFENDANTS' AFFIRMATIVE DEFENSES

Defendants assert the following affirmative defenses to the claims alleged in the Plaintiffs' Complaint:

### First Affirmative Defense

1. Plaintiffs' Complaint fails to state facts sufficient to constitute a cause of action upon which relief may be granted against Defendants.

### Second Affirmative Defense

2. Plaintiffs lack standing and/or capacity to bring this action.

### Third Affirmative Defense

3. Defendants are not liable for any injury or damages to Plaintiffs, if Plaintiffs suffered any such injury or damages, resulting from an exercise of discretion vested in a public employee, whether or not such discretion was abused. (Cal. Gov. Code §§ 815.2, 820.2.)

### Fourth Affirmative Defense

4. Insofar as the Defendants may have promulgated any rule or regulation or directive, such promulgation was done within the scope of discretion, in good faith, with due care, and with the intent that such rule or regulation or directive conforms in all respects to the laws of this State and the United States.

**Fifth Affirmative Defense**

5. There is no liability for any injury or damages, if any there were, resulting from acts done in good faith and without malice under the apparent authority of any enactment, even though said enactment be unconstitutional, invalid, or inapplicable. (Cal. Gov. Code §§ 815.2, 820.4, 820.6.)

**Sixth Affirmative Defense**

6. Defendants are not liable for any injury or damages to Plaintiffs, if Plaintiffs suffered any such injury or damages, by way of vicarious liability, respondeat superior, or otherwise, where the public employee whose conduct allegedly caused the injury or damage is not liable or is immune from liability. (Cal. Gov. Code § 815.2.)

**Seventh Affirmative Defense**

7. Defendants are not liable for any injury or damages, if there were any, resulting from failure to discharge any mandatory duties as reasonable diligence was exercised to discharge any duties there may have been. (Cal. Gov. Code § 815.6.)

**Eighth Affirmative Defense**

8. There is no liability for any injury or damages, if any there were, resulting from the execution or enforcement of any law while exercising due care. (Cal. Gov. Code §§ 815.2, 821.6.)

**Ninth Affirmative Defense**

9. Defendants reserve the right to assert additional defenses, if and to the extent that such defenses are applicable.

**DEMAND FOR JURY TRIAL**

Defendants hereby demand trial by jury.

///

///

///

Case: 26-3278, 08/17/2026, DktEntry: 12.1 (85 of 108)

WHEREFORE, Defendants pray for judgment as follows:

1. That Plaintiffs take nothing by way of their Complaint
2. That judgment be entered in favor of Defendants; and
3. Such other relief as the Court deems proper and just.

DATED: January 2, 2026

HYDEE FELDSTEIN SOTO, City Attorney
DENISE C. MILLS, Chief Deputy City Attorney
KATHLEEN A. KENEALY, Senior Asst. City Attorney
GABRIEL S. DERMER, Assistant City Attorney

By: /s/ Gabriel S. Dermer

Attorneys for Defendant
CITY OF LOS ANGELES

**PROOF OF SERVICE**
(Gerritsen and Ramey v. City of Los Angeles, et al.)
USDC No. 25-cv-08760-RGK (KS)

I, Gabriel S. Dermer, the undersigned, say: I am over the age of 18 years and not a party to the within action or proceeding. My business address is 200 North Main Street, City Hall East, 6th Floor, Los Angeles, California 90012.

On January 2, 2026, I served the foregoing documents described as: ANSWER TO COMPLAINT (Dkt. 1) on the interested parties:

Jack Gerritsen, In Pro Se
6217½ Palm Avenue
Bell, CA 90201
Tel: 323.383.4371
Email:jgerritsen1936@gmail.com

Henry Frederick Ramey, Jr., In Pro Se
7101 Rosecrans Avenue, #98
Paramount, CA 90723
Tel: 909.678.9348
Email: hanksanberdoo@gmail.com

[X] BY ELECTRONIC MAIL: I transmitted the document(s) to the addressee(s) via electronic mail to the addresses listed above.

I hereby certify that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: January 2, 2026

Gabriel S. Dermer

JACK GERRITSEN
6217 ½ Palm Av.
Bell, CA., 90201
TEL.: (323) 383-4371

HENRY FREDERICK RAMEY, JR.
7101 Rosecrans Av., #98
Paramount, CA., 90723
TEL.: (909) 678-9348

Plaintiffs in Pro Se.

FEE PAID

FILED
CLERK, U.S. DISTRICT COURT
09/04/2025
CENTRAL DISTRICT OF CALIFORNIA
BY GSA DEPUTY
DOCUMENT SUBMITTED THROUGH THE ELECTRONIC DOCUMENT SUBMISSION SYSTEM

I/S

**UNITED STATES DISTRICT COURT,**

**CENTRAL DISTRICT OF CALIFORNIA.**

| | |
|---|---|
| JACK GERRITSEN, HENRY FREDERICK RAMEY, JR.<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF LOS ANGELES, a chartered city, DOMENIKA LYNCH, as General Manager, El Pueblo Park, and, DOES 1-10, inclusive,<br><br>Defendants. | Case No.: 2:25-cv-08760-RGK-KS<br><br>VERIFIED COMPLAINT FOR VIOLATIONS OF CIVIL RIGHTS (42 U. S. C., §1983), AND VIOLATIONS OF CIVIL CODE §§51.7, AND 52.1.<br><br>(DEMAND FOR JURY TRIAL.) |

Plaintiffs allege:

1. Defendant City of Los Angeles (“City”), is a chartered city, duly created by the electors of the City, located in the County of Los Angeles, State of California.
2. Defendant Domenika Lynch, is the General Manager of El Pueblo Park, a public park operated by the City, located in the County of Los Angeles, State of California.

