26-3278

**IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT**

JACK GERRITSEN,

*Plaintiff-Appellant*,

HENRY FREDERICK RAMEY, JR.,

*Plaintiff,*

*v.*

CITY OF LOS ANGELES, a chartered city, and DOMENIKA LYNCH, as General Manager, El Pueblo Park,

*Defendants-Appellees*.

On Appeal from the United States District Court for the Central District of California, No. 2:25-cv-8760-RGK
Hon. R. Gary Klausner, District Judge

# MOTION TO INTERVENE AS DEFENDANT-APPELLEE OR IN THE ALTERNATIVE TO PARTICIPATE AS AMICUS ON BEHALF OF OLVERA STREET MERCHANTS ASSOCIATION FOUNDATION

Andrea R. Butler
*Counsel of Record*
Eric S. Baxter
Daniel L. Chen
Colten L. Stanberry
Richard C. Osborne
The Becket Fund for Religious Liberty
1919 Pennsylvania Ave. NW
Suite 400
Washington, DC 20006
(202) 955-0095
*abutler@becketfund.org*

*Counsel for Proposed Intervenor-Defendant*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Proposed Intervenor-Defendant Olvera Street Merchants Association Foundation states that it does not have a parent corporation and does not issue any stock.

/s/ *Andrea R. Butler*
Andrea R. Butler

## TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT .......... ii

TABLE OF AUTHORITIES .......... v

INTRODUCTION .......... 1

BACKGROUND .......... 2

A. El Pueblo de Los Angeles and the Olvera Street Merchants .......... 2

B. Procedural Background .......... 6

LEGAL STANDARD .......... 7

ARGUMENT .......... 8

I. The Merchants are entitled to intervene as of right. .......... 8

A. The Merchants have a significant protectable interest in the historical and cultural preservation of Olvera Street. .......... 8

B. The disposition of this appeal may practically impair the Merchants' ability to protect their interest. .......... 13

C. The motion to intervene is timely .......... 14

D. The existing parties may not adequately represent the Merchants' interests. .......... 16

II. Alternatively, this Court should grant the Merchants permissive intervention. .......... 18

III. At the very least, the Court should allow the Merchants to file an amicus brief and participate in oral argument. .......... 20

CONCLUSION .......... 22

CERTIFICATE OF COMPLIANCE........................................................23

CERTIFICATE OF SERVICE...............................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Legion v. Am. Humanist Ass'n*,
588 U.S. 29 (2019) .......... 7, 13

*Bates v. Jones*,
127 F.3d 870 (9th Cir. 1997) .......... 7

*Brown v. Google LLC*,
172 F.4th 1128 (9th Cir. 2026) .......... 16

*California ex rel. Lockyer v. United States*,
450 F.3d 436 (9th Cir. 2006) .......... 11, 14

*Californians for Safe & Competitive Dump Truck Transp. v. Mendonca*,
152 F.3d 1184 (9th Cir. 1998) .......... 17

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*,
647 F.3d 893 (9th Cir. 2011) .......... 8, 9, 11-12, 14, 16

*County of San Bernardino v. United States*,
No. 06-1179, 2007 WL 9747746 (C.D. Cal. Oct. 23, 2007) .......... 12

*Davies v. L.A. Cnty. Bd. of Supervisors*,
177 F. Supp. 3d 1194 (C.D. Cal. 2016) .......... 17

*Day v. Apoliona*,
505 F.3d 963 (9th Cir. 2007) .......... 14, 15

*Forest Conservation Council v. U.S. Forest Serv.*,
66 F.3d 1489 (9th Cir. 1995) .......... 17

*Freedom From Religion Found. v. County of Lehigh*,
933 F.3d 275 (3d Cir. 2019) .......... 22

*Freedom From Religion Found. v. Geithner*,
644 F.3d 836 (9th Cir. 2011) .......... 8

*Freedom From Religion Found. v. Weber*,
628 F. App'x 952 (9th Cir. 2015) .......... 21-22

*Hansen v. Kempthorne*,
No. 08-cv-717, 2009 WL 10725425
(W.D. Wash. Apr. 21, 2009) .......... 20

*Kalbers v. DOJ*,
22 F.4th 816 (9th Cir. 2021) .......... 15, 16, 19

*Kondrat'yev v. City of Pensacola*,
949 F.3d 1319 (11th Cir. 2020) .......... 22

*Low v. Altus Fin. S.A.*,
44 F. App'x 282 (9th Cir. 2002) .......... 16

*Miller-Wohl Co. v. Comm'r of Lab. & Indus.*,
694 F.2d 203 (9th Cir. 1982) .......... 20

*Miracle v. Hobbs*,
333 F.R.D. 151 (D. Ariz. 2019) .......... 20

*Newdow v. Rio Linda Union Sch. Dist.*,
597 F.3d 1007 (9th Cir. 2010) .......... 22

*Nw. Forest Res. Council v. Glickman*,
82 F.3d 825 (9th Cir. 1996) .......... 20

*Perry v. Proposition 8 Off. Proponents*,
587 F.3d 947 (9th Cir. 2009) .......... 20

*Peruta v. County of San Diego*,
824 F.3d 919 (9th Cir. 2016) .......... 7, 15

*Smith v. L.A. Unified Sch. Dist.*,
830 F.3d 843 (9th Cir. 2016) .......... 19

*Students for Fair Admissions v. President & Fellows of Harvard Coll.*,
807 F.3d 472 (1st Cir. 2015) .......... 20

*Sw. Ctr. for Biological Diversity v. Berg*,
268 F.3d 810 (9th Cir. 2001) .......... 14, 17, 18

*United States v. Alisal Water Corp.*,
370 F.3d 915 (9th Cir. 2004) .......... 13