///

3. Plaintiff is informed and believes and based thereon alleges herein below Causes of Action for violation of 42 United States Code, §1983; violations of Civil Code §51.7; and violations of Civil Code §52.1.
4. Plaintiff Jack Gerritsen, was, and at all times herein mentioned is an individual, with his present principal place of residence located in the County of Los Angeles, State of California.
5. Plaintiff Henry Frederick Ramey, Jr., was, and at all times herein mentioned is an individual, with his present principal place of residence located in the County of Los Angeles, State of California.
6. The wrongs alleged herein are in the County of Los Angeles, State of California. Venue of this action is properly brought before this Court.
7. Plaintiffs are ignorant of the true names and capacities of Defendants sued in this Complaint as Does 1-10, inclusive, and therefore, Plaintiffs sue these Defendants by these fictitious names. Plaintiffs will amend this Complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe and allege on this information and belief that each of the fictitiously named Defendants is negligently responsible in some manner for the occurrences alleged in this Complaint, and that Plaintiffs' injuries as alleged in this Complaint were proximately caused by that negligence.
8. At all times mentioned in this Complaint each of said Defendants was the agent and employee of each of the remaining said Defendants, and in doing the things alleged in this Complaint, was acting within the course and scope of this agency and employment.

///
///
///



JACK GERRITSEN
6217 ½ Palm Av.
Bell, CA., 90201
TEL.: (323) 383-4371

**I. FIRST CAUSE OF ACTION BROUGHT BY PLAINTIFFS AGAINST ALL DEFENDANTS FOR VIOLATIONS OF 42 U.S.C., §1983.**

9. At all times hereinafter mentioned, each and all of the acts of the Defendant alleged herein were done by the Defendants under the color and pretense of the statutes, regulations, customs and usages of the State and under the authority of their offices as heretofore alleged herein.

10. Plaintiffs, who are White, was deprived of an interest protected by the Constitution and/or laws of the United States of America, and each and every Defendant caused, by commission or omission, such deprivation while acting under color of law.

11. All acts and/or omissions perpetrated by each Defendant were engaged in maliciously, callously, oppressively, wantonly, recklessly, with deliberate indifference to the rights already violated, despicably, with evil motive and/or intent, in disregard of the rights of the Plaintiffs.

12. On May 14, 1993, in the case of *Gerritsen v. City of Los Angeles,* 994 F.2d 570 (9th Cir. 1993), the Ninth Circuit held that a permit scheme regulating the distribution of handbills was unconstitutional, because it failed to serve a legitimate government interest. The permit scheme designated areas of the Park to be open to and not to be open to handbill distribution.

13. The permit scheme also unconstitutionally required a permit from the Park General Manager to distribute handbills.

14. On August 24, 2019, Mr. Espinoza, the then-Park Manager, attempted to take Plaintiff Gerritsen's handbills from his left hand while Plaintiff Gerritsen was handing out his handbills in the Park. A Cypress Private Security Officer told Plaintiff Gerritsen to leave the Park.



JACK GERRITSEN
6217 ½ Palm Av.
Bell, CA., 90201
TEL.: (323) 383-4371

15. In 2023, Arturo Chavez, the previous General Manager of El Pueblo Park, informed Plaintiff Gerritsen that the distribution of handbills required a permit from him, and was restricted to one area of the Park, and that Plaintiff Gerritsen would be provided a copy of the policy. Later, Edgar Garcia, the then-Assistant General Manager of the Park, provided a copy of the policy to Plaintiff Gerritsen. The policy was entitled, "City of Los Angeles El Pueblo de Los Angeles Historical Monument Authority Commission First Amendment Statement of Policy".

16. Plaintiffs also attach a copy of the first page of the Policy, which is attached as Exhibit "A", and incorporated herein by reference.

17. The Policy limits and restricts handbill distribution to a small section of the Park designated as Father Serra Park, and requires that a permit be obtained by anyone wishing to distribute handbills from Defendant Chavez. Both restrictions are unconstitutional.

18. On August 17, 2023, Plaintiff Gerritsen requested "… both the map and permit application form" via e-mail to arturo.chavez@lacity.org.

19. On August 25, 2023, Plaintiff Gerritsen submitted an application for a First Amendment Expressive Area Permit to Chavez, who after a conference in his Office located at 125 E. Paseo de la Plaza, in El Pueblo Park, declined to issue a permit to Plaintiff Gerritsen for him to distribute printed materials. As of the present day, no permit was granted to Plaintiff Gerritsen.

20. On September 12, 2023, a DOE Security Person in El Pueblo Park at the South Entrance to Olvera St., ordered Plaintiff Gerritsen to leave the Park. When Plaintiff Gerritsen refused, the DOE Security Person grabbed Plaintiff Gerritsen's handbills out of his left shirt pocket. The DOE Security Person then tried to take the handbills from Plaintiff Gerritsen's left hand resulting in a tug



JACK GERRITSEN
6217 ½ Palm Av.
Bell, CA., 90201
TEL.: (323) 383-4371

of war. When Plaintiff Gerritsen kicked the DOE Security Person, the DOE Security Person released his grip on the handbills.

21. On October 2, 2023, Plaintiff Ramey also submitted an application for a First Amendment Expressive Area Permit to Defendant Chavez by e-mail at arturo.chavez@lacity.org. Plaintiff Ramey has not received a response from Defendant Chavez.

22. In November-December 2024, Plaintiff Gerritsen also saw the City put up a Nativity display on the El Pueblo Park kiosko where Plaintiff Gerritsen, who does not believe in God, saw the display as well as a cross at the South entrance of Olvera Street, as endorsements of a religion in violation of the Free Establishment Clause of the First Amendment.