*United States v. City of Los Angeles*,
288 F.3d 391 (9th Cir. 2002) .......... 19

*Utah Ass'n of Cntys. v. Clinton*,
255 F.3d 1246 (10th Cir. 2001) .......... 13

*Wilderness Soc'y v. U.S. Forest Serv.*,
630 F.3d 1173 (9th Cir. 2011) .......... 9, 10

**Statutes and Rules**

54 U.S.C. § 300101 .......... 8, 10, 12

54 U.S.C. § 302102 .......... 10

Cal. Pub. Res. Code § 5038 .......... 12, 13

Fed. R. Civ. P. 24 .......... 19

**Other Authorities**

*About*, Olvera Street Merchants Ass'n Foundation .......... 5

*About Us*, El Pueblo de Los Angeles .......... 2, 3

*History of El Pueblo*, El Pueblo de Los Angeles .......... 3, 4, 6

*Los Angeles Plaza Historic District National Register of Historic Places Nomination Form*,
Nat'l Archives Catalog (1972) .......... 10, 11

*Olvera Street Cross*,
The Hist. Marker Database ........................................................ 4, 11

*Olvera Street Cross*, The Huntington Digit. Libr. .................................... 4

Jean Bruce Poole & Tevvy Ball, *El Pueblo:*
*The Historic Heart of Los Angeles* (2002) .................................. 2-3, 4, 6

## INTRODUCTION

El Pueblo de Los Angeles is the historic heart of the City of Los Angeles. Near the site of the City's first settlement dating back to the 18th-century, the El Pueblo Historical Monument preserves the City's important historical and cultural heritage by protecting landmarks and celebrating the contributions of many of the City's diverse cultural groups, most prominently Mexican-Americans. The Olvera Street market and cultural celebrations throughout the year connect millions of visitors each year to El Pueblo's historic past and vibrant ongoing traditions.

Since El Pueblo's revitalization in the 1920s, the Olvera Street merchants have played a vital role in conserving and promoting the area—and in drawing visitors to enjoy the City's most historic district. In 2005, merchants whose families have owned businesses on Olvera Street since 1930 banded together to form Intervenor Olvera Street Merchants Association Foundation, an organization specifically dedicated to preserving and promoting El Pueblo's unique history and culture. The Merchants put on El Pueblo's most important cultural events, such as Día de los Muertos every October and Las Posadas every December.

Plaintiff Jack Gerritsen has sued the City claiming that two displays in El Pueblo—a hand-carved wooden cross originally erected in 1929 and the nativity traditionally displayed in the Old Plaza every Christmas sea-

son—violate the Establishment Clause. Because the Merchants are committed to preserving the culture and traditions of El Pueblo, they seek to intervene in this appeal to defend the constitutionality of these displays.

As a party with a significant and legally protected interest in preserving the historic and cultural heritage of El Pueblo—in which the Merchants themselves play a critical role by stewarding the century-old traditions of Olvera Street—the Merchants seek to intervene as of right under Rule 24(a) of the Federal Rules of Civil Procedure. Alternatively, the Merchants request this Court grant permissive intervention under Rule 24(b). Should the Court determine intervention is not merited, the Merchants request leave to file as an amicus, and participate in oral argument, in support of Defendants and affirmance.

Counsel for Defendants have indicated they oppose the Merchants' intervention but do not oppose the Merchants being granted leave to file and participate in oral argument as an amicus; Plaintiffs stated they do not take a position on the Motion at this time.

## BACKGROUND

### A. El Pueblo de Los Angeles and the Olvera Street Merchants

El Pueblo de Los Angeles marks the birthplace of the City of Los Angeles. It sits near where Los Pobladores—the original 48 settlers who came from the Sonora and Sinaloa regions of New Spain (now Mexico)—built the original settlement that would become Los Angeles. *See About Us*, El Pueblo de Los Angeles, https://perma.cc/76H2-9BY5; *see also* Jean

Bruce Poole & Tevvy Ball, *El Pueblo: The Historic Heart of Los Angeles* 8-10 (2002), https://perma.cc/A8B5-KSE7. Today, El Pueblo has been preserved as a state historic park and is listed on the National Register of Historic Places. *History of El Pueblo*, El Pueblo de Los Angeles, https://perma.cc/5Z8H-PNZE. Every year, more than 2 million visitors come to El Pueblo to tour the historic buildings, enjoy the Mexican food, and shop for the traditional crafts, leather goods, and folk art sold in the small shops that run through Olvera Street. *About Us*, El Pueblo de Los Angeles, https://perma.cc/76H2-9BY5.

El Pueblo contains several protected historical landmarks. The Ávila Adobe—built in 1818 and the oldest standing residence in Los Angeles—sits in the heart of Olvera Street. *History of El Pueblo*, El Pueblo de Los Angeles, https://perma.cc/5Z8H-PNZE. Along one side of Olvera Street stands the Pelanconi House, the oldest fired-brick building in the city. In the Old Plaza—the large public plaza that formed the original center of Los Angeles—150-year-old Moreton Bay fig trees flank the square, with enormous Mexican-flag bunting draped around their bases. On one corner of the square is the Old Plaza Firehouse, the oldest fire station in Los Angeles, and across the way is the Pico House, a luxury hotel opened in 1870 to serve what was then a small town of fewer than 6,000 residents. And near the center of the square is La Iglesia de Nuestra Señora la Reina de Los Àngeles, the oldest Catholic church in the city, founded in 1814. *Id.*

By the early 1900s, Olvera Street and many of the surrounding sites were in significant disrepair. In November 1928, a young woman named Christine Sterling visited the neighborhood and was distressed to see a condemnation notice on the Ávila Adobe indicating it was scheduled for demolition. Sterling began raising money to purchase historic sites in El Pueblo to preserve the area's "Spanish and Mexican heritage." *See id.* Her fundraising to save the Ávila Adobe blossomed into a vision to restore and preserve the culture of El Pueblo.