23. On February 22, 2025, Plaintiff Gerritsen also attempted to pass his stickers at El Pueblo Park again, and then to be stopped again by security guards, such as Mr. Marquez.

24. Also on August 31, 2025, Plaintiff Gerritsen also attempted to pass his stickers at El Pueblo Park again, and then to be stopped again by security guards.

25. What also makes this Complaint so pertinent is that the Government has been pressing more arrests of immigration detainees that has been more prompted by President Trump, and his glue-addicted Deputy Chief of Staff Stephen Miller. These arrests are done without probable cause, and solely due to racial profiling. Since Plaintiffs filed their claims with the City, President Trump has since called the National Guard and the Marines because he not man enough to handle dissent.

26. By reason of Defendants' conduct, Plaintiffs were deprived of rights, privileges, and immunities secured to them by the Constitution of the United States and the Constitution and laws of the State of California in that Plaintiffs



JACK GERRITSEN
6217 ½ Palm Av.
Bell, CA., 90201
TEL.: (323) 383-4371

were deprived of their liberty and their freedom from personal harm. Defendants' conduct violates the Fourth and Fifth Amendments, and the due process and equal protection clauses of the Fourteenth Amendment of the United States Constitution, and Article I, §14 of the California Constitution, and deprives said Plaintiffs of rights under color of State law.

27. On May 25, 2025, Plaintiff Gerritsen filed a Claim with Defendant City.

28. There has been no rejection of the Claim by Defendant City. Plaintiff Gerritsen therefore has two years from May 25, 2025, to file this Action against Defendants.

29. On May 25, 2025, Plaintiff Ramey filed a Claim with Defendant City.

30. There has been no rejection of the Claim by Defendant City. Plaintiff Ramey therefore has two years from May 25, 2025, to file this Action against Defendants.

31. As a direct and proximate result of the wrongful acts of Defendants, Plaintiffs were damaged in an amount of $5,000,000. Plaintiffs have been almost totally deprived of their liberty and their freedom from personal harm, and has and will have suffered humiliation, anxiety, and emotional and physical distress as well as possible future personal injuries that will continue on into the future, unless this Court intervenes.

32. Said Plaintiffs further seek compensatory damages for the humiliation, anxiety, physical distress and injuries that he has suffered and could suffer as a direct result of Defendants' wrongful acts as described herein, plus attorney's fees and costs.

33. The above recited acts of the individual Defendants in conspiring to deprive Plaintiffs of their constitutionally protected rights were done with evil motive or intent, or with reckless or callous indifference to said Plaintiffs' rights.



JACK GERRITSEN
6217 ½ Palm Av.
Bell, CA., 90201
TEL.: (323) 383-4371

Plaintiffs therefore seek punitive, exemplary, and constitutional damages in an amount according to proof against the Defendants.

34. Plaintiff Gerritsen also seeks injunctive relief against Defendants from displaying any further religious exhibits at El Pueblo Park.

35. In fact, Plaintiffs request that this case be settled with Plaintiff Gerritsen be given $30,000, and that Plaintiff Ramey be given $5,000. This offer shall expire on December 31, 2025.

**II. SECOND CAUSE OF ACTION BROUGHT BY PLAINTIFFS AGAINST ALL DEFENDANTS FOR VIOLATION OF CIVIL CODE §51.7.**

36. Plaintiffs incorporate by this reference Paragraphs 1 through 35 of the Complaint as though they were set forth in full herein.

37. At all times relevant hereto, California Civil Code §51, *et seq.,* was in full force an effect and binding upon defendants, its agents, representatives and employees as alleged herein. Section 51.7 thereof seeks to protect individuals from violence which is based on suspect, arbitrary classifications, including race, national origin, age, and disability, or which is based upon a person's perception that an individual has one or more of those characteristics. The intent of Section 51.7 is to protect all rights.

38. On May 14, 1993, in the case of *Gerritsen v. City of Los Angeles,* 994 F.2d 570 (9th Cir. 1993), the Ninth Circuit held that a permit scheme regulating the distribution of handbills was unconstitutional, because it failed to serve a legitimate government interest. The permit scheme designated areas of the Park to be open to and not to be open to handbill distribution.

39. The permit scheme also unconstitutionally required a permit from the Park General Manager to distribute handbills.

///



JACK GERRITSEN
6217 ½ Palm Av.
Bell, CA., 90201
TEL.: (323) 383-4371

40. On August 24, 2019, Mr. Espinoza, the then-Park Manager, attempted to take Plaintiff Gerritsen's handbills from his left hand while Plaintiff Gerritsen was handing out his handbills in the Park. A Cypress Private Security Officer told Plaintiff Gerritsen to leave the Park.

41. In 2023, General Manager Arturo Chavez informed Plaintiff Gerritsen that the distribution of handbills required a permit from him, and was restricted to one area of the Park, and that Plaintiff Gerritsen would be provided a copy of the policy. Later, Edgar Garcia, the then-Assistant General Manager of the Park, provided a copy of the policy to Plaintiff Gerritsen. The policy was entitled, "City of Los Angeles El Pueblo de Los Angeles Historical Monument Authority Commission First Amendment Statement of Policy".

42. Plaintiffs also attach a copy of the first page of the Policy, which is attached as Exhibit "A", and incorporated herein by reference.

43. The Policy limits and restricts handbill distribution to a small section of the Park designated as Father Serra Park, and requires that a permit be obtained by anyone wishing to distribute handbills from Chavez. Both restrictions are unconstitutional.

44. On August 17, 2023, Plaintiff Gerritsen requested "… both the map and permit application form" via e-mail to arturo.chavez@lacity.org.