As part of these efforts and to commemorate the city's 148th birthday, a hand-carved wooden cross was erected in 1929. *Olvera Street Cross*, The Hist. Marker Database, https://perma.cc/3G3E-ZZXR. Originally the cross bore an early version of the City's name: "El Pueblo de Nuestra Senora la Reina de los Angeles"; the name of the city's founder: "Felipe de Neve"; and the founding date: "September Fourth 1781." *Olvera Street Cross*, The Huntington Digit. Libr., https://perma.cc/JX2B-37TB.

Another part of Sterling's restoration efforts was a marketplace, centered on Olvera Street, that would feature exclusively Mexican goods. Poole & Ball, *El Pueblo: The Historic Heart of Los Angeles*, 53. Sterling personally convinced Los Angeles vendors to move their businesses to Olvera Street, which allowed many members of Los Angeles' Mexican-American community to launch successful businesses as Olvera Street merchants, even in the midst of the Great Depression. *Id.*

Intervenor Olvera Street Merchants Association Foundation is a nonprofit organization formed to "preserve and promote the traditional, historical, cultural, and educational events and programs that have taken place on Olvera Street for nearly 100 years." Decl. of Valerie Hanley ISO Mot. to Intervene ¶ 9; *About*, Olvera Street Merchants Ass'n Found., https://perma.cc/B75X-SPKS. Its Board of Directors comprises merchants whose families have been part of the Olvera Street merchant community since its inception in 1930. Hanley Decl. ¶ 9.

Almost since its beginning, the Foundation has facilitated a wide range of events to promote economic activity on Olvera Street and to help preserve the Mexican-American culture integral to the history of Los Angeles. Hanley Decl. ¶ 10. In early January, Olvera Street celebrates Dia de los Reyes (Three Kings Day) with music and rosca (king cake). Hanley Decl. ¶ 11. On the Saturday before Easter, thousands attend the "Blessing of the Animals," during which a Catholic Cardinal or Bishop provides the blessings. Hanley Decl. ¶ 13. In late October and early November, there is a nine-day festival celebrating Día de los Muertos (Day of the Dead). Hanley Decl. ¶ 14. In late December, a nine-night procession called Las Posadas depicts the journey of Mary and Joseph to Bethlehem, and throughout the Christmas season, a life-size Nativity sits in the gazebo in the center of the Old Plaza. Hanley Decl. ¶¶ 15-16. All of these events incorporate cultural and educational elements, including traditional Aztec and Folklórico dancers, artisans, Mexican food, and pastries

and chamurrado (Mexican hot chocolate). Hanley Decl. ¶ 17; Decl. of Sylvia Gribbell ISO Mot. to Intervene ¶¶ 8-9; Decl. of Edward Flores ISO Mot. to Intervene ¶ 6. These events hold deep cultural significance for the Foundation and its members. Hanley Decl. ¶ 17; Gribbell Decl. ¶¶ 8-9. Specifically, Foundation members see the events as a way to preserve their Mexican-American heritage and culture, connect to the historical founding of the City, and to maintain the tight-knit community that has grown up around Olvera Street over the decades. Flores Decl. ¶ 7.

The state, county, and city recognize that Olvera Street is vital in the preservation of their history and culture. Thanks to the early restoration efforts of Christine Sterling and the original Olvera Street merchants, in 1953 the state, county, and city acquired the area as El Pueblo de Los Angeles Historic State Park. Poole & Ball, *El Pueblo: The Historic Heart of Los Angeles*, 55. In 1972, El Pueblo was added to the National Register of Historic Places, recognizing the historic significance of Olvera Street, the Old Plaza, and the surrounding buildings. *History of El Pueblo*, El Pueblo de Los Angeles, https://perma.cc/5Z8H-PNZE.

**B. Procedural Background**

Plaintiffs Jack Gerritsen and Henry Frederick Ramey Jr. sued the City of Los Angeles and Domenika Lynch, the General Manager of El Pueblo Monument, alleging several violations of their First Amendment rights and seeking $5 million in damages. 1-ER-60–78.

As relevant to this appeal, Plaintiff Gerritsen alleged Defendants violated the Establishment Clause in two ways: First, by displaying "a cross at the South entrance of Olvera Street," and second, by "put[ting] up a Nativity display on the El Pueblo Park kiosko." 1-ER-73. Gerritsen moved for a preliminary injunction on the grounds that the nativity "offends [him] and makes [him] feel excluded as a non-believer" and that he views the cross "as a Christian endorsement on public land." 1-ER-57. The district court denied Gerritsen's request for an injunction. Applying *American Legion v. American Humanist Association*, 588 U.S. 29 (2019), the court determined that Gerritsen did not establish a likelihood of success on the merits of his Establishment Clause claim. 1-ER-13. Plaintiff Gerritsen now appeals.

## LEGAL STANDARD

"Intervention on appeal is governed by Rule 24 of the Federal Rules of Civil Procedure." *Bates v. Jones*, 127 F.3d 870, 873 (9th Cir. 1997). Under Rule 24(a)(2), a party may intervene as of right if "(1) it has a significant protectable interest relating to the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede its ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent its interest." *Peruta v. County of San Diego*, 824 F.3d 919, 940 (9th Cir. 2016), *abrogated on other grounds*.

Under Rule 24(b), permissive intervention is appropriate where a party shows "a timely motion" and "a common question of law and fact

between the movant's claim or defense and the main action." *Freedom From Religion Found. v. Geithner*, 644 F.3d 836, 843 (9th Cir. 2011).