45. On August 25, 2023, Plaintiff Gerritsen submitted an application for a First Amendment Expressive Area Permit to Chavez, who after a conference in his Office located at 125 E. Paseo de la Plaza, in El Pueblo Park, declined to issue a permit to Plaintiff Gerritsen for him to distribute printed materials. As of the present day, no permit was granted to Plaintiff Gerritsen.

///



JACK GERRITSEN
6217 ½ Palm Av.
Bell, CA., 90201
TEL.: (323) 383-4371

46.On September 12, 2023, a DOE Security Person in El Pueblo Park at the South Entrance to Olvera St., ordered Plaintiff Gerritsen to leave the Park. When Plaintiff Gerritsen refused, the DOE Security Person grabbed Plaintiff Gerritsen's handbills out of his left shirt pocket. The DOE Security Person then tried to take the handbills from Plaintiff Gerritsen's left hand resulting in a tug of war. When Plaintiff Gerritsen kicked the DOE Security Person, the DOE Security Person released his grip on the handbills.

47.On October 2, 2023, Plaintiff Ramey also submitted an application for a First Amendment Expressive Area Permit to Chavez by e-mail at arturo.chavez@lacity.org. Plaintiff Ramey has not received a response from Defendant Chavez.

48.In November-December 2024, Plaintiff Gerritsen also saw the City put up a Nativity display on the El Pueblo Park kiosko where Plaintiff Gerritsen, who does not believe in God, saw the display as well as a cross at the South entrance of Olvera Street, as endorsements of a religion in violation of the Free Establishment Clause of the First Amendment.

49.On February 22, 2025, Plaintiff Gerritsen also attempted to pass his stickers at El Pueblo Park again, and then to be stopped again by security guards, such as Mr. Marquez.

50.Also on August 31, 2025, Plaintiff Gerritsen also attempted to pass his stickers at El Pueblo Park again, and then to be stopped again by security guards.

51.What also makes this Complaint so pertinent is that the Government has been pressing more arrests of immigration detainees that has been more prompted by President Trump, and his glue-addicted Deputy Chief of Staff Stephen Miller. These arrests are done without probable cause, and solely due to racial profiling. Since Plaintiffs filed their claims with the City, President Trump has



JACK GERRITSEN
6217 ½ Palm Av.
Bell, CA., 90201
TEL.: (323) 383-4371

since called the National Guard and the Marines because he not man enough to handle dissent.

52. By reason of Defendants' conduct, Plaintiff was deprived of rights, privileges, and immunities secured to him by the Constitution of the United States and the Constitution and laws of the State of California in that Plaintiff was deprived of his liberty and his freedom from personal harm. Defendants' conduct violates the Fourth and Fifth Amendments, and the due process and equal protection clauses of the Fourteenth Amendment of the United States Constitution, and Article I, §14 of the California Constitution, and deprives said Plaintiff of rights under color of State law.

53. On May 25, 2025, Plaintiff Gerritsen filed a Claim with Defendant City.

54. There has been no rejection of the Claim by Defendant City. Plaintiff Gerritsen therefore has two years from May 25, 2025, to file this Action against Defendants.

55. On May 25, 2025, Plaintiff Ramey filed a Claim with Defendant City.

56. There has been no rejection of the Claim by Defendant City. Plaintiff Ramey therefore has two years from May 25, 2025, to file this Action against Defendants.

57. Since at least February 22, 2025, Plaintiffs are White. Plaintiffs are informed and believe and thereon allege that Defendants, their employees, agents and representatives knew that Plaintiffs were exercising their First Amendment rights.

58. Plaintiffs are further informed and believe and thereon allege that the actions of Defendants, their agents, employees, agents and representatives were directly related to her status in exercising their First Amendment rights,



JACK GERRITSEN
6217 ½ Palm Av.
Bell, CA., 90201
TEL.: (323) 383-4371

in that Defendants, and each of them, intended to deprive Plaintiffs of the full and equal rights in violation of law.

59. Such conduct has denied and will continue to deny Plaintiffs equal protection and the civil rights guaranteed by Civil Code §51.7.

60. As the direct and proximate result of the actions of Defendants, their agents, employees, agents, and representatives, Plaintiffs have been caused to suffer severe and lasting physical and psychological injuries, medical expenses, loss of income, and the expense of hiring counsel and prosecuting this action, all at least $5,000,000.

61. Civil Code §52(b) sets forth the penalty to be imposed against individuals who engage in conduct against persons based on suspect, arbitrary classifications, including race, or who perpetrate in such violence based upon a perception that the individual possesses said characteristics as being actual damages suffered, plus an award of exemplary damages, a civil penalty of $25,000, plus attorney's fees.

62. In fact, Plaintiffs request that this case be settled with Plaintiff Gerritsen be given $30,000, and that Plaintiff Ramey be given $5,000. This offer shall expire on December 31, 2025.

**III. THIRD CAUSE OF ACTION BROUGHT BY PLAINTIFFS AGAINST ALL DEFENDANTS FOR VIOLATION OF CIVIL CODE §52.1.**

63. Plaintiffs incorporate by this reference Paragraphs 1 through 62 of the Complaint as though they were set forth in full herein.

64. At all times relevant hereto, California Civil Code §51, *et seq.,* was in full force an effect and binding upon defendants, its agents, representatives and employees as alleged herein. Section 52.1 thereof seeks to protect individuals



JACK GERRITSEN
6217 ½ Palm Av.
Bell, CA., 90201
TEL.: (323) 383-4371

from violence and to protect them in exercising their civil rights. The intent of Section 52.1 is to protect all rights.