## ARGUMENT

### I. The Merchants are entitled to intervene as of right.

The Merchants are entitled here to intervene as of right. Rule 24's requirements "are broadly interpreted in favor of intervention." *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011). The Merchants have a significant protectable interest in the historical and cultural preservation of historic Olvera Street and El Pueblo de Los Angeles Historical Monument, as well as a concrete economic interest in the area's preservation. Any order requiring the cross's removal or prohibiting the nativity's display would practically impair those interests. Because the Merchants' motion is timely and the City may not fully protect their interests, intervention is required.

#### A. The Merchants have a significant protectable interest in the historical and cultural preservation of Olvera Street.

The Merchants have a significant interest in historical and cultural preservation of Olvera Street and El Pueblo Monument, and that interest is legally protected under the National Historic Preservation Act (NHPA). *See* 54 U.S.C. § 300101. The Merchants also have concrete economic interests in preserving the cross and nativity as important attractions that draw visitors to the area, which in turn aids the Merchants'

continued preservation of the area's Mexican-American heritage and culture. These interests are protected under express provisions of the California Public Resources Code.

Whether a proposed intervenor has a "sufficient interest … is a practical, threshold inquiry, and no specific legal or equitable interest need be established." *Citizens for Balanced Use*, 647 F.3d at 897 (cleaned up). To meet this requirement, the Merchants must show that their "interest is protectable under some law and that there is a relationship between the legally protected interest and the claims at issue." *Id.* But the Merchants' "asserted interest need not be protected by the statute under which the litigation is brought." *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011).

The historical vendors of Olvera Street—many of whose families have sold their wares there for three or four generations—banded together in 2005 to form the Foundation. Hanley Decl. ¶¶ 4-9; Flores Decl. ¶ 3-5; Gribbell Decl. ¶¶ 4-8. The Foundation exists to help preserve the historical and cultural heritage of Olvera Street and El Pueblo. Hanley Decl. ¶ 9. Today, the Foundation is the primary organization responsible for facilitating many of the events that celebrate the area's history and Mexican-American heritage, including Las Posadas, Día de los Muertos, and the Blessing of the Animals, and those events have deep cultural significance to the Foundation's members. Hanley Decl. ¶¶ 10-17; *see* Flores Decl. ¶¶ 7, 10. Further, the Merchants rely on the tourism generated by

the monument's history and culture, including the cross and nativity, for the continued viability of their businesses. Hanley Decl. ¶ 18. Their interest in preserving the cross and nativity as part of the history and culture of the area is therefore significant.

The Merchants' interests are also protected by "some law." *Wilderness Soc'y*, 630 F.3d at 1179. First, their interests are protected by the NHPA, 54 U.S.C. § 300101. The NHPA exists to "foster conditions under which our modern society and [the nation's] historic property can exist in productive harmony and fulfill the social, economic, and other requirements of present and future generations" and to assist in the preservation of historic property "in a spirit of stewardship for the inspiration and benefit of present and future generations." *Id.*

El Pueblo de Los Angeles Historic Monument was designated as a National Historic Landmark under the NHPA in 1972. *See id.* at § 302102; *Los Angeles Plaza Historic District National Register of Historic Places Nomination Form*, Nat'l Archives Catalog, at 107 (1972), https://perma.cc/V2JQ-UAUX. As expressly recognized at the time of its designation, El Pueblo contains "a rich composite group of buildings as evidence of the blending ethnic groups and cultures which founded [Los Angeles] and shaped its subsequent growth." *Id.* at 2. It was designated for historic preservation because it is a "living composite story of Los Angeles from Indian times prior to 1781 through Spanish, Mexican and

American periods." *Id.* at 4. In seeking national historic preservation status, Los Angeles recognized that "[t]he Plaza is a living historical district for which even greater historical efforts are a continuing goal; a truly national monument to preserve for generations yet unborn." *Id.*

The Merchants' economic interests were also recognized as critical to this preservation effort because they "contribute to historic preservation by creating an atmosphere and … indeed, helping attract the growing volume of visitors coming annually to see this active area with authentic and uninterrupted links to its historic past." *Id.* at 2.

The Olvera Street cross is part of the monument's protected heritage. Originally erected in 1929 in honor of the City's 148th birthday, the hand-carved wooden cross commemorates the founding of the El Pueblo de Los Angeles in 1781. *Olvera Street Cross*, The Hist. Marker Database, https://perma.cc/3G3E-ZZXR. The cross was specifically designated as part of the protected historical heritage under the NHPA. *NRHP Nomination Form* at 38, 88, https://perma.cc/V2JQ-UAUX.

The Merchants' interests in the historic and cultural preservation of El Pueblo are "precisely those Congress intended to protect" through the NHPA. *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006). Courts have routinely found an interest sufficient for intervention based on statutorily protected preservation interests. Just as a conservation group has "a significant protectable interest in conserving and enjoying the wilderness character" of a wilderness area, *Citizens for*

*Balanced Use*, 647 F.3d at 897, so do the Merchants have a protectable interest in the historic and cultural preservation of El Pueblo, including the challenged displays, "for the inspiration and benefit of present and future generations," 54 U.S.C. § 300101; *see also County of San Bernardino v. United States*, No. 06-1179, 2007 WL 9747746, at *2 (C.D. Cal. Oct. 23, 2007) (granting intervention in part based on historic preservation interests under NHPA).

California law also specifically protects the Merchants' interests. California's Public Resources Code recognizes El Pueblo "as a unique historical and cultural resource for the people of the state," and designates for protection "the Mexican and early California cultural and interpretive traditions and heritage of El Pueblo de Los Angeles." Cal. Pub. Res. Code § 5038(a). The Legislature specifically recognized that the "concessionaires of Olvera Street have made historically significant contributions and that they represent a unique human and cultural resource" contributing to the historical and cultural preservation of the area. *Id.* at § 5038(b).