65. On May 14, 1993, in the case of *Gerritsen v. City of Los Angeles,* 994 F.2d 570 (9th Cir. 1993), the Ninth Circuit held that a permit scheme regulating the distribution of handbills was unconstitutional, because it failed to serve a legitimate government interest. The permit scheme designated areas of the Park to be open to and not to be open to handbill distribution.

66. The permit scheme also unconstitutionally required a permit from the Park General Manager to distribute handbills.

67. On August 24, 2019, Mr. Espinoza, the then-Park Manager, attempted to take Plaintiff Gerritsen's handbills from his left hand while Plaintiff Gerritsen was handing out his handbills in the Park. A Cypress Private Security Officer told Plaintiff Gerritsen to leave the Park.

68. In 2023, Chavez informed Plaintiff Gerritsen that the distribution of handbills required a permit from him, and was restricted to one area of the Park, and that Plaintiff Gerritsen would be provided a copy of the policy. Later, Edgar Garcia, the then-Assistant General Manager of the Park, provided a copy of the policy to Plaintiff Gerritsen. The policy was entitled, "City of Los Angeles El Pueblo de Los Angeles Historical Monument Authority Commission First Amendment Statement of Policy".

69. Plaintiffs also attach a copy of the first page of the Policy, which is attached as Exhibit "A", and incorporated herein by reference.

70. The Policy limits and restricts handbill distribution to a small section of the Park designated as Father Serra Park, and requires that a permit be obtained by anyone wishing to distribute handbills from Defendant Chavez. Both restrictions are unconstitutional.



JACK GERRITSEN
6217 ½ Palm Av.
Bell, CA., 90201
TEL.: (323) 383-4371

71. On August 17, 2023, Plaintiff Gerritsen requested "… both the map and permit application form" via e-mail to arturo.chavez@lacity.org.

72. On August 25, 2023, Plaintiff Gerritsen submitted an application for a First Amendment Expressive Area Permit to Defendant Chavez, who after a conference in his Office located at 125 E. Paseo de la Plaza, in El Pueblo Park, declined to issue a permit to Plaintiff Gerritsen for him to distribute printed materials. As of the present day, no permit was granted to Plaintiff Gerritsen.

73. On September 12, 2023, a DOE Security Person in El Pueblo Park at the South Entrance to Olvera St., ordered Plaintiff Gerritsen to leave the Park. When Plaintiff Gerritsen refused, the DOE Security Person grabbed Plaintiff Gerritsen's handbills out of his left shirt pocket. The DOE Security Person then tried to take the handbills from Plaintiff Gerritsen's left hand resulting in a tug of war. When Plaintiff Gerritsen kicked the DOE Security Person, the DOE Security Person released his grip on the handbills.

74. On October 2, 2023, Plaintiff Ramey also submitted an application for a First Amendment Expressive Area Permit to Chavez by e-mail at arturo.chavez@lacity.org. Plaintiff Ramey has not received a response from Defendant Chavez.

75. In November-December 2024, Plaintiff Gerritsen also saw the City put up a Nativity display on the El Pueblo Park kiosko where Plaintiff Gerritsen, who does not believe in God, saw the display as well as a cross at the South entrance of Olvera Street, as endorsements of a religion in violation of the Free Establishment Clause of the First Amendment.

76. On February 22, 2025, Plaintiff Gerritsen also attempted to pass his stickers at El Pueblo Park again, and then to be stopped again by security guards, such as Mr. Marquez.



JACK GERRITSEN
6217 ½ Palm Av.
Bell, CA., 90201
TEL.: (323) 383-4371

77. Also on August 31, 2025, Plaintiff Gerritsen also attempted to pass his stickers at El Pueblo Park again, and then to be stopped again by security guards.

78. What also makes this Complaint so pertinent is that the Government has been pressing more arrests of immigration detainees that has been more prompted by President Trump, and his glue-addicted Deputy Chief of Staff Stephen Miller. These arrests are done without probable cause, and solely due to racial profiling. Since Plaintiffs filed their claims with the City, President Trump has since called the National Guard and the Marines because he not man enough to handle dissent.

79. By reason of Defendants' conduct, Plaintiffs were deprived of rights, privileges, and immunities secured to him by the Constitution of the United States and the Constitution and laws of the State of California in that Plaintiff was deprived of his liberty and his freedom from personal harm. Defendants' conduct violates the Fourth and Fifth Amendments, and the due process and equal protection clauses of the Fourteenth Amendment of the United States Constitution, and Article I, §14 of the California Constitution, and deprives said Plaintiff of rights under color of State law.

80. On May 25, 2025, Plaintiff Gerritsen filed a Claim with Defendant City.

81. There has been no rejection of the Claim by Defendant City. Plaintiff Gerritsen therefore has two years from May 25, 2025, to file this Action against Defendants.

82. On May 25, 2025, Plaintiff Ramey filed a Claim with Defendant City.

83. There has been no rejection of the Claim by Defendant City. Plaintiff Ramey therefore has two years from May 25, 2025, to file this Action against Defendants.



JACK GERRITSEN
6217 ½ Palm Av.
Bell, CA., 90201
TEL.: (323) 383-4371

84. Since at least February 22, 2025, Plaintiffs are White. Plaintiffs are informed and believes and thereon allege that Defendants, their employees, agents and representatives knew that Plaintiffs were exercising his First Amendment rights.

85. Plaintiffs are further informed and believe and thereon allege that the actions of Defendants, their agents, employees, agents and representatives were directly related to his status in exercising his First Amendment rights in that Defendants, and each of them, intended to deprive Plaintiffs of the full and equal rights in violation of law.

86. Such conduct has denied and will continue to deny Plaintiffs equal protection and the civil rights guaranteed by Civil Code §52.1.