Thus, the Merchants' economic interests in preserving the cross and nativity as attractions to El Pueblo support intervention. The Merchants' economic survival is critical to preserving the "unique human and cultural resource" specifically protected under California law—and the continued display of the cross and the nativity will impact the level of tour-

ism to Olvera Street. *Id.*; Hanely Decl. ¶ 18. This is a "concrete and related" "economic interest" that "trigger[s] a right to intervene." *United States v. Alisal Water Corp.,* 370 F.3d 915, 919 (9th Cir. 2004); *see also Utah Ass'n of Cntys. v. Clinton*, 255 F.3d 1246, 1251 (10th Cir. 2001) (granting intervention based on tourism businesses' "financial stake in the tourism the monument has created").

The Merchants' interests are directly related to the issues in this litigation. As the district court recognized, a key issue underlying Plaintiff's Establishment Clause challenge is whether the cross and nativity are sufficiently "established" when "viewed in [their] historical context," and whether "removing long-standing monuments, symbols, or practices 'may no longer appear neutral, especially to the local community for which it has taken on a particular meaning.'" 1-ER-14 (quoting *Am. Legion v. Am. Humanist Ass'n*, 588 U.S. 29, 38, 54 (2019)). The Merchants *are* the "local community" for whom the cross and nativity have specific meaning—that is, their importance in celebrating ties to their cultural past. And the longstanding and historic nature of the cross and nativity reflect the precise nature of the Merchants' interests they seek to protect.

**B. The disposition of this appeal may practically impair the Merchants' ability to protect their interest.**

Because the Merchants have established a significant protectable interest in the historical and cultural significance of El Pueblo, this Court should "have little difficulty concluding that the disposition of this case

may, as a practical matter, affect it." *California ex rel. Lockyer*, 450 F.3d at 442; *see also Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001) (impairment exists when "the injunctive relief sought by the plaintiffs will have direct, immediate, and harmful effects upon [the proposed intervenor's] legally protectable interests"). That's true for three reasons.

First, if Plaintiff prevails on his Establishment Clause claim, the City will be forced to remove the cross from El Pueblo and to suspend the nativity display, both of which would directly impair the Merchants' "interest in conserving" these displays as part of the monument's greater historical and cultural significance. *See Citizens for Balanced Use*, 647 F.3d at 898. Second, absent intervention, the Merchants have no "other means to protect" their interests because they cannot "bring a separate suit where they could argue for" the correct application of the Establishment Clause to these specific displays. *Lockyer*, 450 F.3d at 442-43 (cleaned up). And third, even beyond any immediate removal of the displays, this Court's decision here will likely "have a precedential impact regarding" the constitutionality of these displays, which could impair the Merchants' ability to advocate for their preservation or restoration at any point in the future. *Day v. Apoliona*, 505 F.3d 963, 965 (9th Cir. 2007).

**C. The motion to intervene is timely.**

The Merchants' request to intervene is also timely. To determine whether a motion to intervene is timely, this Court considers "(1) the

stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *Peruta*, 824 F.3d at 940-41, *abrogated on other grounds*. "A would-be intervenor's delay in joining the proceedings is excusable when the intervenor does not know or have reason to know that his interests might be adversely affected by the outcome of litigation." *Day*, 505 F.3d at 965 (cleaned up).

The Merchants satisfy this standard here. "Delay is measured from the date the proposed intervenor knew or should have known that the parties would no longer adequately protect its interests." *Kalbers v. DOJ*, 22 F.4th 816, 824 (9th Cir. 2021). Here, the Merchants sought to intervene as soon as they learned that their interests would not be adequately protected by the parties in Plaintiff's constitutional challenges. Specifically, the Merchants learned of the litigation, and its potential impact on their interests, soon after the Plaintiff filed his notice of appeal. *See* Hanley Decl. ¶ 19. They then moved to intervene as soon as was feasible after obtaining counsel and evaluating whether their interests would be adequately represented by the parties. *Id.*; *see also Day*, 505 F.3d at 965 (determining motion to intervene on appeal was timely to "ensure that [the court's] determination of an already existing issue is not insulated from review simply due to the posture of the parties").

The existing parties will not be prejudiced by this intervention. While this action has been pending for almost a year, there has been little substantive development. According to the parties' May 5, 2026 joint status report, neither party had begun discovery by that date. ECF No. 23 at 2. And the only substantive motion and ruling to date concerns Plaintiffs' motion for a preliminary injunction. Thus, because prejudice does not arise "from the fact that including another party in the case might make resolution more difficult," *Brown v. Google LLC*, 172 F.4th 1128, 1134 (9th Cir. 2026), the Merchants' motion to intervene is timely, *see Kalbers*, 22 F.4th at 826-27 (collecting cases that "allowed intervention after much longer delays and, on occasion, all the way into the remedial phase of litigation").

**D. The existing parties may not adequately represent the Merchants' interests.**

Finally, intervention is necessary here because the City may not adequately represent the Merchants' interests in this appeal. The Merchants' "burden of showing inadequacy of representation is 'minimal' and satisfied if the applicant can demonstrate that representation of its interests 'may be' inadequate." *Citizens for Balanced Use*, 647 F.3d at 898. Even where an applicant's interests "appear aligned" with an existing party, the applicant "need show only that its interests *might* not be represented, not that its interests are, in fact, not being adequately represented." *Low v. Altus Fin. S.A.*, 44 F. App'x 282, 285 (9th Cir. 2002).