87. As the direct and proximate result of the actions of Defendants, their agents, employees, agents, and representatives, Plaintiffs have been caused to suffer severe and lasting physical and psychological injuries, medical expenses, loss of income, and the expense of hiring counsel and prosecuting this action, all at least $5,000,000.

88. Civil Code §52(b) sets forth the penalty to be imposed against individuals who engage in conduct against persons based on suspect, arbitrary classifications, including race, or who perpetrate in such violence based upon a perception that the individual possesses said characteristics as being actual damages suffered, plus an award of exemplary damages, a civil penalty of $25,000, plus attorney's fees.

89. In fact, Plaintiffs request that this case be settled with Plaintiff Gerritsen be given $30,000, and that Plaintiff Ramey be given $5,000. This offer shall expire on December 31, 2025.

WHEREFORE, Plaintiffs pray for:



JACK GERRITSEN
6217 ½ Palm Av.
Bell, CA., 90201
TEL.: (323) 383-4371

1. For general damages in an amount according to proof, but at least $5,000,000;
2. For special damages in an amount according to proof;
3. For punitive damages in an amount according to proof;
4. For treble damages in an amount according to proof;
5. For interest as allowed by law;
6. For injunctive relief;
7. For reasonable attorney's fees incurred by Plaintiff, inter alia, under 42 United States Code §1988, Civil Code §52(b), Code of Civil Procedure §1021.5, and other applicable law;
8. That Plaintiffs be awarded their costs of suit herein; and
9. For such other and further relief as the court may deem just and proper.

Dated this 2nd day of September, 2025

By: *Jack Gerritsen*
JACK GERRITSEN
6217 ½ Palm Av.
Bell, CA., 90201
TEL.: (323) 383-4371
Plaintiff in Pro Se.

Dated this 2nd day of September, 2025

By: *Henry F. Ramey, Jr.*
HENRY FREDERICK RAMEY, JR.
7101 Rosecrans Av., #98
Paramount, CA., 90723
TEL.: (909) 678-9348
Plaintiff in Pro Se.

///
///
///

## DEMAND FOR JURY TRIAL.

Plaintiffs hereby demand a Jury Trial pursuant to the Seventh Amendment of the United States Constitution and Federal Rule of Civil Procedure 38.

Dated this 2nd day of September, 2025

By: Jack Gerritsen
JACK GERRITSEN
6217 ½ Palm Av.
Bell, CA., 90201
TEL.: (323) 383-4371
Plaintiff in Pro Se.

Dated this 2nd day of September, 2025

By: Henry F. Ramey, Jr.
HENRY FREDERICK RAMEY, JR.
7101 Rosecrans Av., #98
Paramount, CA., 90723
TEL.: (909) 678-9348
Plaintiff in Pro Se.

## VERIFICATION.

I, Jack Gerritsen, declare that:

I am one of the Plaintiff in the above-entitled Complaint. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to matters therein stated on information and belief, and as to those matters, I believe it to be true.

Under the penalty of perjury, I declare that the foregoing is true and correct, and that this declaration was executed on September 2, 2025, at Bell, California.

Jack Gerritsen
JACK GERRITSEN,
Plaintiff.



JACK GERRITSEN
6217 ½ Palm Av.
Bell, CA., 90201
TEL.: (323) 383-4371

Case: 26-3278, 03/17/2026, DktEntry: 10.1, Page 104 of 108

El Pueblo de Los Angeles

# CITY OF LOS ANGELES
# EL PUEBLO DE LOS ANGELES HISTORICAL MONUMENT AUTHORITY COMMISSION

## FIRST AMENDMENT STATEMENT OF POLICY

El Pueblo de Los Angeles Historical Monument Authority Commission (Commission) has long recognized freedom of speech, press, religion and public assembly. However, the courts have held that certain activities associated with exercising these rights may be reasonably regulated to protect El Pueblo resources and the public's legitimate use of the El Pueblo's resources.

To protect El Pueblo's resources and the public's right to free speech, First Amendment expression activities at El Pueblo de Los Angeles Historical Monument will require a special use permit (First Amendment Expression Area Permit) in advance of the activity. There is no permitted use of the park after or before the park operating hours. In addition, the First Amendment Expression Area Permit may regulate the time, place and manner of the activity to protect El Pueblo resources in accordance with court and public law guidelines. Specific examples of first amendment activities requiring a special use permit include:

- Distribution of printed matter
- Political speeches
- Religious services
- Public assemblies
- Collecting signatures for petitions

The Commission has set aside special First Amendment zones for these activities, and a map will be furnished to those requesting in writing a copy, addressed to the General Manager at our mailing address: El Pueblo de Los Angeles Historical Monument, Suite 300, 125 Paseo de la Plaza, Los Angeles, California 90012.

**POLICY**

Public assemblies, meetings, gatherings, demonstrations, religious activities and other public expressions of views under the First Amendment of the U.S. Constitution, including the distribution of non-commercial printed matter, are allowed within sites, provided a permit therefore has been issued by the General Manager.

194,APPEAL,RELATED-DDJ

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA (Western Division - Los Angeles)
# CIVIL DOCKET FOR CASE #: 2:25-cv-08760-RGK-KS

Jack Gerritsen et al v. City of Los Angeles et al
Assigned to: Judge R. Gary Klausner
Referred to: Magistrate Judge Karen L. Stevenson
Related Case: 2:22-cv-06052-RGK-KS
Case in other court: 9th CCA, 26-03278
Cause: 28:1983 Civil Rights

Date Filed: 09/04/2025
Jury Demand: Both
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

**Plaintiff**

**Jack Gerritsen** represented by **Jack Gerritsen**
6217 1-2 Palm Avenue
Bell, CA 90201
323-383-4371
PRO SE

**Plaintiff**

**Henry Frederick Ramey, Jr.** represented by **Henry Frederick Ramey, Jr.**
7101 Rosecrans Avenue, Apt. 98
Paramount, CA 90723
909-678-9348
PRO SE

V.