In cases challenging government action, "[i]nadequate representation is most likely to be found when the applicant asserts a personal interest that does not belong to the general public." *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1499 (9th Cir. 1995), *abrogated on other grounds*. Because the government bears the broad responsibility of representing the public interest, its interests often "diverge" from those with individual interests in the litigation. *See, e.g.*, *Berg*, 268 F.3d at 823-24 (intervenors must be able "to express their own unique private perspectives"); *Californians for Safe & Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d 1184, 1190 (9th Cir. 1998) (intervenor's "interests" "were potentially more narrow and parochial than the interests of the public at large").

Here, the City's interests are not "simply to confirm" the Merchants' goal of preserving the historical and cultural significance of the El Pueblo Monument. *Berg*, 268 F.3d at 823. Rather, the City must weigh a broader "range of considerations." *Id.* That is, the City must consider its general policies for displays with religious meaning, the risk of future litigation over similar displays, the broader impact a ruling here might have on other displays, and its own stance on the Establishment Clause—a position inherently fused with political considerations. *See, e.g.*, *Davies v. L.A. Cnty. Bd. of Supervisors*, 177 F. Supp. 3d 1194, 1198-1205 (C.D. Cal. 2016) (describing 10-year political controversy surrounding removal and

then proposed re-addition of Latin cross to County of Los Angeles official seal).

Nor does the City have the same interests in preserving the cross and nativity as attractions to visitors who are vital to the Merchants' economic interests. Because it does not share those interests, the City may very well credit the Plaintiffs' alleged Establishment Clause claims in a way that negatively impacts the Merchants' economic interests. Thus, given these competing considerations, it is not likely "that the [City] will undoubtedly make all the [Merchants'] arguments," as the standard requires. *Berg*, 268 F.3d at 822.

Indeed, the Merchants' proposed brief makes several arguments the City did not raise in its brief, such as their arguments that Plaintiff lacks standing and that neither the cross nor nativity resemble a historical hallmark of a religious establishment, which is the proper Establishment Clause test following the Supreme Court's decision in *Kennedy v. Bremerton School District*, 597 U.S. 507 (2022).

## II. Alternatively, this Court should grant the Merchants permissive intervention.

Even if the Court determines the Merchants are not entitled to intervention as of right, it should grant permissive intervention. Permissive intervention is merited when an applicant "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). The determination of whether to allow intervention is

within the discretion of the court, which will consider whether it will unduly delay the main action or unfairly prejudice the existing parties. Fed. R. Civ. P. 24(b)(3).

The Merchants' interests here present questions of law and fact in common with those raised by the existing parties. The Merchants intervention would not inject new claims into the case but would allow further legal argument as to why Plaintiffs lack standing and why the displays are constitutional. These arguments would not prejudice existing parties. *Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 857 (9th Cir. 2016) (prejudice caused only by prospective intervenor's failure to intervene in a timely fashion after knowledge of the suit); *see also Kalbers*, 22 F.4th at 825 ("additional complicating issues" are insufficient to deny intervention). The Merchants' proposed brief addresses the purely legal question of whether the cross and nativity violate the Establishment Clause. This position requires no additional factfinding and interjects no new issues into the case. Further, because the Merchants submit their proposed appeal brief with this filing, allowing intervention here would not require any change to existing deadlines. The significance of the Merchants' interests outweighs any marginal additional burden that would be caused by intervention. *See United States v. City of Los Angeles*, 288 F.3d 391, 404 (9th Cir. 2002) (reversing denial of permissive intervention, noting that "'streamlining' the litigation … should not be accomplished at the

risk of marginalizing those … who have some of the strongest interests in the outcome").

### III. At the very least, the Court should allow the Merchants to file an amicus brief and participate in oral argument.

Even if the Court denies intervention, it should grant the Merchants leave to file their proposed brief as an amicus and, if the Court holds argument, leave to participate in oral argument. Amici have three "classic role[s]": "assisting in a case of general public interest, supplementing the efforts of counsel, and drawing the court's attention to law that escaped consideration." *Miller-Wohl Co. v. Comm'r of Lab. & Indus.*, 694 F.2d 203, 204 (9th Cir. 1982).

Courts routinely grant proposed intervenors leave to file as amici even when denying intervention. *See, e.g.*, *Perry v. Proposition 8 Off. Proponents*, 587 F.3d 947, 950 (9th Cir. 2009) (affirming the district court's intervention denial but allowing amicus participation); *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 830 & n.7 (9th Cir. 1996) (denying intervention but granting leave to file amicus brief); *Students for Fair Admissions v. President & Fellows of Harvard Coll.*, 807 F.3d 472, 477-78 (1st Cir. 2015) (same); *Miracle v. Hobbs*, 333 F.R.D. 151, 156-57 (D. Ariz. 2019) (same); *Hansen v. Kempthorne*, No. 08-cv-717, 2009 WL 10725425, at *2 (W.D. Wash. Apr. 21, 2009) (same).

Federal Rule of Appellate Procedure 29(a)(3) requires amici to state (a) their "interest" in the case, and (b) "the reason why an amicus brief is

desirable and why the matters asserted are relevant to the disposition of the case."

***Interest.*** As stated *supra* Section I.A, the Merchants dedication to the historical and cultural preservation of El Pueblo gives them a significant interest in this case.

***Desirability and Relevance.*** The proposed brief is both desirable and relevant because the Merchants are well-acquainted with El Pueblo through longstanding economic and cultural ties, uniquely positioning them to address the importance of the cross and nativity in preserving this history and culture of El Pueblo and Los Angeles as a whole. They also offer a unique perspective on the important role these displays play in the cultural festivals celebrating the area's Mexican-American heritage held annually at El Pueblo. This historical pedigree thus makes the Merchants' perspective—both through the proposed brief and in oral argument—particularly helpful to the Court.