**Defendant**

**City of Los Angeles**
*a chartered city*
represented by **Emerson Kim**
Los Angeles City Attorney's Office
200 N. Main Street, City Hall East, 6th Floor, Room 675
Los Angeles, CA 90012
213-526-7336
Fax: 213-978-7011
Email: emerson.kim@lacity.org
*ATTORNEY TO BE NOTICED*

**Gabriel Seth Dermer**
Los Angeles City Attorney
200 North Main Street, Room 675
Los Angeles, CA 90012
213-978-7558
Email: gabriel.dermer@lacity.org
*ATTORNEY TO BE NOTICED*

**Defendant**

**Domenika Lynch**
*as General Manager, El Pueblo Park*
represented by **Emerson Kim**
(See above for address)

*ATTORNEY TO BE NOTICED*

**Gabriel Seth Dermer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Does**
*1 through 10, inclusive*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/04/2025 | 1 | COMPLAINT filed against Defendants City of Los Angeles, Does, Domenika Lynch Case assigned to Judge R. Gary Klausner and referred to Magistrate Judge Karen L. Stevenson. (Filing fee $405. FEE PAID), filed by Plaintiffs Jack Gerritsen, Henry Frederick Ramey, Jr. (Attachments: # 1 Civil Cover Sheet) (mza) (Entered: 09/18/2025) |
| 09/04/2025 | 3 | Certification and Notice of Interested Parties filed by Plaintiff Jack Gerritsen, Henry Frederick Ramey, Jr. (mza) (Entered: 09/18/2025) |
| 09/15/2025 | 2 | 21 DAY Summons Issued re Complaint - (Referred) 1 as to Defendants City of Los Angeles, Domenika Lynch. (Attachments: # 1 Summons for City of Los Angeles)(mza) (Entered: 09/18/2025) |
| 09/18/2025 | 4 | NOTICE OF ASSIGNMENT to District Judge R. Gary Klausner and referred to Magistrate Judge Karen L. Stevenson. (mza) (Entered: 09/18/2025) |
| 09/23/2025 | 5 | INITIAL ORDER IN CIVIL RIGHTS CASES by Magistrate Judge Karen L. Stevenson (SEE DOCUMENT FOR DETAILS) (sh) (Entered: 09/24/2025) |
| 12/02/2025 | 6 | STIPULATION Extending Time to Answer the complaint as to Domenika Lynch answer now due 1/2/2026; City of Los Angeles answer now due 1/2/2026, re Complaint - (Referred), 1 filed by Defendants Domenika Lynch; City of Los Angeles.(Attorney Gabriel Seth Dermer added to party City of Los Angeles(pty:dft), Attorney Gabriel Seth Dermer added to party Domenika Lynch(pty:dft))(Dermer, Gabriel) (Entered: 12/02/2025) |
| 01/02/2026 | 7 | ANSWER to Complaint - (Referred), 1 with JURY DEMAND filed by Defendants City of Los Angeles, Domenika Lynch.(Dermer, Gabriel) (Entered: 01/02/2026) |
| 01/02/2026 | 8 | Certification and Notice of Interested Parties filed by Defendants City of Los Angeles, Domenika Lynch, (Dermer, Gabriel) (Entered: 01/02/2026) |
| 01/05/2026 | 9 | CASE MANAGEMENT AND SCHEDULING ORDER IN CIVIL RIGHTS CASES by Magistrate Judge Karen L. Stevenson. (SEE DOCUMENT FOR DETAILS AND DEADLINES). (hr) (Entered: 01/06/2026) |
| 01/26/2026 | 10 | FIRST AMENDED COMPLAINT against Defendants City of Los Angeles, Does, Domenika Lynch, amending Complaint 1 , filed by Plaintiffs Jack Gerritsen, Henry Frederick Ramey, Jr.(hr) (Entered: 02/04/2026) |
| 02/10/2026 | 11 | (STRICKEN PER ORDER 12 ) - NOTICE OF MOTION AND MOTION for Preliminary Injunction filed by Plaintiff Jack Gerritsen, Henry Frederick Ramey, Jr. Motion set for hearing on 3/18/2026 at 10:00 AM before Magistrate Judge Karen L. Stevenson. (Attachments: # 1 Proposed Order) (hr) Modified on 2/13/2026 (jre). (Entered: 02/12/2026) |
| 02/13/2026 | 12 | ORDER by Judge R. Gary Klausner re NOTICE OF MOTION AND MOTION for Preliminary Injunction 11 . The following document(s) be STRICKEN for failure to comply with the Local Rules, General Order and/or the Courts Case Management Order for the |