The proposed brief is also desirable and relevant because it explains several cutting-edge issues of First Amendment law, including the proper framework to address Plaintiff's Establishment Clause challenge following the Supreme Court's recent decision in *Kennedy*. This issue was not briefed by either party. Further, the Merchants are represented by the Becket Fund for Religious Liberty, counsel with highly relevant experience defending public displays against Establishment Clause challenges. *See, e.g., Freedom From Religion Found. v. Weber*, 628 F. App'x 952 (9th

Cir. 2015); *Newdow v. Rio Linda Union Sch. Dist.*, 597 F.3d 1007, 1012 (9th Cir. 2010); *Kondrat'yev v. City of Pensacola*, 949 F.3d 1319 (11th Cir. 2020); *Freedom From Religion Found. v. County of Lehigh*, 933 F.3d 275 (3d Cir. 2019). The proposed brief and participation in oral argument will assist the Court in deciding the important constitutional issues at stake in this appeal.

## CONCLUSION

The Court should grant the motion to intervene or, in the alternative, accept the Intervenor Merchants' opening brief as an amicus brief.

Dated: August 24, 2026

Respectfully submitted,

/s/ *Andrea R. Butler*

Andrea R. Butler
*Counsel of Record*
Eric S. Baxter
Daniel L. Chen
Colten L. Stanberry
Richard C. Osborne
The Becket Fund for
Religious Liberty
1919 Pennsylvania Ave. NW,
Suite 400
Washington, DC 20006
(202) 955-0095
*abutler@becketfund.org*

*Counsel for Proposed Intervenor-Defendant*

## CERTIFICATE OF COMPLIANCE

This motion complies with the requirements of Fed. R. App. P. 27(d) and Circuit Rules 27-1(1)(d) and 32-3(2) because it has 5,047 words.

This motion also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this motion has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

/s/ *Andrea R. Butler*
Andrea R. Butler

## CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2026, the foregoing motion to intervene pending appeal was filed electronically with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit through the Court's CM/ECF system. I certify that counsel for Defendants are registered CM/ECF users and will be served by the appellate CM/ECF system. I certify that I served the foregoing document on this date by mail for delivery within 3 calendar days to the following unregistered case participant:

Jack Gerritsen
6217 1/2 Palm Avenue,
Bell, CA 90201

/s/ *Andrea R. Butler*
Andrea R. Butler

## Declaration of Valerie Hanley

I, Valerie Hanley, declare as follows:

1. I am over 18 years of age and have personal knowledge of each of the statements in this declaration.

2. I am the Treasurer of the Olvera Street Merchants Association Foundation. In my capacity as Treasurer, I am familiar with the history and operations of the Foundation.

3. I own and operate a business named Casa California on Olvera Street in Los Angeles, California.

4. Members of my immediate family have worked as merchants on Olvera Street since 1930, near the time that the existing marketplace opened. While very young—around six or seven years old—my father began working on the street selling vegetables. After meeting him on the street, Christine Sterling offered him a job as a shoeshine boy in the Olvera Street marketplace.

5. Around 1932, after learning that my grandmother was a single mother with three additional children, Ms. Sterling invited my grandmother to become a merchant on Olvera Street. My grandmother started her business there by borrowing goods from a number of existing merchants and selling them on a serape (blanket).

6. Eventually, my grandmother owned her own puesto (small kiosk) in front of the building that now houses Casa California, where she sold figurines, jewelry, and bags, among other things. The business was her

livelihood, and she worked there until she died at 98 years old.

7. My mother, Norma, began working on Olvera Street in 1962. Her first job on Olvera Street was assisting with the Latin American Trade Mart, which was a part of the market designed to showcase goods from all Latin American countries beyond Mexico. After the trade mart was discontinued, my mother began working at a restaurant, El Paseo Inn, where she worked for 20 years.

8. Around 1964, my parents purchased the old Olvera Street Theatre, which had been converted into a shop selling hand-blown glass from Mexico. My parents converted the business into "Casa California" and introduced a broader range of goods. I currently operate Casa California, along with my husband and mother. Several members of my extended family also operate businesses on Olvera Street.

9. The Olvera Street Merchants Association Foundation is a non-profit organization formed in 2005 as a way for the merchant community to preserve and promote the traditional, historical, cultural, and educational events and programs that have taken place on Olvera Street for nearly 100 years. Members of the Board of Directors are current merchants, whose families have been part of the Olvera Street community since its inception in 1930. Though the merchants managed the various events for over 80 years, the Foundation was created in order to serve as a more formalized organization that would oversee and protect

the annual traditional events that take place at El Pueblo Historic Monument, home of Olvera Street.

10. The Foundation facilitates a wide range of cultural events that have historically been held at Olvera Street, which I personally participate in organizing. The Foundation organizes several that take place throughout the year, all of which are free and open to the public.

11. In early January, we celebrate Día de los Reyes (Three Kings Day) with music and rosca (king cake). Traditionally, a small baby Jesus is baked into the rosca cake, and whoever finds it receives a prize. I make sure there are multiple babies in each cake so that most children are rewarded. We often hold a toy donation drive as part of this event.

12. In early February, we celebrate Día de la Candelaria (Candlemas), where there is a procession and then a blessing of elaborately dressed statues of baby Jesus, as well as live entertainment and prizes. This is considered the traditional closing of the Christmas season.

13. A "Blessing of the Animals" takes the Saturday before Easter, where a Catholic Cardinal or Bishop provides blessings to attendees' animals and pets. In 2025, more than 6,000 individuals brought pets to participate in the event.

14. The Foundation also helps host a nine-day festival celebrating Día de los Muertos (Day of the Dead) in late October and early November.

15. In December, there is a nine-night event called Las Posadas that

depicts the journey of Mary and Joseph to Bethlehem. Each night, a procession goes to different business on Olvera Street, where the group asks for shelter. Traditionally, the business owner first says no, and then says yes to the request, and there is a blessing or prayer over the group. This event also includes a piñata for children in attendance.