| | | |
|---|---|---|
| | | following reason(s): Other error(s) with document(s): Memorandum lacks meet and confer certification in violation of L.R. 7-3. (jre) (Entered: 02/13/2026) |
| 02/17/2026 | 13 | NOTICE OF MOTION FOR PRELIMINARY INJUNCTION, MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF AND DECLARATION OF JACK GERRITSEN filed by Plaintiffs Jack Gerritsen, Henry Frederick Ramey, Jr. Motion set for hearing on 4/1/2026 at 10:00 AM before Magistrate Judge Karen L. Stevenson. (san) (Entered: 02/23/2026) |
| 02/26/2026 | 14 | SCHEDULING NOTICE TO ALL PARTIES AND ORDER (IN CHAMBERS) by Judge R. Gary Klausner: The MOTION for Preliminary Injunction 13 is reset to be heard before Judge R. Gary Klausner on 4/6/2026 at 9:00 AM. Opposition is due on or before 3/16/2023. Any reply due on or before 3/23/2026. SO ORDERED.THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (jre) TEXT ONLY ENTRY (Entered: 02/26/2026) |
| 03/02/2026 | 15 | Notice of Appearance or Withdrawal of Counsel: for attorney Emerson Kim counsel for Defendants City of Los Angeles, Domenika Lynch. Adding Emerson H. Kim as counsel of record for Defendants for the reason indicated in the G-123 Notice. Filed by Defendant City of Los Angeles. (Attorney Emerson Kim added to party City of Los Angeles(pty:dft), Attorney Emerson Kim added to party Domenika Lynch(pty:dft))(Kim, Emerson) (Entered: 03/02/2026) |
| 03/16/2026 | 16 | (STRICKEN PER ORDER 18 ) - OPPOSITION to NOTICE OF MOTION AND MOTION for Preliminary Injunction re NOTICE OF MOTION FOR PRELIMINARY INJUNCTION. MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF AND DECLARATION OF JACK GERRITSEN 13 filed by Defendants City of Los Angeles, Domenika Lynch. (Kim, Emerson) Modified on 3/17/2026 (jre). (Entered: 03/16/2026) |
| 03/16/2026 | 17 | PROOF OF SERVICE filed by Defendants City of Los Angeles, Domenika Lynch, re Response in Opposition to Motion, 16 *OPPOSITION to NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION* served on 03/16/26. (Kim, Emerson) (Entered: 03/16/2026) |
| 03/17/2026 | 18 | ORDER by Judge R. Gary Klausner re Response in Opposition to Motion, 16 . The following document(s) be STRICKEN for failure to comply with the Local Rules, General Order and/or the Courts Case Management Order for the following reason(s): Other error(s) with document(s): Memorandum lacks a word count certficiation in violation of L.R. 11-6.2. Counsel shall file a corrected motion within 1 day of the entry of this order. (jre) (Entered: 03/17/2026) |
| 03/17/2026 | 20 | REPLY TO OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION, MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF AND SUPPLEMENTAL DECLARATION OF JACK GERRITSEN, re MOTION FOR PRELIMINARY INJUNCTION 13 filed by Plaintiff Jack Gerritsen. (hr) (Entered: 03/18/2026) |
| 03/18/2026 | 19 | OPPOSITION to NOTICE OF MOTION AND MOTION for Preliminary Injunction re NOTICE OF MOTION FOR PRELIMINARY INJUNCTION. MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF AND DECLARATION OF JACK GERRITSEN 13 filed by Defendants City of Los Angeles, Domenika Lynch. (Kim, Emerson) (Entered: 03/18/2026) |
| 03/23/2026 | 21 | SECOND SUPPLEMENTAL DECLARATION IN REPLY TO OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION 13 filed by Plaintiffs Jack Gerritsen, Henry Frederick Ramey, Jr. (san) (Entered: 03/30/2026) |
| 04/02/2026 | 22 | SCHEDULING NOTICE TO ALL PARTIES AND ORDER (IN CHAMBERS) by Judge R. Gary Klausner: Plaintiff's Motion for Preliminary Injunction 13 , calendared for hearing |

| | | |
|---|---|---|
| | | before Judge R. Gary Klausner on 4/6/2026, has been taken under submission and off the motion calendar. No appearances by counsel are necessary. The Court will issue a ruling after full consideration of properly submitted pleadings. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (jre) TEXT ONLY ENTRY (Entered: 04/02/2026) |
| 05/05/2026 | 23 | JOINT STATUS REPORT AS REQUIRED ER CASE MANAGEMENT AND SCHEDULING ORDER IN CIVIL RIGHTS CASES 9 filed by Plaintiffs Jack Gerritsen, Henry Frederick Ramey, Jr. (lc) Modified on 5/11/2026 (lc). (Entered: 05/11/2026) |
| 05/14/2026 | 24 | IN CHAMBERS ORDER by Judge R. Gary Klausner: ORDER RE PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION 13 . On February 17, 2026, Plaintiffs filed the instant Motion for Preliminary Injunction, seeking to prevent the City from maintaining the two separate religious displays. As such, the Motion is limited to Plaintiffs ' Establishment Clause claims. The Court DENIES Plaintiffs' Motion for Preliinina1y Injunction (SEE DOCUMENT FOR ALL THE SPECIFIC REASONS AS DISCUSSED HEREIN). (lc) (Entered: 05/14/2026) |
| 05/18/2026 | 26 | NOTICE OF APPEAL to the 9th CCA filed by Plaintiff Jack Gerritsen. Appeal of Order on Motion for Preliminary Injunction, 24 Filed On: 5/14/2026; Entered On: 5/14/2026; Filing fee $605, receipt number 44339. (iv) (Entered: 05/20/2026) |
| 05/20/2026 | 25 | FINANCIAL ENTRY: Received $605.00 from Henry Frederick Ramey, Jr.. Receipt number 44339. (asp) (Entered: 05/20/2026) |
| 05/21/2026 | 27 | NOTIFICATION from Ninth Circuit Court of Appeals of case number assigned and briefing schedule. Appeal Docket No. 26-3278 assigned to Notice of Appeal to 9th Circuit Court of Appeals 26 as to Plaintiff Jack Gerritsen. (iv) (Entered: 05/21/2026) |



| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 08/13/2026 15:50:44 | | | |
| **PACER Login:** | edwardhanUSA | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 2:25-cv-08760-RGK-KS End date: 8/13/2026 |
| **Billable Pages:** | 4 | **Cost:** | 0.40 |