16. Throughout the Christmas season, a life-size nativity sits in the gazebo in the center of the Old Plaza. The current nativity set was purchased in the 1990s, but an older set was displayed even before then, which I am aware was displayed as early as 1964.

17. All of the events incorporate cultural and educational elements, including traditional Aztec and Folklórico dancers, artisans, Mexican food, and pastries and chamurrado (Mexican hot chocolate). These events hold deep cultural significance for the Foundation and its members and are a primary method for the Olvera Street community to celebrate and preserve its shared culture and heritage, going back to the City of Los Angeles's founding.

18. The cultural events hosted by the Foundation are also crucial to success of the Olvera Street businesses. Each event attracts visitors to El Pueblo Monument, and the businesses rely on the visitors to buy their goods to remain operational. The hand-carved wooden cross that sits on Olvera Street is also a historical attraction that brings visitors to the area. This tourism is vital for the continued viability of my business and many others on Olvera Street.

19. I became aware of this lawsuit in late May 2026, soon after the notice of appeal was filed in this appeal. At that point, I advised the Foundation's Board of Directors of the lawsuit, and we evaluated its potential impact on our interests as quickly as was feasible after obtaining counsel.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 20, 2026

Respectfully submitted,

Valerie Hanley

# Declaration of Sylvia Gribbell

I, Sylvia Gribbell, declare as follows:

1. I am over 18 years of age and have personal knowledge of each of the statements in this declaration.

2. I own and operate a retail business selling artisan goods on Olvera Street in Los Angeles, California.

3. My ancestors migrated to Los Angeles through Sonora and Tucson in the early 1800s.

4. By the 1930s my great-grandfather, Alexandro Diaz Velasco, owned and operated a successful business importing Latin American goods in Los Angeles.

5. When opening the Olvera Street market in the 1930s, Christine Sterline approached my grandfather, along with others in the import business in the area, and invited them to sell their wares on Olvera Street in the new marketplace. Two of his daughters, including my grandmother, began running gift shops on Olvera Street, and the business remains in my family to this day.

6. Other members of my family also worked on Olvera Street, including my mother and uncle, who emigrated to Los Angeles from Mexico in the 1950s.

7. My parents took over my grandmother's business in 1992 after retiring from previous careers. They used portions of their retirement savings to keep the business operational. I took over the family business

in 2024 and currently operate a shop selling artisan goods on Olvera Street alongside my mother. My cousin also runs a neighboring store.

8. I am personally involved in the Olvera Street merchant community and participate in several of the cultural events put on by the Olvera Street Merchants Association Foundation. Though many of the events have their roots in Catholic traditions, I believe they now serve primarily a historic and cultural role rather than a religious one. Even though I am religiously agnostic, I find these celebrations of our shared culture and heritage personally meaningful. For example, I find Día de los Muertos significant for honoring the Mexican influence in Los Angeles' history, and because it involves celebrating the memory of generations across space and time. I believe this honoring of the past and preservation of our culture through multiple generations can create a sense of community that resonates for all of humanity.

9. Further, El Pueblo brings together and honors many different cultures that have had important influence on Los Angeles. For example, many of our events honor indigenous influences by highlighting Aztec and Folklórico dancers. And the Chinese American Museum and the Italian American Museum of Los Angeles, both of which are also in El Pueblo Historical Monument, also host events celebrating their own unique cultures and history.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 18, 2026

Respectfully submitted,

Sylvia Gribbell

## Declaration of Edward Flores

I, Edward Flores, declare as follows:

1. I am over 18 years of age and have personal knowledge of each of the statements in this declaration.

2. I own and operate a small restaurant—Juanita's Café—selling taquitos and other Mexican food on Olvera Street in Los Angeles, California.

3. My great-grandmother, Aurora Guerrero, became the first member of my family to operate a business on Olvera Street when—in 1934—she opened Cielito Lindo, which popularized Olvera Street's signature taquitos. That business remains on Olvera Street where it is now operated by extended members of my family.

4. In 1944, my grandmother, Juana Guerrero, opened Juanita's Café as her own business. I started working there fifty years ago at the age of twelve after I asked my grandmother for spending money. Before she passed away, my grandmother transferred ownership of Juanita's to me.

5. In addition to being a legacy merchant, I am also a board member of the Olvera Street Merchants Association Foundation, where I work to support longstanding cultural events on Olvera Street, as well as to attract new businesses and promote new activities to help Olvera Street merchants to thrive.

6. Juanita's also has a long history of donating the champurrado (Mexican hot chocolate) that is served at many Olvera Street cultural events.

7. I see the Olvera Street cultural events not just as a way to promote merchants' businesses, but also as a way to preserve El Pueblo's Mexican-American heritage and culture, to connect to the historical founding of the City, and to maintain the tight-knit community that has grown up around Olvera Street over the decades.

8. As a young man, I earned a degree in computer science and have often wondered what my life would be like if I'd pursued a career in that field. Instead, I chose to preserve my family business and to support the history and culture of Olvera Street.

9. My business often requires me to work 12-15 hour days. And in addition to serving on the Merchants' board, I am also a board representative for El Pueblo on the Historic Cultural North Neighborhood Council, which serves Olvera Street and surrounding neighborhoods.

10. I do all this because I love the history and culture of Los Angeles and its founding. I want to honor the diverse backgrounds and religious traditions that helped shape our great city. While my own heritage is Mexican Catholic, Chinese and Italian heritage groups also have a presence on Olvera Street. Preserving our distinct cultures and educating others about our roles in the founding and growth of Los Angeles

ennobles Americans across all ethnicities, faiths, cultures, and generations to take pride in their own contributions and to see more clearly their future potential.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 22, 2026

Respectfully submitted,

Edward Flores